1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| Jennifer Wysocki, Andrew Sidhu, Betsy Kellogg and Keisha Flemister, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>ZOOMINFO TECHNOLOGIES INC., ZOOMINFO TECHNOLOGIES LLC, ZOOMINFO HOLDINGS LLC, and ZOOMINFO INTERMEDIATE INC.<br><br>                Defendants. | Case No.: 3:22-cv-05453<br><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Plaintiffs Jennifer Wysocki, Andrew Sidhu, Betsy Kellogg and Keisha Flemister ("Plaintiffs") complain upon knowledge as to themselves and their own actions and upon information and belief as to all other matters against defendants ZoomInfo Technologies Inc., ZoomInfo Technologies LLC, ZoomInfo Holdings LLC, and ZoomInfo Intermediate Inc. (the "Defendants" or "ZoomInfo"), as follows:

## I.   <u>SUMMARY OF ALLEGATIONS</u>

1.     This action arises from Defendants': (i) unlawful and intentional interception, accessing, viewing, reading, and/or scanning of individuals' personal information contained within their electronic communications without their knowledge or consent; (ii) subsequent unauthorized use, disclosure, dissemination, and/or sale of those electronic communications to third parties, including marketers, recruiters, and advertisers, from approximately August 2010 to the present (the "Class Period") in violation of federal and state law; and (iii) false and deceptive representations – *i.e.*, that ZoomInfo does not access, view, read, or scan personal information contained in users' electronic communications.

2.     Plaintiffs, on behalf of themselves and similarly situated subscribers to the Community Edition service (the "Community Edition Program") offered by ZoomInfo ("Subscribers") and other third parties who are not subscribers to any of ZoomInfo's products and services and whose personal information was taken ("Non-Subscribers") bring this suit under the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. § 2510, *et seq.*; Stored Communications Act 18 U.S.C. § 2701 *et seq.*, California Invasion of Privacy Act ("CIPA"), CAL. PENAL CODE § 630 *et seq.*; California common law intrusion upon seclusion; invasion of privacy under Art. I, Sec. 1 of the California Constitution; the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §17200; Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201, *et seq.*; N.Y. GEN. BUS. LAW §§ 349 & 350; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. ANN. §§ 505 *et seq.*; Washington's Consumer Protection Act ("WCPA"), WASH. REV. CODE §§ 19.86, *et seq.*; Washington Wiretapping Statute, WASH. REV.

CODE § 9.73.030; breach of contract under Washington law; Connecticut's Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110a *et seq.*; Georgia's Uniform Deceptive and Unfair Trade Practices Act ("Georgia UDUTPA"), O.C.G.A. § 10-1-370 *et seq.*; for declaratory and other equitable relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

3.    ZoomInfo is an American company that offers for sale access to its proprietary database of information and analytic tools. According to ZoomInfo's regulatory filings, ZoomInfo's database contains intelligence about business entities and individuals, including personnel moves, organizational charts, intent signals, decision-maker contact information, hierarchy information and other financial details. ZoomInfo claims that its database contains more than 50 million contact details, which are updated daily by artificial intelligence, as well as a team of over 300 ZoomInfo's human researchers and analysts.

4.    Users can access ZoomInfo's database either through a paid subscription or via ZoomInfo's Community Edition Program that comes free of charge. In order to obtain access to ZoomInfo's free Community Edition Program, users must agree to give ZoomInfo permission to access their incoming and outgoing emails, from which ZoomInfo purportedly extracts only certain "business information," such as business contacts and company names, to include in its proprietary database. Thus, ZoomInfo provides users with free access to ZoomInfo's database in exchange for what ZoomInfo claims to be "business information" extracted from users' emails, including incoming emails from Non-Subscriber Class members who did not subscribe, contract, or otherwise consent to ZoomInfo's practices.

5.    Plaintiffs Wysocki and Sidhu have not subscribed to the Community Edition Program and have not downloaded the Contact Contributor software or otherwise provided access to their emails. Plaintiffs were surprised to see their information displayed on ZoomInfo. In fact, Plaintiff Wysocki's full name, her title, years of experience, and other employment information, including the names of her work colleagues, geographical information, are all included in ZoomInfo's database. Similarly, Plaintiff Sidhu's full name, employment history, names of his work colleagues, geographical information are available on ZoomInfo's platform. ZoomInfo also

advertises that Plaintiffs' contact information, including their mobile number, is available to ZoomInfo's subscribers. Plaintiffs had no knowledge and did not consent or receive any notice from ZoomInfo that their information is being publicly disclosed, shared, sold, and/or otherwise used by ZoomInfo. Moreover, Plaintiff Sidhu has repeatedly tried to delete his information from ZoomInfo's platform but has been unable to do so despite his many attempts.

6.      Plaintiff Flemister is a published writer and owns a writing business in Georgia under the name of "Mirror Life Writings, Inc." Plaintiff Flemister has not subscribed to the Community Edition Program and has not downloaded the Contact Contributor software or otherwise provided access to her emails, but her information is displayed on ZoomInfo. Plaintiff Flemister had no knowledge and did not consent or receive any notice from ZoomInfo that her information is being publicly disclosed, shared, sold, and/or otherwise used by ZoomInfo.

7.      Worse, ZoomInfo has misleadingly connected her business to a weblink, "www.mirrorlife.com" which is not related to her business, and instead, links to a porn website. ZoomInfo's database displays Plaintiff Flemister's jointly owned residential address as the headquarters for "mirrorlife," a pornographic business. When Plaintiff Flemister discovered her business profile on ZoomInfo contains incorrect and damaging information, she promptly contacted ZoomInfo representatives, but the incorrect information continues to be a part of ZoomInfo's database and is causing her embarrassment and loss of reputation and business.

8.      Plaintiff Kellogg is a subscriber of ZoomInfo. At the time she signed up with ZoomInfo, Plaintiff Kellogg was unaware that ZoomInfo views, reads, and/or scans as well as discloses, disseminates, sells, and otherwise use of the contents of her electronic communications, including her communication with third parties and Non-Subscribers.

9.      Federal and state privacy laws uniformly recognize individuals' reasonable expectations of privacy in confidential communications, particularly those that take place via private channels, such as electronic email communications. Federal and state privacy laws prohibit unauthorized interception, viewing, reading, and/or scanning as well as disclosure, dissemination, sale, and other use of the contents of electronic communications. California specifically recognizes

privacy as a fundamental right, and accordingly, California law prohibits, among other things, recording, and sharing of confidential communications without the consent of *all* parties to the communication. Other states' laws similarly recognize individuals' privacy in electronic communications, including private email correspondence and personal information contained therein.

10.     Well aware of consumers' legitimate and reasonable expectations of privacy, ZoomInfo seeks to create the impression that it respects individuals' privacy. To that effect, ZoomInfo's Community Edition Terms of Use ("Terms of Use") and Privacy Policy purport to explain to users what information ZoomInfo views, reads, and captures after users subscribe to its free Community Edition Program. The Privacy Policy gives several explicit assurances that ZoomInfo does not view or read users' email content and that it only extracts "business information," such as signature blocks within email messages and certain "business information" found in email headers. Similarly, ZoomInfo's Terms of Use guarantee that "no human being reads" users' emails as a result of users' participation in the Community Edition Program and that only "business information" is extracted by ZoomInfo.

11.     Notwithstanding these express and implied representations, ZoomInfo intercepts, views, reads, and accesses users' electronic email communications, and subsequently discloses, disseminates, sells, and otherwise uses individual personal information that ZoomInfo scraped off their email correspondence without their knowledge or consent. ZoomInfo fails to inform individuals — including unsuspecting Non-Subscribers who never subscribed or interacted with ZoomInfo and have no way of knowing of, let alone consenting to, ZoomInfo's interception — that ZoomInfo accesses and views the entirety of individuals' incoming and outgoing communications in its quest for relevant data to extract and include in its database. Further, ZoomInfo fails to meaningfully disclose that it uses hundreds of human researchers and analysts to cleanse, organize, and verify personal information that ZoomInfo collected from Subscribers' and Non-Subscribers' email communications, which it then sells to third parties, such as marketers, recruiters, and

advertisers. Each such interception and disclosure constitute an egregious breach of social privacy norms and is a violation of federal and state law.

12.    ZoomInfo knows it lacks consent to view, read, capture, disclose, and otherwise use individuals' electronic communications therein. Upon information and belief, after extracting unsuspecting third parties' information from their email communication, ZoomInfo sends them a self-inculpatory notice (the "Privacy Notice"), informing them of the "collection, processing, and sale of certain **personal** information or **personal** data" about them. To create an impression of legitimacy, ZoomInfo informs the individuals whose personal information it has taken, that ZoomInfo's **"Legal Basis"** for the "processing of [their] personal information is based on the **"legitimate interest of itself** and its customers to engage in direct marketing."

13.    Moreover, ZoomInfo's Privacy Notice is sent from such a domain name that it is most likely to be flagged as spam and/or automatically blocked by majority of email services. According to an email optimization platform test done by Wolfpack Research, ZoomInfo's Privacy Notice reaches the inbox of only a fragment of recipients. This is because, as the Wolfpack Research Report[1] revealed, ZoomInfo's Privacy Notice is sent from a different domain than its main domain, which has a much higher rate of reaching individuals' inboxes. This is a strategic move by ZoomInfo to purportedly comply with the requirements of General Data Protection Regulation (GDPR) and/or other privacy statutes yet never truly achieve their seemingly desired goal of "informing" individuals of ZoomInfo's capturing of their information.

14.    To be sure, ZoomInfo possesses the technological wherewithal to ensure that its Privacy Notice reaches the intended recipients. ZoomInfo utilizes sophisticated Search Engine Optimization that ensures that ZoomInfo-owned websites occupy several first search results pages on Google and that Google search engine yields predominantly displayed content published by ZoomInfo. It is only when ZoomInfo sends out Privacy Notices that they fail to reach the majority of the intended readers.

---

[1] ZI Employee Reveals that the Secret Sauce Is CEO's College Roommate, *available at* https://wolfpackresearch.com/research/zoom/ (last visited June 21, 2022)

15. ZoomInfo's violations are deliberate and calculated to increase revenues for ZoomInfo. ZoomInfo profits from the invasion of privacy by using Subscribers' and Non-Subscribers' personal information without consent or authorization to improve its database to make its platform more attractive to paying customers, such as marketers, recruiters, and advertisers. ZoomInfo monetizes its platform via paid subscriptions to more than 20,000 customers, of which over 1,500 have an annual contract value over $100,000. In short, ZoomInfo intentionally, willfully, and knowingly violated and continues to violate Plaintiffs' and Class Members' privacy rights for profit.

## II.  **JURISDICTION AND VENUE**

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (i) at least one Plaintiff is a citizen of a different state than the Defendants; (ii) the amount in controversy exceeds $5,000,000; and (iii) there are at least 100 individuals in the putative class that Plaintiffs seek to represent through this action.

17. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under a federal statute. This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claims over which the Court has original jurisdiction.

18. This Court has personal jurisdiction over Defendants because their principal place of business is in the State of Washington. Additionally, the injuries, damages, and/or harm upon which this action is based occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from the State of Washington. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of Washington. ZoomInfo has engaged, and continues to engage, in substantial and continuous business practices in the State of Washington. Moreover, ZoomInfo's

Terms of Use provide that: "[T]hese Terms are governed by the laws of the United States of America and the State of Washington and any action or proceeding (including those arising from non-contractual disputes or claims) related to these Terms will be brought in a state or federal court in the State of Washington."

19.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the conduct described in this Complaint was carried out in this District. Furthermore, Defendants are headquartered in this District and subject to personal jurisdiction in this District.

## III.   PARTIES

### A.   PLAINTIFFS

20.   Plaintiff Wysocki is a natural person and citizen of the State of Connecticut. Plaintiff is an attorney and has a heightened privacy interest in her emails. Plaintiff used both Outlook and Gmail during the class period. Plaintiff regularly uses her email for work and the contents of her emails are privileged and confidential, protected by attorney-client privilege or work-product doctrine. Plaintiff has not subscribed to ZoomInfo's services, including the Community Edition Program, and has not purchased any of ZoomInfo's paid products or services. Despite not subscribing to ZoomInfo and any of their services, Plaintiff's information including her full name, her place of employment, her position, years of experience, and geographical location is available on ZoomInfo. ZoomInfo also makes her contact information available to ZoomInfo subscribers, even including her mobile number, which she does not use for her work and is not "Business Information." Plaintiff had no knowledge of ZoomInfo's collection of her personal information or of any potential viewing, sharing, selling, replicating, or otherwise using of her personal information, nor did she consent to any of these practices.

21.   Plaintiff Sidhu is a natural person and citizen of the State of Connecticut. Plaintiff has not subscribed to ZoomInfo's services, including the Community Edition Program, and has not purchased any of ZoomInfo's paid products or services. Despite not subscribing to ZoomInfo or any of their services, Plaintiff Sidhu's information including his full name, his employment history, his

position, years of experience, and geographical location is available on ZoomInfo. ZoomInfo also makes his contact information available to ZoomInfo subscribers, even including his mobile number. Plaintiff had no knowledge of ZoomInfo's collection of his personal information or of any potential viewing, sharing, selling, replicating, or otherwise using of his personal information, nor did he consent to any of these practices. Plaintiff requested that ZoomInfo delete his information from their database to no avail, as his information reappeared on their platform within just a few days of his request.

22.    Plaintiff Kellogg is a natural person and citizen of the State of California. Plaintiff is a subscriber of ZoomInfo. At the time she signed up, Plaintiff Kellogg was unaware that ZoomInfo views, reads, scans her incoming and outgoing email communications, including the message contents to collect her personal information and of other third parties.

23.    Plaintiff Flemister is a natural person and citizen of the State of Georgia. Plaintiff has not subscribed to ZoomInfo's services, including the Community Edition Program, and has not purchased any of ZoomInfo's paid products or services. Despite not subscribing to ZoomInfo or any of their services, Plaintiffs' business' "Mirror Life Writings, Inc." appears on ZoomInfo's platform. What is even worse that the information displayed is extremely damaging as it incorrectly links Plaintiff Flemister's business to a weblink associated with a porn website (www.mirrorlife.com) which is similarly named as her business. This mistake has caused and has the potential to cause Plaintiff Flemister serious damage to her reputation, embarrassment, and loss of business. Recently, Plaintiff Flemister discovered that ZoomInfo publicly displays her jointly owned residential address as the headquarters address of the porn business "mirrorlife.com." This mistake is causing even further damage to Plaintiffs' reputation and damaging the reputation and value of her property, including her business. Plaintiff had no knowledge of ZoomInfo's collection of her personal information or of any potential viewing, sharing, selling, replicating, or otherwise using of her personal information, nor did she consent to any of these practices. Plaintiff requested that ZoomInfo delete her information from its database to no avail, as her incorrect information reappeared on its platform within just a few days of his request.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**B. DEFENDANTS**

24.     Defendant ZoomInfo Technologies, Inc., is a Delaware corporation, with its principal place of business at 805 Broadway St. Suite 900, Vancouver, WA. It was founded in 2007 by its current CEO, Henry Shuck. Prior to its acquisition by DiscoverOrg in February 2019, ZoomInfo was known as Zoom Information, Inc. The combined business was incorporated as the former ZoomInfo Technologies Inc. on November 14, 2019, for the purpose of facilitating the IPO, which took place on June 8, 2020. As of December 31, 2021, ZoomInfo had 2,742 employees across North America, the Middle East, Asia and Europe.

25.     Defendant ZoomInfo Technologies LLC was converted from Defendant Zoom Information, Inc., on January 7, 2020, and is organized under the laws of Delaware. It has its principal place of business in Vancouver, Washington.

26.     Defendant ZoomInfo Holdings LLC is a Washington limited liability company and organized under the laws of Delaware. It has its principal place of business in Vancouver, Washington.

27.     Defendant ZoomInfo Intermediate Inc. is a Delaware corporation and a direct subsidiary of ZoomInfo Technologies Inc.

**IV.   SUBSTANTIVE ALLEGATIONS**

**C. Background Information About ZoomInfo's Business Model**

28.     ZoomInfo is a subscription-based provider of software as a service ("SaaS") headquartered in Vancouver, Washington. ZoomInfo sells access to a database of information and analytics to marketing, operations, and recruiting professionals and other organizations. According to ZoomInfo's regulatory filings, ZoomInfo's cloud-based operating system aggregates and extracts distinct types of data and intelligence on business organizations and professionals, including information on companies' personnel moves, planned investments, technologies used by companies, "intent signals" (information related to what prospects and customers to engage with and when), decision-maker contact information, including email addresses, titles, and phone numbers, advanced attributes (such as granular department and location information, and employee trends),

organizational charts, news and events, hierarchy information, locations, funding details, and revenue information from millions of public and proprietary sources.

29.     In addition to selling paid subscription packages, ZoomInfo offers a free program called Community Edition. Community Edition gives users free ongoing limited access to ZoomInfo's database of profiles of individuals and entities, which ZoomInfo claims contains profiles for over 10 million businesses and 125 million business professionals. In exchange for the free access to ZoomInfo's database, Community Edition, Subscribers are required to register and download a computer tool called the Contact Contributor or otherwise provide access to their email. Contact Contributor is a software application for Microsoft Outlook and/or Google Business Apps that enables ZoomInfo to obtain address books and other information from all of users' incoming and outgoing emails, which ZoomInfo uses to build out its database.

30.     According to ZoomInfo, Community Edition program selectively focuses on address books, email headers, and email signatures to create profiles of individuals and entities. ZoomInfo's entire contributory network —including Community Edition Program Subscribers — contributes approximately 50 million contact records events *daily,* comprising of "email signatures, email deliverability and contact update records . . . as well as unattributed data through integrations with . . . customers' CRM and sales & marketing automation systems." The 200,000 Community Edition Subscribers alone generate enough email traffic to allow ZoomInfo to scrub 10 million signature blocks *daily*. ZoomInfo claims that each month, it adds 2,000 businesses and 30,000 employees, and that it updates 20,000 businesses and 300,000 employees. ZoomInfo readily admits on its website and elsewhere that its ability to "map the business landscape in near real time [ ] dramatically improve[s] the quality of B2B information"[2] and that the information it extracts "improve[s] the size and quality of [its] Directory."[3]

31.     In reality, and unbeknownst to the unsuspecting consumers, ZoomInfo, through their Community Edition program, reads the entirety of their email correspondence in the quest for

---

[2]   https://www.zoominfo.com/b2b/faqs/community-edition (last visited June 13, 2022).
[3]   https://www.zoominfo.com/about-zoominfo/privacy-policy (last visited June 13, 2022).

information that ZoomInfo can harvest for inclusion in their database. Through the Contact Contributor software or email access, ZoomInfo downloads the contents of the email message to capture the "Business Information." In some cases, the downloaded emails are quality-checked by human researchers to separate the email message from "Business Information" and to verify the "Business Information."

32.     Based on ZoomInfo's express and implied representations (as described in detail in Sec. IV.C.), Subscribers do not understand that use of Community Edition program will allow ZoomInfo to view, read, or otherwise inspect the contents of their email communications. Critically, the information collected by Community Edition program comprises of, to a large extent, information that originates with Non-Subscribers who never used, visited, subscribed, or otherwise interacted with ZoomInfo and who have no way of knowing that they are corresponding with a Subscriber whose emails are being scanned by ZoomInfo. As a result, Non-Subscribers lack any opportunity to authorize or consent to the viewing, reading, and scanning practice nor the collection, processing, and sale of their personal information, including the content of their correspondence with Subscribers.

33.     Worse, ZoomInfo readily admits to using a team of human research analysts and data scientists to clean business-to-business data, which according to ZoomInfo includes addressing data and intelligence gaps, tagging anomalies in data, reviewing data pieces that require another manual verification, and identifying methods to automate data gathering. ZoomInfo claims that this "human-in-the-loop" approach ensures at least 95% accuracy of its data, and thereby benefits ZoomInfo by enhancing the reliability of its database. This "human-in-the-loop approach" directly contradicts ZoomInfo's explicit claims in its Privacy Policy that "no human being reads" emails as a result of users' participation in the Community Edition Program.

**D.  Subscribers and Non-Subscribers Have a Reasonable Expectation of Privacy in Their Electronic Email Communication**

34.     Contrary to ZoomInfo's self-serving assertions denying the existence of an expectation of privacy in "Business Information," the vast majority of employees do maintain an

expectation of privacy in their employment information and work communications as evidenced by several consumer studies and opinion polls, reflecting broader societal norms. This expectation is far from new: 80% of respondents to a 2001 poll conducted by Harris stated that not being monitored at work was either extremely or somewhat important to their privacy.[4] Over twenty years later, the expectation remains the same, despite the exponential growth in the ability of companies like ZoomInfo to intrude, track, and catalog employee communications and activities. According to a 2020 research poll conducted by Pew Research, a large majority of Americans, 67%, believe they should have the right to exclude information about employment history or work records from online search results which are available to the public.[5] Similarly, a 2019 Gartner poll found that a mere 30% of employees were comfortable with their employers' undisclosed monitoring of their email communication.[6]

35.     Despite their clear expectation of privacy in their employment information and work-related emails, 81% of Americans feel as though they have little to no control over the data gathered about them by private companies.[7] Further, the public is wary of the purported benefits of data collection, with 81% of respondents in that same Pew Research Center poll stating that the potential risks posed by companies' data collection outweigh the benefits.[8] According to a recent consumer privacy survey conducted by Cisco, 72% of respondents believed that organizations have an obligation to use artificial intelligence ("AI") responsibly and ethically, and over half of

---

[4]   EPIC.ORG, Public Opinion on Privacy, (Aug. 2001), *available at* https://archive.epic.org/privacy/survey/.

[5]   Brooke Auxier, *Most Americans support right to have some personal info removed from online searches,* PEW RESEARCH CENTER (Jan. 27, 2020), *available at* https://www.pewresearch.org/fact-tank/2020/01/27/most-americans-support-right-to-have-some-personal-info-removed-from-online-searches.

[6]   Brian Kropp, *The Future of Employee Monitoring,* GARTNER (May 3, 2019), *available at* https://www.gartner.com/smarterwithgartner/the-future-of-employee-monitoring.

[7]   Brooke Auxier et. al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER (Nov. 15, 2019), available at https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information.

[8]   *Id.*

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

respondents, 56%, stated that they were concerned about how businesses use AI technologies.[9] Thus, ZoomInfo's assertion that the American public lacks a reasonable expectation of privacy in their digital employment information and work communications is simply wrong.

### E.  ZoomInfo's Misleading Disclosures to Subscribers

36.     Prior to accessing ZoomInfo's platform through Community Edition program, users are required to agree to ZoomInfo's Community Edition Program Terms of Use (attached as Exhibit A) and ZoomInfo's Privacy Policy (attached as Exhibit B), by checking a box that states:

> I agree to the Terms of Use and Privacy Policy. I understand that I will receive a subscription to ZoomInfo Community Edition at no charge in exchange for downloading and installing the ZoomInfo Contact Contributor utility, which, among other features, involves sharing my business contacts as well as headers and signature blocks from emails that I receive.

37.     The "Terms of Use" and "Privacy Policy" in the above paragraph is hyperlinked, such that by clicking on each, the user is redirected to a separate webpage containing the pertinent document in full.

### i. Privacy Policy

38.     ZoomInfo's Privacy Policy's stated purpose is to explain how ZoomInfo "collect[s] information pertaining to businesses and businesspeople ("Business Information") . . . and all other types of information, ***including personal information***," and how ZoomInfo "maintain[s], use[s], and share that information." While the Privacy Policy states that "Business Information" is "information pertaining to businesses and businesspeople," it does not define, clarify, or give examples of what "personal information" means.

39.     ZoomInfo states that the Business Information it collects comes from: (i) "the contacts within your email client and 'signatures' within email messages"; and (ii) "the headers of your emails." ZoomInfo makes it sound like "Business Information" is voluntarily contributed by

---

[9]   CISCO SYSTEMS, INC., *Cisco 2021 Consumer Privacy Survey*, (Sept. 29, 2021) *available at https://www.cisco.com › about › trust-center › docs.*

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

users alone: *"[u]sers contribute Business Information about themselves or other people and companies."*

40.    ZoomInfo's Privacy Policy also represents that "ZoomInfo only wants business-related information [and t]herefore, any contacts that have an address from a consumer-oriented service such as Gmail, Hotmail, or Yahoo are disregarded." The Privacy Policy misleadingly assures customers that "*ZoomInfo does not 'read' the body of your email messages; our technology automatically extracts only the data we describe in this Policy.* We do not collect data from custom fields or notes in your email client."

### ii. Terms of Use

41.    The Community Edition Terms of Use repeat the assurances given in the Privacy Policy that ZoomInfo looks only at email headers and signature blocks: "[ZoomInfo] use[s] automated computer processes to identify the signature block and email header and to extract the business contact information of the sender and metadata from the email header."

42.    Buried deep within the document, though, is a paragraph that contradicts ZoomInfo's earlier, more explicit representations that ZoomInfo does not read the content of emails and does not collect information from personal email accounts such as Gmail:

> 2.1 By accepting this Agreement and registering for Community Edition, and as a condition to accessing and using the Services, you authorize the Application [meaning Community Edition software] *to access* the information in your email account (e.g. *Gmail,* **Microsoft Outlook**), including your contacts, metadata from email headers, *and email content.* You acknowledge, understand, and agree that after this permission is granted and until it is revoked, *the Application will use automated algorithms to automatically parse this information and extract certain information* regarding businesses and business people, such as name, email address, job title, department, company name, phone numbers, business address(es), website URLs, metadata from email headers, and other similar business-related information (collectively "Contact Data") that may be stored in your email account both locally or on a remote server.

43.    ZoomInfo clearly realizes that it must obtain Non-Subscribers' consent before accessing their information, but instead of doing so in any legitimate way, ZoomInfo purports to put

the burden of doing so on its own users. Specifically, in its Terms of Use, ZoomInfo includes the following statement:

> You represent and warrant that you have the right to provide us with this information and that, if your email account is owned by your employer, you are authorized by your employer to sign up for Community Edition. If you do not have that right or that authorization (if applicable), you may not and must not use the Service.

44.     Of course, ZoomInfo knows that ZoomInfo's customers do not have the "right" to consent to ZoomInfo's scraping of private information from third parties' emails on behalf of those third parties.

45.     Alarmingly, ZoomInfo's Terms of Use purport to secure for itself an irrevocable and unrestrained right to use all the information it obtains, including "email content," from Subscribers and third parties alike. In particular, provision 2.1 defines "Contact Data" as "contacts, metadata from email headers, and ***email content.***" Furthermore, provision 2.3 states that by subscribing to Community Edition Program, Subscribers agree to grant ZoomInfo "***an irrevocable license*** to reproduce, distribute, publish, perform, make derivative works of, or display the Contact Data or any portion thereof, and sell, transfer, assign, sublicense, disclose, or make available the Contact Data or any portion thereof to any third party, including ZoomInfo's customers, contractors, strategic partners, agents, and service providers.

46.     In other words, ZoomInfo essentially seeks to secure for itself unlimited, perpetual and absolute ownership of this information, including email content, belonging to individuals who may have no idea about ZoomInfo's collection, sharing, and selling practices, including after a Subscriber terminates the Community Edition Program and otherwise cuts all ties with ZoomInfo. Pursuant to ZoomInfo's Terms of Use, there is no possible way to retrieve or prevent further use of information, including email content, that ZoomInfo obtains from Subscribers and other unsuspecting third parties.

*iii. ZoomInfo Website*

47.     ZoomInfo's FAQ website[10] doubles down on ZoomInfo's misleading claims, making several representations that fail to disclose ZoomInfo's actual practices of scanning the contents of emails and involvement of human researchers in the processing, cleaning and verification of data collected from Subscribers and Non-Subscribers, stating:

> Contact Contributor *shares only business contact information*, *essentially the information a person would normally include on a business card*: Name, Company, Title, Email Address, and Phone Number. Personal email address (such as those from Gmail, Hotmail, Yahoo, etc.) are filtered out. (emphasis in original). Contact Contributor operates locally, *and only business contact information is shared with ZoomInfo*. *The body of your email is never seen by ZoomInfo*; in fact, it never leaves your email.

48.     Furthermore, ZoomInfo's FAQ website assures users that ZoomInfo "do[es] not collect any sensitive personal information from Community Edition Subscribers; simply business contact information of the type that hundreds of millions of business professionals share every day, online, on their business cards, and otherwise."

49.     As to the question "Does Contact Contributor read my email messages?" ZoomInfo emphatically denies it, stating:

> *Absolutely not.* Contact Contributor operates locally on your email client and looks only at address book entries, email headers, and email signatures to capture basic business contact information. All other information is excluded.

50.     ZoomInfo concedes that it uses a team of in-house human researchers, analysts, and data scientists for manual verification, and improvement of ZoomInfo's algorithms used in its artificial intelligence. What it does not clearly disclose, though, is that it uses hundreds of human researchers and analysts to verify the information that ZoomInfo collected from Subscribers' and Non-Subscribers' email accounts, which it then sells to third parties, such as marketers, recruiters, and advertisers.

---

[10]   https://www.zoominfo.com/b2b/faqs/community-edition (last visited June 16, 2022)

###### iv. Privacy Notice

51.     Rather than obtaining valid consent prior to collecting information, ZoomInfo seeks to cure its privacy violations after the fact by sending individuals whose personal information it has *already taken* an email notification ("Privacy Notice"), purporting to inform them of the *"collection, processing, and sale of certain personal information or personal data about you . . ."* and providing a list of "personal information that it *may* have taken":

Name

Company

Office Address

Telephone Number

Email Address

Job Title

Job Function and Responsibilities

Education

Social Media URL

52.     In its Privacy Notice, ZoomInfo states that the personal information it has taken about the Non-Subscriber is processed for "direct marketing purposes [and] may be licensed to [ZoomInfo] customers for their sales, marketing, or recruiting purposes, or to other organizations who may license it to their customers for the same purposes ("partners")." The Privacy Notice further advises that "[ZoomInfo's] customers, or those of our partners, may use the information to market their services to your employer or to contact you about professional opportunities."

53.     To create an impression of legality, ZoomInfo includes a paragraph titled "Lawful Basis," providing the purported legal grounds for its collection and use of individuals' personal information, stating: "ZoomInfo's processing of your personal information is based on the *legitimate interest of itself* and its customers to engage in direct marketing."

54.     ZoomInfo purportedly gives recipients of its Privacy Notice an opportunity to opt out of ZoomInfo's database by visiting a hyperlink that leads to ZoomInfo's Privacy Center. However, to opt out of ZoomInfo's database and request that information be removed and deleted,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

users are required to provide ZoomInfo with their email address, to which ZoomInfo subsequently sends a verification email. Furthermore, while ZoomInfo promises to exclusively use the email address provided to it in the context of profile deletion, ZoomInfo also states that it "cannot guarantee that other data providers will *see or honor* your opt-out request."

55.   In reality, ZoomInfo itself does not respect or honor a person's choice to opt out of ZoomInfo's database. To be sure, there are over hundred complaints lodged with Better Business Bureau complaining of lack of action by ZoomInfo in taking down information of people who have opted out. What's worse, as many consumers complain, is once a person is finally able to take their information down, it reappears a few days later on ZoomInfo's database.

56.   Although ZoomInfo purportedly sends a Privacy Notice, the Privacy Notice is designed to never reach its recipients. According to a report by Wolfpack Research, while ZoomInfo sends their regular communication through a domain name that reaches 95% of its audience, the Privacy Notice is intentionally sent from a different domain name, which only reaches a fragment of the recipients' inboxes. As Wolfpack Research revealed, the Privacy Notice ZoomInfo sends to purportedly inform individuals of its information collection practices, reaches as little as 5% of the recipients' inboxes. This is by design. Upon information and belief, the email intended to deliver the Privacy Notice contains metadata that is intended to trigger standard email accounts' spam filters such that the Privacy Notice is diverted into spam, and not to individuals' inboxes. ZoomInfo's algorithm manipulation and search engine optimization are also clear from the fact that the first few pages of Google search results are dominated by content posted by ZoomInfo.

57.   Moreover, according to ZoomInfo's Code of Community, ZoomInfo also discloses to its customers the fact that individuals whose information ZoomInfo collected from those customers' email accounts, have opted out of ZoomInfo.[11] Thus ZoomInfo continues to use the opted-out email address provided for purposes of deleting one's information from ZoomInfo's database, for its own continued use and processing.

---

[11] https://www.zoominfo.com/b2b/community-edition-data (last visited June 16, 2022)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

* * *

58.     Besides the Terms of Use, Privacy Policy, ZoomInfo websites, and/or the Privacy Notice, ZoomInfo publishes on its website numerous other documents and web pages that purport to describe its practice of collecting, sharing, and selling information collected via its Community Edition Program. ZoomInfo expects users to sort through dozens of different documents spread across several web pages and piece together its representations from various portions of one or more of these documents. Even if someone managed that feat, ZoomInfo's description of what data it collects, from where, and what it does with that date are vague, confusing, incomplete, and sometimes completely contradictory. No reasonable ZoomInfo Subscriber would understand that acceptance of ZoomInfo's Terms of Use or Privacy Policy results in giving ZoomInfo irrevocable permission to its unfettered collection, use, sharing and sale of Subscribers' and Non-Subscribers' personal information, including content of their and other individuals' electronic email communication.

59.     Besides misleading and incomplete disclosures to scrape data and personal information off Class Members' emails, the Wolfpack Research Report also revealed that ZoomInfo purchases stolen data from the internet to include on its website. The lengths ZoomInfo can go to collect data and personal information is apparent from the fact that ZoomInfo uses SGN Database LLC ("SGN"), which helps the Company to obscure its purchase of stolen data.

60.     According to the Wolfpack Research Report, ZoomInfo had a contract with SGN to get OxyLeads data through May 2021. OxyLeads is a cloud-based lead generation and digital prospecting platform which helps generating contact lists based on industry, revenue and other helpful keywords. ZoomInfo would use SGN to veil its transactions with OxyLeads and indirectly request data depending on its strategic objectives for the month. ZoomInfo used this indirect route to obtain the data because it knew that data received from OxyLeads was of dubious origin. OxyLeads was alleged to have scraped off private data from millions of LinkedIn users when individual profiles were found on a publicly accessible server. As the Wolfpack Research Report revealed, ZoomInfo secretly bought illegally collected data from OxyLeads using SGN as a veil to

continuously update its database. ZoomInfo then uses this illegally sourced data to build its platform. Data from sources like LinkedIn is considered valuable because the information comes directly from data subjects and companies like ZoomInfo are able to buy the illegally sourced data cheaply from companies like OxyLeads. ZoomInfo then benefits from people's personal information to build its own database. ZoomInfo does not disclose its use of SGN or that it buys data from other sources (including those of questionable legality) to build its database.

61.     ZoomInfo's efforts to obfuscate its relationship with OxyLeads further substantiates that OxyLeads procures the data by unlawful means. According to Wolfpack Research, the unlawfully sourced data is then sold to ZoomInfo and used by ZoomInfo. According to Wolfpack Research, OxyLeads data was considered problematic because it appeared to be a result of hacking and illegal scraping off LinkedIn sites. ZoomInfo, which at least had an agreement with OxyLeads until 2019, buys this data and publishes it on their website, without any hesitation to it being illegally collected. According to former employees of ZoomInfo, the use of OxyLeads data was an open secret and complaints by ZoomInfo's employees about using unethically mined data were ignored.

62.     While executives go out of their way to convince consumers about the legality of their practices, their internal activities are the opposite. Insider sales show executives are shedding massive number of shares of the Company in an unprecedented manner. For example, in the last six months, Chief Executive Officer and Founder of ZoomInfo, Henry Schuck has sold over a million shares for proceeds exceeding $57 million. Other executives including ZoomInfo's President and COO, Hays Joseph Christopher, has parted with 95,771 of his personal shares worth $6,673,805 in the last six months while the CFO, Hyzer Peter Cameron has sold 45,000 shares worth $5,400,552.

**F.  ZoomInfo Benefits from its Practice of Intercepting Individuals' Electronic Communication**

63.     Contrary to its representations, ZoomInfo intercepts and processes Subscribers' and Non-Subscribers' incoming and outgoing email during transit and before the emails reach its storage location.

64.    ZoomInfo analyzes the content of Subscribers' and Non-Subscribers' emails while searching for relevant information; collects and categorizes the information it extracts; and stores the information for its own use and for purposes of sharing and selling the information to third parties for ZoomInfo's own financial, commercial and competitive advantage.

65.    ZoomInfo uses the information it unlawfully collects from the incoming and outgoing emails of the Subscribers and Non-Subscribers to create user profiles of individuals and entities. The practice of creating a comprehensive database of business entities, business professional, along with their employment-based information, such as job title, responsibilities, promotions, and social and professional affiliations enhances the value of ZoomInfo's database, and therefore, gives ZoomInfo the ability to offer for sale the subscription-based access to its database. By increasing the data volume of its database, ZoomInfo gains the ability to attract more paid subscription-based customers, which translates to higher revenue for ZoomInfo.

66.    ZoomInfo uses its own human employees in the process of cleaning, organizing, and verifying data collected from contributory network. ZoomInfo admits that it does so to train its AI and ML-powered engines that gather data from millions of sources. ZoomInfo employs over 300 research analysts and 40 data scientists for that purpose. ZoomInfo's use of humans in the quality-control process is directly contrary to ZoomInfo's own assurances that "[n]o human being reads [users'] email because of [users'] use of Community Edition."

**G. ZoomInfo's Unlawful Actions Have Personally Harmed Plaintiffs Who Did Not Consent to ZoomInfo's Interception**

67.    The Non-Subscriber Plaintiffs have not created an account with ZoomInfo, did not subscribe to or use any of ZoomInfo's services, have not purchased any of ZoomInfo's products, and never knowingly provided ZoomInfo with any information, including their name, contact information, employment-related information, or URLs associated with any of Non-Subscriber Plaintiffs' professional or social networks. Upon information and belief, ZoomInfo intercepted Plaintiffs' emails and accessed its contents, including the signature block contained within the body of Plaintiffs' emails. Upon information and belief, ZoomInfo disclosed the unlawfully taken

information to other third parties, including, but not limited to, by publishing Plaintiffs' contact information on ZoomInfo's own database, and potentially selling, replicating, and/or otherwise using Plaintiffs' information to other third parties. Plaintiffs did not know of or authorize the interception and subsequent disclosure and use of this information.

68.    At no point did the Plaintiffs consent to or authorize ZoomInfo to intercept, view, read, process, capture and/or share, disclose, or otherwise misuse their information poached from her email communications. ZoomInfo does not adequately disclose its collection, sharing, and selling practices, specifically that Contact Contributor scans, reads, or otherwise reviews the contents of their email correspondence with third parties. Plaintiffs relied on ZoomInfo's assurances and freely exchanged email correspondences which they would not have had had they known that such conversations were being intercepted by ZoomInfo. Plaintiffs did not agree to having ZoomInfo intercept, scan, read or otherwise review the contents of their email correspondences with third parties through their use of Contact Contributor. Plaintiffs would not have had private conversations with third parties had they known that ZoomInfo engaged in the unlawful actions described herein.

69.    Plaintiff Wysocki is an attorney who regularly uses her email for her work. She is frequently exchanging emails with other attorneys and her clients. Plaintiff used both Gmail and Microsoft Outlook during the Class Period. The contents of her emails are privileged and confidential, protected by attorney-client privilege or work-product doctrine. She has never subscribed or used any ZoomInfo service but her information, including her full name, place of employment, years of experience, geographical location, and her contact information is available on ZoomInfo's platform. ZoomInfo also makes available her contact information if you subscribe to ZoomInfo which includes her mobile number, which she does not use for her work and is not "Business Information." ZoomInfo's scanning, reading, or otherwise reviewing the contents of her email is a highly offensive and egregious breach of her privacy and that of her clients.

70.    Similarly, Plaintiff Sidhu uses his email for work communications with his clients and colleagues and the contents of his emails are confidential. He has never subscribed to ZoomInfo

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

or used any ZoomInfo service yet his full name, place of employment, employment history, geographical location and contact information is publicly displayed on ZoomInfo's platform. His repeated requests to get his information deleted from ZoomInfo have failed and his information keeps reappearing on ZoomInfo's platform without his consent. ZoomInfo's scanning, reading, or otherwise reviewing the contents of her email is a highly offensive and egregious breach of his privacy and that of his clients.

71.    Plaintiff Kellogg is a small business owner of a brand marketing and graphic designing service. Plaintiff Kellogg is a subscriber of ZoomInfo. At the time she signed up, Plaintiff Kellogg was unaware of ZoomInfo's data scraping practices. ZoomInfo viewed, scanned, and read her personal and confidential communications, without her consent and knowledge.

72.    Plaintiff Flemister is a published writer and owner of a writing business registered in Georgia by the name of "Mirror Life Writings, Inc." She has never subscribed to ZoomInfo or used any ZoomInfo service, yet her business is displayed on ZoomInfo's platform. Her business profile on ZoomInfo, however, contains wrong information and links her to a similarly named porn website (www.mirrorlife.com) as the website associated with her business. Moreover, ZoomInfo publicly displays her jointly owned residential property as the business headquarters of the porn business. The inclusion of information without her consent or authorization, which is also incorrect, has caused and has the potential to cause Plaintiff Flemister embarrassment and loss of business. Plaintiff Flemister at no time received any information or "Privacy Notice" from ZoomInfo attempting to obtain her consent before including the information about her business on Zoominfo. Even worse, despite her many attempts to have the information removed, nothing has been done and her business and residence continue to be associated with a porn business.

73.    Plaintiffs would like to continue to use their personal and work-related email accounts in the future but are uncertain as to whether ZoomInfo has ceased its unlawful practices and violation of their privacy rights without the equitable relief requested herein, specifically an injunction prohibiting ZoomInfo from engaging in the unlawful practices alleged herein. This is particularly the case given the surreptitious nature of ZoomInfo's misconduct.

## V.   TOLLING OF THE STATUTE OF LIMITATIONS

74.     The applicable statutes of limitations have been tolled by ZoomInfo's knowing and active concealment and denial of the facts alleged herein, namely its practice of intercepting, viewing, reading, processing, disclosing, and misusing Plaintiffs and Class Members' email correspondence and communications. Plaintiffs and Class Members could not have reasonably discovered the truth about ZoomInfo's practices until shortly before this class action litigation was commenced.

75.     As alleged in detail herein, ZoomInfo expressly assures consumers that neither ZoomInfo nor its Contact Contributor software reads, views, processes, discloses, or otherwise uses the contents of Plaintiffs' and Class Members' email correspondence. ZoomInfo further asserts that it *only* captures, processes, and analyzes business contacts, headers and signature blocks from emails. These assurances are prominently featured in ZoomInfo's Privacy Policy and other marketing materials. No reasonable user would be placed on notice that she should scour the remainder of the documents and links found on ZoomInfo's website to uncover other "disclosures" directly contradicting those assurances. And Non-Subscribers, of course, would have no reason at all to investigate whether they have corresponded with a Contact Contributor Subscriber and had their data mined by ZoomInfo as a result.

## VI.   CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Classes:

**Nationwide Subscriber Class:** All individuals who reside in the United States and its territories who subscribed to ZoomInfo's Community Edition whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent during the applicable statute of limitations period (the "Class").

**Nationwide Non-Subscriber Class:** All individuals who reside in the United States and its territories who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**Washington Non-Subscriber Subclass**: All individuals who reside in the State of Washington who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**California Non-Subscriber Subclass:** All individuals who reside in the State of California who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**Florida Non-Subscriber Subclass:** All individuals who reside in the State of Florida who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**New York Non-Subscriber Subclass:** All individuals who reside in the State of New York who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**Connecticut Non-Subscriber Subclass:** All individuals who reside in the State of Connecticut who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**Illinois Non-Subscriber Subclass:** All individuals who reside in the State of Illinois who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

**Georgia Non-Subscriber Subclass:** All individuals who reside in the State of Georgia who did not subscribe to ZoomInfo's Community Edition and whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent as a result of their corresponding with any Member of the Subscriber Class during the applicable statute of limitations period.

77.     Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors,

predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

78.     **Ascertainability:** Membership of each Class is defined based on objective criteria, and individual members will be identifiable from Defendants' records, including records reflecting Class Members' subscription to ZoomInfo's Community Edition program and from the contact information of members of Non-Subscriber Class derived from, among other places, the Contact Contributor software.

79.     **Numerosity:** The exact number of members of the Class(es) is unknown and unavailable to Plaintiffs at this time, but individual joinder in this case is impracticable. The Classes likely consist of thousands if not millions of individuals and Class Members can be identified through Defendants' records.

80.     **Predominant Common Questions:** The Classes' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Classes include, but are not limited to, the following:

     a.     whether ZoomInfo intercepts, views, reads, processes, discloses, or otherwise misuses users' personal information;

     b.     whether individuals have a reasonable expectation of privacy in their email correspondence and in their employment and work-related matters under federal law and the laws of the various states, as alleged herein;

     c.     whether ZoomInfo's business practices of intercepting, viewing, reading, processing, disclosing, or otherwise misusing users' personal information violated state and federal laws, as alleged herein;

d.  whether ZoomInfo's business practices of intercepting, viewing, reading, processing, disclosing, or otherwise misusing users' personal information constitute a breach of the contract between ZoomInfo and members of the Subscriber Class;

e.  whether Plaintiffs and Class Members are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein;

f.  whether, for the Nationwide Non-Subscriber Class alleged herein, California has a significant contact to the claims of each class member to apply California law to all members of the Nationwide Non-Subscriber Class; and

g.  whether Plaintiffs and Class Members have sustained damages or lost money or property as a result of ZoomInfo's conduct, and, if so, what is the appropriate measure of damages or restitution.

81.  **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the proposed Classes. Plaintiffs and Class Members suffered an invasion of privacy as a result of Defendants' wrongful conduct that is uniform across the Classes.

82.  **Adequate Representation:** Plaintiffs have fairly and adequately represented and protected the interests of the Classes and will continue to do so. They have retained counsel competent and experienced in complex litigation and class actions, including privacy violations. Plaintiffs have no interests that are antagonistic to those of the Classes, and Defendants have no defenses unique to the Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Class.

83.  **Substantial Benefits:** This Class Action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. This proposed Class Action presents fewer management difficulties than individual litigation, and provides the benefits of single

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

84.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Violation of the Wiretap Act
Title 1 of the Electronic Communications Privacy Act
("ECPA") (18 U.S.C. §2510, *et seq*.)
(on Behalf of Plaintiffs and all Classes)**

85.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

86.     The Wiretap Act prohibits the intentional interception by any person of the content of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication. 18 U.S.C. § 2520(a).

87.     "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system that affects interstate or foreign commerce…" 18 U.S.C. § 2510(12).

88.     "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

89.     "Contents" is defined as "includ[ing] any information concerning the substance, purport, or meaning of that communication[.]" 18 U.S.C. § 2510(8).

90.     "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation[.]" 18 U.S.C. § 2510(6).

91.     Plaintiffs and Class Members, as individuals, are persons as defined under 18 U.S.C. §2510(6).

92.     ZoomInfo, as a corporation, is a person as defined under 18 U.S.C. § 2510(6).

93.     Plaintiffs and Class Members exchanged electronic communication via their respective email accounts during the Class Period by using their computers, smart phones, tablets, and other electronic devices.

94.     ZoomInfo's Contact Contributor is a device for purposes of the Wiretap Act because it is a software program used to intercept electronic communications and because it transmits a signal through a wire, cable, or other like connection used in wire communication.

95.     Plaintiffs and Class Members' private and personal emails that were intercepted in real time by ZoomInfo are "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

96.     Plaintiffs and Class Members reasonably expected that ZoomInfo was not intercepting, viewing, reading, processing, capturing, and/or disseminating their electronic communications transmitted via their electronic devices, including their computers based on: (i) the context in which these electronic communications occurred, namely personal and professional settings at Plaintiffs' homes, workplaces and other private areas, to which access of all other persons is prohibited absent Plaintiffs' consent; (ii) a general understanding of how email communications are transmitted, delivered, and shared, and based on ZoomInfo's own assurances; and (iii) ZoomInfo's status as a party to those electronic communications who was not an intended party to or recipient of Plaintiffs and Class Members' private electronic communications.

97.     Pursuant to 18 U.S.C. § 2511(1)(a), ZoomInfo, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with the Contact Contributor software, intentionally intercepted, intercepts, or endeavored to intercept, the

content of electronic communications made by Plaintiffs and Class Members without obtaining actual consent from any authorized party to the electronic communication, include ZoomInfo's viewing, reading, processing, capturing, and/or disseminating their electronic communication as described above.

98.     The contents intercepted include personal information concerning the substance, purport, or meaning of that communication, including, but not limited to, viewing, and reading, personal information regarding the parties' names, addresses, telephone numbers, email addresses, job titles, job functions and responsibilities, education, social medial URLs, and potentially other personal information.

99.     Interception of Plaintiffs and Class Members' private electronic communications without their consent occurred when ZoomInfo scanned Plaintiffs and Class Members' electronic communications for purposes of viewing, reading, capturing, and/or disseminating, Plaintiffs' and Class Members' electronic communications by the use of the Contact Contributor software. This interception occurred during transmission, as ZoomInfo operates in real time to acquire the content of Plaintiffs' and Class Members' electronic communications. The contents of the electronic communications intercepted are the written email correspondence between Plaintiffs and Class Members.

100.     Plaintiffs and Class Members could not have, and did not, provide consent to interception of their electronic communications because they lacked knowledge that such interception was taking place, based on their reasonable expectations of privacy in email communications and ZoomInfo's own express and implied representations.

101.     Pursuant to 18 U.S.C. § 2511(1)(c), ZoomInfo intentionally disclosed, discloses, or endeavored to disclose to third parties the contents of Plaintiffs' and Class Members' electronic communications while knowing or having reason to know that the information was obtained through the interception of the electronic communications in violation of 18 U.S.C. § 2511(1)(a).

102.     After ZoomInfo intentionally intercepts the contents of Plaintiffs' and Class Members' electronic communications without their consent, the Contact Contributor recorded and

transmitted the intercepted communications over the internet to ZoomInfo's servers for processing, analysis, storage, and archiving. ZoomInfo then intentionally shares, disseminates, discloses, and sells these intercepted electronic communications of Plaintiffs' and Class Members' to third parties in order to monetize Plaintiffs' and Class Members' private information, including by selling the information to marketers, recruiters, and other individuals for profit, without Plaintiffs' and Class Members' consent, and for tortious purposes and for the purpose of committing unfair business practices.

103.    Although ZoomInfo is aware that the contents of Plaintiffs' and Class Members' electronic communications were recorded without their knowledge or consent, ZoomInfo has retained, utilized, disseminated, and sold the unlawfully captured information.

104.    Pursuant to 18 U.S.C. § 2511(1)(d), ZoomInfo intentionally used, uses, or endeavors to use the contents of Plaintiffs' and Class Members' electronic communications knowing or having reason to know that the electronic communication was obtained through interception in violation of 18 U.S.C. § 2511(1)(a).

105.    ZoomInfo intentionally uses the contents of Plaintiffs' and Class Members' intercepted communications to build out its database of contacts for ZoomInfo's own financial, commercial, and competitive benefit, and to generate substantial profit.

106.    The practices complained of in this Count fall outside of the scope of ZoomInfo's ordinary course of business because they violate ZoomInfo's own policies and are in contradiction to the generally understood manner in which email correspondence is transmitted and the reasonable and permissible collection of users' personal information from private channels of communication. As such, the surreptitious viewing, reading, capturing, dissemination of Plaintiffs' and Class Members' electronic communications do not facilitate the transmission of the electronic communication at issue nor are such activities incidental to such transmission of such electronic communication.

107.    ZoomInfo's actions were at all relevant times knowing, willful, and intentional as evidenced by ZoomInfo's admission that the personal information it captures from Plaintiffs' and

Class Members' electronic communication is used to build out and improve ZoomInfo's database. This expansion is intended to benefit ZoomInfo financially by allowing it to sell subscription programs and thus the collected personal information to third parties, including marketers, recruiters, and advertisers, and to generate significant profits.

108.    ZoomInfo intercepted, disclosed, and used the contents of Plaintiffs and Class Members' electronic communications in reckless disregard for Plaintiffs and Class Members' privacy rights and for its own financial benefit to profit from the improved quality of its proprietary database and sale of Plaintiffs' and Class Members' personal information to advertisers, marketers, and recruiters.

109.    As a result, Plaintiffs and Class Members have suffered harm and injury due to the interception, disclosure, and/or use of their private, personal, and confidential communications.

110.    Pursuant to 18 U.S.C. § 2520, Plaintiffs and Class Members have been damaged by the interception, disclosure, and/or use of their communications in violation of the Wiretap Act and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiffs and the Class and any profits made by ZoomInfo as a result of the violation or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred through this action.

## SECOND CLAIM FOR RELIEF

### Violation of the Stored Communications Act ("SCA")
### Title II of the ECPA ( 18 U.S.C. § 2701 *et seq.*)
### (On Behalf of Subscriber and Non-Subscriber Classes)

111.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

112.    Plaintiffs bring this claim on behalf of the Nationwide Subscriber and Non-Subscriber Class against all Defendants.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

113.     The Stored Communications Act prohibits a person from intentionally accessing without (or excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic storage."

114.     Plaintiffs allege that ZoomInfo intercepts communications while "in transit" and thus are in violation of the Wiretap Act. ZoomInfo, however, also intercepts the emails while they are in storage, through their Community Edition program's "otherwise access to emails" feature. While the Contact Contributor intercepts emails in transmission, subscribers who do not install the software but provide access to their emails via the Community Edition program, their email messages are captured, accessed, viewed, read, or scanned by ZoomInfo, while in storage, in excess of the authorization.

115.     The servers used by ZoomInfo to process the emails to Community Edition subscribers are a "facility" within the meaning of the SCA.

116.     ZoomInfo, in excess of its authorization, captured, accessed, viewed, read, or scanned the content of emails, containing personal information without their knowledge or consent.

117.     ZoomInfo's actions were at all relevant times knowing, willful, and intentional as evidenced by ZoomInfo's admission that the personal information it captures from Plaintiffs' and Class Members' electronic communication is used to build out and improve ZoomInfo's database. This expansion is intended to benefit ZoomInfo financially by allowing it to sell subscription programs and thus the collected personal information to third parties, including marketers, recruiters, and advertisers, and to generate significant profits.

118.     ZoomInfo intercepted, disclosed, and used the contents of Plaintiffs and Class Members' electronic communications in reckless disregard for Plaintiffs' and Class Members' privacy rights and for its own financial benefit to profit from the improved quality of its proprietary database and sale of Plaintiffs' and Class Members' personal information to advertisers, marketers, and recruiters.

119.     As a result, Plaintiffs and Class Members have suffered harm and injury due to the interception, disclosure, and/or use of their private, personal, and confidential communications.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

120.    Pursuant to 18 U.S.C. § 2707 (c), Plaintiffs and Class Members are entitled to minimum statutory damages of $1000 per person; punitive damages; costs and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF

**Violation of Washington's Consumer Protection Act ("WCPA")**
**Wash Rev. Code §§ 19.86, et seq.**
**(On Behalf of Subscriber and Non-Subscriber Classes)**

121.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

122.    Plaintiffs bring this claim on behalf of the Nation-Wide Subscriber and Non-Subscriber Class against all Defendants.

123.    The Wash. Rev. Code § 19.86.020 prohibits "[u]nfair methods of competition and unfair deceptive acts or practices in the conduct of any trade of commerce."

124.    The Defendants here committed unfair acts and practices in violation of the Wash. Rev. Code § 19.86.020 by violating Plaintiffs' and Class Members right to privacy by surreptitiously capturing, accessing, viewing, reading, or scanning of individuals' personal information contained within their electronic communications without their knowledge or consent. ZoomInfo's subsequent unauthorized disclosure, dissemination, sharing, sale, and misuse of those electronic communications with third parties, including marketers, recruiters, and advertisers and for its own commercial benefit, further violates the Wash. Rev. Code § 19.86.020.

125.    Defendants misrepresent to the Plaintiffs and the Class that ZoomInfo does not capture, access, view, read, or scan personal information contained in users' electronic communications, in violation of ZoomInfo's own express and implied representations. It further misrepresents that "No human being reads your email because of your use of Community Edition."

126.    Notwithstanding these express and implied representations, ZoomInfo intercepts, views, reads, and accesses users' electronic email communications, and subsequently discloses, disseminates, sells, and otherwise misuses without individuals' knowledge or consent, their personal information that ZoomInfo scraped off their email correspondence. It also admits to employing a

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

team of in-house human research analysts and data scientists to review data pieces that require another manual verification and improve the performance of the algorithm. Thus, despite ZoomInfo's explicit representations that "no human being reads" emails by using Community Edition, ZoomInfo's own admissions reveal the real truth about human review of Subscribers' and Non-Subscribers' email correspondence.

127.    ZoomInfo committed its misconduct in the context of trade or commerce. ZoomInfo makes available its Community Edition service in exchange for valuable personal data in markets across the nation. Subscribers and non-subscribers of the Community Edition exchange emails across the nation. Additionally, ZoomInfo uses this covertly collected information for business purposes affecting interstate commerce, including by providing such information and data to third parties.

128.    ZoomInfo's representations and omissions were material because they were likely to deceive reasonable consumers to believe their data was private. Plaintiffs and Class Members reasonably expected that ZoomInfo was not intercepting, viewing, reading, processing, capturing, and/or disseminating their electronic communications transmitted via their electronic devices, including their computers.

129.    The public interest is harmed by ZoomInfo's conduct in viewing, reading, processing, capturing and/or sharing the contents of the emails of the citizens of this State and the Class Members who maintain a fundamental privacy interest in this information. Additionally, to the extent that ZoomInfo uses this information for its own business purposes or transmits this information to third parties for profit or other benefit, the Company is deriving an unfair competitive advantage as a result of the covert collection of such information.

130.    Plaintiffs and the Class Members have been injured by compromising their private and confidential information, which is valuable to them, and would not have installed Contact Contributor if ZoomInfo had fully disclosed that it views, reads, processes, captures and/or shares their email correspondences with third parties. Additionally, the Class Members have been harmed in their privacy interest through this conduct.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

131.     Plaintiffs and the Class Members relied on the representations by ZoomInfo and did not expect their private and confidential email correspondences to be viewed, read, processed, captured and/or shared. These considerations are material for the Class Members as reasonable consumers.

132.     As a direct and proximate result of ZoomInfo's unfair methods of competition and unfair or deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and non-monetary damages. Plaintiffs' and the Class members private content was exploited without their knowledge or consent. Accordingly, Plaintiffs and the Class are entitled to a part of ZoomInfo's profits that were generated by their surreptitious viewing, reading, processing, capturing and/or sharing their email correspondences.

133.     Plaintiffs and the Class Members are entitled to damages and reasonable attorney's fees and costs pursuant to Wash. Rev. Code § 19.86.090.

## FOURTH CLAIM FOR RELIEF

### Violation of the Washington Wiretapping Statute
### WA Rev. Code § 9.73.030
### (On Behalf of Subscriber Class)

134.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

135.     Plaintiffs brings this claim individually and on behalf of the Class.

136.     Wash. Rev. Code § 9.73.030 prohibits the interception or recording of a private phone call, in-person conversation, or electronic communication, unless all parties to the communication consent.

137.     Plaintiffs and Class Members have a reasonable expectation of privacy in their email correspondence.

138.     When the Plaintiffs and Class Members installed or corresponded with a user of Contact Contributor, ZoomInfo captured, accessed, viewed, read, or scanned individuals' personal information contained within their electronic communications without their knowledge or consent. Moreover, ZoomInfo subsequently disclosed, disseminated, shared sold, and misused the scraped

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    personal information from such electronic communications to third parties, including marketers,

2    recruiters, and advertisers and for its own commercial benefit.

3        139.    ZoomInfo did so by their false and deceptive representations – *i.e.*, that ZoomInfo

4    does not capture, access, view, read, or scan personal information contained in users' electronic

5    communications, in violation of ZoomInfo's own express and implied representations. ZoomInfo

6    also misrepresented that "no human reads your email" by the use of Community Edition. The truth,

7    however, is that despite these representations, ZoomInfo intercepts, views, reads, and accesses

8    users' electronic email communications, and subsequently discloses, disseminates, sells, and

9    otherwise misuses their personal information that ZoomInfo scraped off their email correspondence

10   without individuals' knowledge or consent. ZoomInfo also employs a team of in-house human

11   reviewers and data scientist to verify the data collected and improve the performance of

12   the algorithms.

13       140.    Plaintiffs and the Class had no reason to expect and did not expect that ZoomInfo is

14   viewing, reading, processing, capturing and/or sharing the content of their email correspondences.

15   Plaintiffs and Class Members reasonably relied on ZoomInfo's representations and expected that

16   the Contact Contributor would perform as represented and that the content of their email

17   correspondences and private information would remain private.

18       141.    Plaintiffs and the Class did not consent to the content of their email correspondence

19   to be viewed, read, processed, captured and/or shared with third parties. Even worse, the non-

20   subscribers who correspond with the users of Community Edition, had no way of even knowing

21   about, let alone consenting to, such collection, sharing, and selling practices.

22       142.    ZoomInfo viewed, read, processed, captured and/or shared the content of private and

23   confidential email correspondences intentionally, for its own business purposes and to gain a profit

24   by building and continuously improving their database by the unlawfully collected information.

25       143.    ZoomInfo's persistent collection of private and confidential information by viewing,

26   reading, processing, capturing and/or sharing the email correspondences of unsuspecting users,

27

without the consent of all parties to such communications, is in violation of Wash. Rev. Code § 9.73.030.

144.  ZoomInfo's intentional and unlawful conduct violated Plaintiffs' and the Class's right to privacy in their confidential communications as protected by Wash. Rev. Code § 9.73.030.

145.  ZoomInfo's intentional and unlawful conduct caused Plaintiffs and the Class injury to their dignity, well-being, and security.

146.  Plaintiffs individually and on behalf of the Class seeks (1) damages equal to $100 per day up to $1,000 under Wash. Rev. Code § 9.73.060; (2) reasonable attorney's fees and costs under Wash. Rev. Code § 9.73.060.

### FIFTH CLAIM FOR RELIEF

**Breach of Contract under Washington law**
**(on Behalf of Subscriber Class)**

147.  Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

148.  Plaintiffs bring this claim individually and on behalf of the Subscriber Class. Plaintiffs and the Subscriber Class have each agreed to the Terms and Conditions and other policies governing the use of Community Edition and each has installed the Contact Contributor.

149.  ZoomInfo's Terms of Use and Privacy Policy purports to explain to users what information ZoomInfo views, reads, and captures after users subscribe for its free Community Edition program. The Privacy Policy gives several explicit assurances that ZoomInfo does not view or read users' email content and that it only extracts "business information," such as signature blocks within email messages and headers of users' emails. Similarly, ZoomInfo's Terms of Use guarantees that "no human being reads" users' email as a result of users' participation in the Community Edition program and that only business contact information and metadata from the email header are extracted into ZoomInfo's database.

150.  Despite these explicit assurances, ZoomInfo's collection, sharing, and selling practices are in stark contrast of its representations. ZoomInfo, indeed intercepts, views, reads, and

accesses users' electronic email communications, and subsequently discloses, disseminates, sells, and otherwise misuses without individuals' knowledge or consent, their personal information that ZoomInfo scraped off their email correspondence. Moreover, ZoomInfo employs a team of human research analysts and data scientists to review data and for manual verification and to improve the performance of their algorithm.

151.    By surreptitiously viewing, reading, processing, capturing and/or sharing contents of email correspondences with third parties, ZoomInfo has breached this contract. ZoomInfo failed to honor its promise to respect the user's privacy and breached its obligations to the users. Moreover, ZoomInfo unauthorizedly disclosed, disseminated, sold, and otherwise misused without individuals' knowledge or consent, their personal information that ZoomInfo scraped off their email correspondence.

152.    The contract between ZoomInfo and the Class Members requires the Company to not intercept, view, read, process, disclose, or otherwise misuses users' personal information from their email correspondences. By the conduct alleged herein, ZoomInfo has breached this contract and caused the Class Members' private information to be viewed, read, processed, disclosed, and misused.

153.    Plaintiffs have a reasonable privacy interest and attach a considerable value to their content and information contained in their email correspondences. The Class Members relied on the representations of ZoomInfo and believed that the content of their email correspondences remains private.

154.    As a result of the conduct by ZoomInfo, Plaintiffs have been harmed and have suffered damages by losing the value of their content and information.

### SIXTH CLAIM FOR RELIEF

**California Invasion of Privacy Act, Cal. Penal Code § 630, et seq.**
**(on Behalf of California Non-Subscriber Class)**

155.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

156.     Under California's Invasion of Privacy Act ("CIPA"), it is unlawful to intentionally, willfully, and without consent tap or make any unauthorized connection by means of any machine, instrument, or contrivance, or in any other manner with any telegraph or telephone wire, line, cable, or instrument, in order to purposefully intercept a communication or its content that is in transit or passing over any wire, line, or cable, or is being sent from or received within California; and to use, attempt to use, or communicate any such information obtained by these means. *See* Cal. Penal Code § 631.

157.     Pursuant to Cal. Penal Code § 7 and § 632(b), ZoomInfo, as a corporation, is a "person."

158.     Plaintiffs and Class Members exchanged electronic communication via their respective email accounts during the Class Period by using their computers, smart phones, tablets, and other electronic devices.

159.     Plaintiffs and Class Members reasonably expected that ZoomInfo was not intercepting, viewing, reading, processing, capturing, and/or disseminating their electronic communications transmitted via their electronic devices, including their computers based on: (i) the context in which these private electronic communications occurred, namely personal and professional settings at Plaintiffs' home, workplace and other private areas, to which access of all other persons is prohibited absent Plaintiffs' consent; (ii) a general understanding of how email communications are transmitted, delivered, and shared, and based on ZoomInfo's own assurances; and (iii) ZoomInfo's status as a party to those electronic communications who was not an intended party to or recipient of Plaintiffs' and Class Members' private and confidential electronic communications.

160.     ZoomInfo, through its design, authorship, programming, knowing and intentional installation, activation, and/or other involvement with the Contact Contributor software intentionally, willfully, and without consent, made unauthorized connections with Plaintiffs' and Class Members' email accounts to purposefully intercept communications in transit. *See* Cal. Penal

Code § 631. The contents were captured, processed, disseminated, or otherwise misused by ZoomInfo.

161.    The contents intercepted include personal information concerning the substance, purport, or meaning of that communication, including, but not limited to, viewing and reading personal information regarding the parties' names, addresses, telephone numbers, email addresses, job titles, job functions and responsibilities, education, social media profiles, and potentially other personal information.

162.    Furthermore, ZoomInfo used, attempted to use, and disseminated the personal information it unlawfully obtained through the use of the Contact Contributor software to third parties, including marketers, recruiters, and advertisers.

163.    Plaintiffs and Class Members could not, and did not, provide consent to interception of their electronic communications because they lacked knowledge that such interception was taking place, based on their expectation of privacy in email communications and ZoomInfo's own express and implied representations.

164.    Although ZoomInfo is aware that the contents of Plaintiffs' and Class Members' electronic communications were recorded without their knowledge or consent, ZoomInfo has retained, utilized, disseminated, and sold the unlawfully captured information.

165.    As a result of ZoomInfo's violations of CIPA, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

166.    ZoomInfo is able to destroy the unauthorized recordings of Plaintiffs' and the Class Members' electronic communications, and to implement functionality sufficient to prevent unauthorized capturing of Plaintiffs' and Class Members' electronic communication in the future, and the Court should require that it does so.

167.    As an actual and proximate result of the above actions, Plaintiffs and Class members have been injured and suffered actual damages in an amount to be determined at trial. For each violation of CIPA by ZoomInfo, Plaintiffs and Class members are entitled to damages pursuant California Penal Code § 637.2 of $5,000 or three times the amount of their actual damages (at their

election). *See* Cal. Penal Code § 637.2. Plaintiffs and Class members are also entitled to injunctive relief, including, but not limited to, an order: (1) prohibiting ZoomInfo from collecting and then disclosing their and the Class's personal information; (2) requiring it to inform existing and potential consumers of its Contact Contributor program, including its very existence and true nature; and (3) requiring it to disable the Contact Contributor until consumers affirmatively consent (or opt in) to its use.

**SEVENTH CLAIM FOR RELIEF**

**Intrusion Upon Seclusion**
**(on Behalf of California Non-Subscriber Class)**

168.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

169.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

170.    ZoomInfo's collection, sharing, and selling practices, specifically Contact Contributors' scanning, reading, and viewing personal information in electronic email communications between Subscribers and third parties without their consent, constituted an intentional intrusion upon the Plaintiffs and Class Members' solitude or seclusion, in which ZoomInfo effectively placed itself in the middle of the email correspondences, to which it was not anticipated, invited, welcomed, or authorized.

171.    Plaintiffs and Class Members did not consent to, authorize, or know about ZoomInfo's intrusion at the time it occurred. Plaintiffs and Class Members never agreed or consented that ZoomInfo would intercept, view, read, process, disclose, or otherwise misuse users' information from their email correspondences and never agreed or authorized such surreptitiously collected information to subsequently be disclosed, disseminated, shared, sold, or misused.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

172.     ZoomInfo's intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person. Plaintiffs and Class Members reasonably expected, based on a general understanding, and based on ZoomInfo's own assurances, that ZoomInfo did not capture, access, view, read, or scan personal information contained in users' electronic communications.

173.     ZoomInfo's intentional intrusion into Plaintiffs' and Class Members' private conversations was highly offensive to a reasonable person's privacy interest in that it violated federal and state criminal and civil laws designed to safeguard individual privacy.

174.     The surreptitious taking and disclosure of personal, confidential, and private information from hundreds of thousands of individuals was highly offensive because it violated expectations of privacy that have been established by general social norms. Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is harvested or shared.

175.     ZoomInfo intentionally engages in the misconduct alleged herein to improve its database of business entities and individuals, for ZoomInfo's own financial benefit by selling access to its database to customers who then use that information to target personalized advertising to users, and to generate substantial profit.

176.     As a result of ZoomInfo's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to the invasion of their privacy rights.

177.     Unwanted access to data by electronic or other covert means, in violation of the law or social norms is actionable under California law.

178.     Plaintiffs and Class Members have been damaged as a direct and proximate result of ZoomInfo's invasion of their privacy and are therefore entitled to just compensation.

179.     Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class Members for the harm to

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

their privacy interests as well as disgorgement of profits made by ZoomInfo as a result of its repeated and unscrupulous intrusions upon Plaintiffs' and Class Members' privacy.

### EIGHTH CLAIM FOR RELIEF

**Invasion of Privacy**
**Art. I, Sec. 1 of the California Constitution**
**(on Behalf of California Non-Subscriber Class)**

180.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

181.    Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Art. I., Sec. 1, Cal. Const.

182.    To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

183.    The right to privacy in California's constitution creates a right of action against private and government entities.

184.    ZoomInfo has intruded upon Plaintiffs' and Class Members' legally protected privacy interests, including, *inter alia*: (i) interests in precluding the dissemination or use of confidential information ("informational privacy"); (ii) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ("autonomy privacy"); (iii) the Wiretap Act as alleged herein; and (iv) the Community Edition Terms of Use and other ZoomInfo's public assurances that ZoomInfo does not capture, access, view, read, or scan personal information contained in users' electronic communications, in violation of ZoomInfo's own express and implied representations.

185.    The personal information, which ZoomInfo intercepted, viewed, read, processed, disclosed, or otherwise used without Plaintiffs' and Class Members' authorization and/or consent

includes her full name, place of employment, her position, years of experience and her contact information, including her cell phone number. Plaintiffs and Class Members had a legally protected informational privacy interest in the personal information as well as an autonomy privacy interest in conducting their personal activities without observation, intrusion, or interference.

186.    Plaintiffs and Class Members have a reasonable expectation of privacy under the circumstances in that: (i) Defendants' invasion of privacy occurred in the context of non-public electronic email communication between Plaintiffs and Class Members and to the exclusion of everyone else; (ii) Plaintiffs and Class Members did not consent or otherwise authorize ZoomInfo to intercept, view, read, process, discloses, or otherwise misuse users' personal information; (iii) Plaintiffs and Class Members could not reasonably expect that ZoomInfo would commit acts in violation of federal and state civil and criminal laws protecting privacy; (iv) ZoomInfo affirmatively assured Plaintiffs and Class Members it would not capture, access, view, read, or scan personal information contained in users' electronic communications, and subsequently disclose, disseminate, share, sell, and misuse such private information to third parties, including marketers, recruiters, and advertisers and for its own commercial benefit.

187.    ZoomInfo's actions constituted a serious invasion of privacy that would be highly offensive to a reasonable person in that: (i) the invasion occurred within a zone of privacy protected by the California Constitution, namely, the collection and stockpiling of unnecessary information by businesses without consent, and the misuse of information gathered for one purpose in order to serve other purposes; (ii) the invasion deprived Plaintiffs and Class Members of the ability to control circulation of personal information, which is considered fundamental to the right to privacy; and (iii) the invasion violated several federal and state criminal laws.

188.    ZoomInfo's invasion violated the privacy rights of hundreds of thousands, if not millions, of Class Members, including Plaintiffs, without their authorization or consent. Committing criminal acts against hundreds of thousands of Class Members, including Plaintiffs, constituted an egregious breach of social norms.

189.     The surreptitious and unauthorized interception, viewing, reading, processing, disclosing, or otherwise misusing users' personal information of hundreds of thousands of Class Members, including Plaintiffs', personal information constituted an egregious breach of social norms.

190.     ZoomInfo intentionally engages in the misconduct alleged herein to improve its database of business entities and professionals for its own financial benefit, and to generate substantial profit.

191.     As a result of ZoomInfo's actions, Plaintiffs and Class Members have been damaged as a direct and proximate result of ZoomInfo's invasion of their privacy and are entitled to just compensation.

192.     Plaintiffs and the Class seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as well as disgorgement of profits made by ZoomInfo as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

## NINTH CLAIM FOR RELIEF

### Violation of the California Unfair Competition Law
### Cal. Business & Professions Code §17200, *et seq.*
### (on Behalf of California Non-Subscriber Class)

193.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

194.     The UCL protects consumers and competitors by promoting fair competition in commercial markets for goods and services.

195.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

196.     Defendants violated the UCL by engaging in unlawful, unfair, and fraudulent business acts or practices.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

197.    ZoomInfo engaged in business acts and practices deemed "unlawful" under the UCL, because, as alleged above, ZoomInfo unlawfully intercepted, viewed, read, captured, disseminated, and otherwise misused Plaintiffs' and Class Members' email communications without consent in violation of federal and state laws and statutes.

198.    ZoomInfo also engaged in business acts or practices deemed "unfair" under the UCL because, as alleged above, ZoomInfo failed to disclose during the Class Period that ZoomInfo was intercepting, viewing, reading, capturing, disseminating, and otherwise misusing Plaintiffs' and Class Members' email communications without their consent. Unfair acts under the UCL have been interpreted using three different tests: (1) whether the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL is tethered to specific constitutional, statutory, or regulatory provisions; (2) whether the gravity of the harm to the consumer caused by the challenged business practice outweighs the utility of the defendant's conduct; and (3) whether the consumer injury is substantial, not outweighed by any countervailing benefits to consumers or competition, and is an injury that consumers themselves could not reasonably have avoided. Defendants' conduct is unfair under each of these tests.

199.    With respect to the first test regarding unfair acts under the UCL, ZoomInfo's conduct offends the public policy considerations of the various federal and state statutes, as well as state constitutional provisions, referenced above. As to the second test, the gravity of the harm of ZoomInfo's secret intercepting, viewing, reading, capturing, and otherwise misusing of Plaintiffs' and Class Members' electronic communications is significant and there is no corresponding benefit to consumers of such conduct. Finally, because Plaintiffs and Class Members were completely unaware of ZoomInfo's secret interception, recording and disclosure, they could not have possibly avoided the substantial harm to their privacy interests.

200.    Had the Plaintiffs known that her electronic communications would be intercepted, viewed, read, captured, and misused, they would not have subscribed to the Community Edition program, would have not relinquished their personal information, and would not permit ZoomInfo access to their email accounts, or would have not shared personal information via their electronic

communication. Plaintiffs and Class Members have a property interest in any personal information they provided via electronic communications. By surreptitiously intercepting, viewing, reading, capturing or otherwise misusing Plaintiffs' and Class Members' electronic communications, ZoomInfo has taken property from Plaintiffs and Class Members without providing just or any compensation.

201.    Plaintiffs, individually and on behalf of the Class, seek: (1) an injunction enjoining ZoomInfo from engaging in the unlawful conduct alleged in this claim and requiring ZoomInfo to delete all personal information of Plaintiffs and Class Members, to cease further interceptions, to implement functionality sufficient to prevent unauthorized interception in the future, to cease disclosing communications of the Plaintiffs' and the Class to third parties without prior consent, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

### TENTH CLAIM FOR RELIEF

**Violation of Florida's Deceptive And Unfair Trade Practices Act ("FDUTPA")**
**Fla. Stat. § 501.201, et seq.**
**(on Behalf of Florida Non-Subscriber Class)**

202.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

203.    Plaintiffs and each member of the Class are "consumers" as defined by Fla. Stat § 501.203(7).

204.    Defendants through their conduct alleged herein, are engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

205.    The FDUTPA was enacted to protect consumers and businesses from unfair methods of competition, unconscionable acts, or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

206.    To achieve its purpose, FDUTPA declares as unlawful all unfair methods of competition, unconscionable acts, or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

207.   ZoomInfo violated the FDUTPA because their conduct, as alleged herein, is deceptive and unfair.

208.   Defendants' conduct is deceptive because it is likely to mislead a reasonable consumer. ZoomInfo seeks to create the impression that it respects Plaintiffs' and other Class Members' privacy. ZoomInfo's Terms of Use and Privacy Policy give several explicit assurances that ZoomInfo does not view or read users' email content and that it only extracts Business Information. Similarly, ZoomInfo's Terms of Use guarantees that "no human being reads" users' email as a result of users' participation in the Community Edition. Notwithstanding these express and implied representations, ZoomInfo intercepts, views, reads, and accesses users' electronic email communications, and subsequently discloses, disseminates, sells, and otherwise misuses without individuals' knowledge or consent, their personal information that ZoomInfo scraped off their email correspondence. Besides the Terms of Use, Privacy Policy, ZoomInfo websites, and/or the Privacy Notice, ZoomInfo publishes on its website, numerous other documents, and web pages that purport to describe its practice of collecting, sharing, and selling information collected via its Community Edition Program.

209.   The terms and conditions governing a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product or service. The only way for a ZoomInfo customer to determine what ZoomInfo is actually doing with their emails and the information contained therein is to sort through dozens of different documents spread across several web pages and somehow piece together a "contract" from various portions of one or more of these documents. Even if a ZoomInfo user manages to locate all the relevant documents, ZoomInfo's description of what it does with its users' emails and the contents thereof are confusing, incomplete, and sometimes contradictory.

210.   ZoomInfo also fails to inform individuals that ZoomInfo does, in fact, view the entirety of Subscribers' incoming and outgoing communications to extract and include information in their database. This is also true for unsuspecting non-users, who never subscribed or interacted with ZoomInfo and have no way of knowing, and thus consenting to ZoomInfo's interception.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

211.   Defendants' failure to disclose these material terms as well as Defendants' failure to gain consumer consent to allow Defendants to view, read, process, capture and/or share email correspondence with third parties without their consent or knowledge, deceived consumers into believing they were not compromising their private information.

212.   Had Defendants disclosed to consumers that their Contact Contributor Software helped create ZoomInfo's database by parsing of email content, and that consumer's private and confidential email content would be viewed, read, processed, captured and/or shared without consumer consent and knowledge, consumers would not have installed Contact Contributor. The data of Florida Non-Subscriber Subclass would not have been viewed, read, processed, captured and/or shared with third parties merely by exchanging email correspondence with Subscribers.

213.   Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

214.   Defendants', by surreptitiously viewing, reading, processing, capturing and/or sharing, and selling of the email correspondence, which are private and hold a reasonable expectation of privacy, to third parties, including marketers, recruiters, and advertisers without their consent or knowledge, prevents the Florida Non-Subscriber Subclass from avoiding ZoomInfo's data collection, sharing, and selling practices and from protecting their right to privacy and their right to control the dissemination of their personal information.

215.   ZoomInfo knew or had reason to know that the Florida Non-Subscriber Subclass could not have reasonably known or discovered the existence of such surreptitiously monitoring, collecting, and reading consumer's private and confidential emails and other information, without disclosure by ZoomInfo.

216.   Defendants' conduct caused direct harm to the privacy rights of the Florida Subclass and harmed their ability to control the dissemination of their private and confidential information.

217.   Pursuant to Fla. Stat. § 501.211, Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to pay damages

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

to Plaintiffs and the Florida Non-Subscriber Subclass; and (3) awarding attorney's fees and court costs.

## ELEVENTH CLAIM FOR RELIEF

### Violation Of N.Y. Gen. Bus. Law §§ 349 & 350
### (on Behalf of New York Non-Subscriber Class)

218.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

219.    N.Y. Gen. Bus. Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state.

220.    N.Y. Gen. Bus. Law § 350 declares as unlawful false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state.

221.    Defendants' conduct as alleged herein is covered under New York Gen. Bus. Law §§ 349 and 350 because such conduct is properly defined as consumer-oriented conduct.

222.    Defendants' omission regarding the surreptitious capturing, accessing, viewing, reading, or scanning of individuals' personal information and its subsequent unauthorized disclosure, dissemination, sharing, sale, and misuse of such personal information to third parties, including marketers, recruiters, and advertisers, deceives consumers at large and has invaded the privacy rights of millions of consumers and other people.

223.    Defendants violated N.Y. Gen. Bus. Law §§ 349 & 350 by engaging in conduct that is likely to mislead a reasonable consumer.

224.    The terms and conditions governing a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product or service.

225.    Despite the importance of terms and conditions in consumer purchase decisions, Defendants do not disclose that ZoomInfo captures, accesses, views, reads, or scans personal information contained in users' email communications, in violation of ZoomInfo's own express and implied representations. ZoomInfo fails to inform third parties who never subscribed or interacted

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

with ZoomInfo and have no way of knowing or consenting to ZoomInfo's interception, or knowing that ZoomInfo does, in fact, view the entirety of Subscribers' incoming and outgoing communications to continuously build and improve their database. On the contrary, ZoomInfo highlights, in their Terms and Conditions that "No human being reads your email because of your use of Community Edition."

226. ZoomInfo's failure to disclose these material terms as well as Defendants' failure to gain consumer consent for their Contact Contributor to scan, read, or otherwise review the contents of their email correspondence with third parties deceived consumers into believing they were not compromising their confidential/private information.

227. Had ZoomInfo disclosed to consumers that their Contact Contributor Software employed viewing, reading, processing, capturing and/or sharing the content of their email correspondences and extracting personal information, without their consent and knowledge, consumers would not have installed Defendants' Software. Therefore, private and confidential information of the New York Subclass would not have been comprised by their email correspondences with users of Community Edition.

228. ZoomInfo's conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

229. ZoomInfo, by surreptitiously viewing, reading, processing, capturing and/or sharing email correspondences of unsuspecting third parties, without their knowledge and consent, in which they had a reasonable expectation of privacy, prevents Members of the New York Non-Subscriber Subclass from avoiding ZoomInfo's data collection, sharing, and selling practices and from protecting their right to privacy and their right to control the dissemination of their personal information.

230. ZoomInfo's conduct caused direct harm to the privacy rights of the New York Non-Subscriber Subclass and harmed their ability to control the dissemination of their private and confidential information.

231.     Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to pay damages to Plaintiffs and New York Non-Subscriber Subclass or $50 dollars to Plaintiffs and each such class member, whichever is greater; (3) treble damages for Defendants knowing and willful violations; and (4) awarding attorney's fees and court costs.

## TWELFTH CLAIM FOR RELIEF

### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. stat. Ann. §§ 505 et seq.
### (On Behalf of Illinois Non-Subscriber Class)

232.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

233.     ZoomInfo is a "person" as defined by 815 Ill. Comp. Stat. Ann. §§ 505/1(c). Plaintiffs are consumers as defined by 815 Ill. Comp. Ann. §§ 505/1(e).

234.     ZoomInfo's deceptive, unfair, and unlawful trade acts or practices are in violation of 815 Ill. Comp. Stat. Ann. §§ 505/2.

235.     Defendants' omission regarding the surreptitious viewing, reading, processing, capturing and/or sharing of consumer's private and confidential email correspondence and by selling or otherwise disclosing that information to third parties without consumer consent or knowledge deceives consumers at large, and has invaded the privacy rights of millions of consumers and other people.

236.     Defendants violated 815 Ill. Comp. Stat. Ann. §§ 505 et seq. by engaging in conduct that is likely to mislead a reasonable consumer. ZoomInfo seeks to create the impression that it respects Plaintiffs' and other Class Members' privacy. ZoomInfo's Terms of Use and Privacy Policy purport to explain to users what information ZoomInfo views, reads, and captures after users subscribe for its free Community Edition program. The Privacy Policy gives several explicit assurances that ZoomInfo does not view or read users' email content and that it only extracts "business information," such as signature blocks within email messages and headers of users' emails. Similarly, ZoomInfo's Terms of Use expressly guarantees that "no human being reads"

users' email as a result of users' participation in the Community Edition program and that only business contact information and metadata from the email header are extracted into ZoomInfo's database.

237.   Besides the Terms, Privacy Policy, ZoomInfo websites, and/or the Privacy Notice, ZoomInfo publishes on its website numerous other documents and pages that purport to describe its practice of collecting, sharing, and selling information collected via its Community Edition Program. The only way for a ZoomInfo customer to determine what ZoomInfo is actually doing with their emails and the information contained therein is to sort through dozens of different documents spread across several web pages, and somehow piece together a "contract" from various portions of one or more of these documents. Even if a ZoomInfo user manages to locate all of the relevant documents, ZoomInfo's description of what it does with its users' emails and the contents thereof are confusing, incomplete, and sometimes contradictory.

238.   Plaintiffs and Class Members reasonably expected that ZoomInfo was not intercepting, viewing, reading, processing, capturing, and/or disseminating their electronic communications transmitted via their electronic devices, including their computers.

239.   Notwithstanding these representations, ZoomInfo intercepts, views, reads, processes, discloses, or otherwise misuses users' personal information. ZoomInfo also engages in unauthorized disclosure, dissemination, sale of such personal information to marketers, recruiters, and advertisers. Importantly, ZoomInfo employs a team of in-house human analysts and data scientists to verify the collected information and improve the performance of their algorithm.

240.   The terms and conditions governing a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product or service.

241.   Despite the importance of terms and conditions in consumer purchase decisions, Defendants do not disclose that email correspondence of the consumers would be viewed, read, processed, captured and/or shared by ZoomInfo with third parties without their consent or knowledge and that they use human research and verification.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

242.     Defendants' failure to disclose these material terms as well as Defendants' failure to gain consumer consent to allow Defendants to view, read, process, capture and/or share the content of email correspondence by use of their algorithms as well as human reviewers, deceived consumers into believing they were not compromising their private information.

243.     Had Defendants disclosed to Class Members that Contact Contributor Software collected private information from scraping email correspondences, consumers would not have used Community Edition. The private and confidential information of the Illinois Subclass would not have been comprised by their email correspondences with users of Community Edition.

244.     Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

245.     Defendants by surreptitiously viewing, reading, processing, capturing. and sharing private and confidential electronic correspondence with third parties without consumer consent or knowledge, prevented Members of the Illinois Subclass from avoiding its data practices and from protecting their privacy rights and their rights to control the dissemination of their own personal information.

246.     Defendants' conduct caused direct harm to the privacy rights of the Illinois Subclass and harmed their ability to control the dissemination of their private and confidential information.

247.     Plaintiffs' personal content was exploited without informed consent and Accordingly, Plaintiffs are entitled to part of ZoomInfo's profits that were generated by their personal content without their consent or knowledge.

248.     Plaintiffs seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

**THIRTEENTH CLAIM FOR RELIEF**

**Violation of Connecticut's Unfair Trade Practices Act ("CUTPA")**
**Conn. Gen. Stat. § 42-110a *et seq*.**
**(on Behalf of Connecticut Non-Subscriber Class)**

249.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

250.    Defendants' actions as above described constitute unfair or deceptive act or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110(b)a in conduct of trade or commerce.

251.    ZoomInfo violated the CUTPA because their conduct, as alleged herein, is deceptive and unfair.

252.    Defendants' conduct is deceptive because it is likely to mislead a reasonable consumer. ZoomInfo seeks to create the impression that it respects Plaintiffs' and other Class Members' privacy. ZoomInfo's Terms of Use and Privacy Policy give several explicit assurances that ZoomInfo does not view or read users' email content and that it only extracts Business Information. Similarly, ZoomInfo's Terms of Use guarantees that "no human being reads" users' email as a result of users' participation in the Community Edition. Notwithstanding these express and implied representations, ZoomInfo intercepts, views, reads, and accesses users' electronic email communications, and subsequently discloses, disseminates, sells, and otherwise misuses without individuals' knowledge or consent, their personal information that ZoomInfo scraped off their email correspondence. Besides the Terms of Use, Privacy Policy, ZoomInfo websites, and/or the Privacy Notice, ZoomInfo publishes on its website, numerous other documents, and web pages that purport to describe its practice of collecting, sharing, and selling information collected via its Community Edition Program.

253.    The terms and conditions governing a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product or service. The only way for a ZoomInfo customer to determine what ZoomInfo is actually doing with their emails and the information contained therein is to sort through dozens of different documents spread across several web pages and somehow piece together a "contract" from various portions of

one or more of these documents. Even if a ZoomInfo user manages to locate all of the relevant documents, ZoomInfo's description of what it does with its users' emails and the contents thereof are confusing, incomplete, and sometimes contradictory.

254.   ZoomInfo also fails to inform individuals that ZoomInfo does, in fact, view the entirety of Subscribers' incoming and outgoing communications to extract and include information in their database. This is also true for unsuspecting non-users, who never subscribed or interacted with ZoomInfo and have no way of knowing, and thus consenting to ZoomInfo's interception.

255.   Defendants' failure to disclose these material terms as well as Defendants' failure to gain consumer consent to allow Defendants to view, read, process, capture and/or share email correspondence with third parties without their consent or knowledge, deceived consumers into believing they were not compromising their private information.

256.   Had Defendants disclosed to consumers that their Contact Contributor Software helped create ZoomInfo's database by parsing of email content, and that consumer's private and confidential email content would be viewed, read, processed, captured and/or shared without consumer consent and knowledge, consumers would not have installed Contact Contributor. The data of Connecticut Non-Subscriber Subclass would not have been viewed, read, processed, captured and/or shared with third parties merely by exchanging email correspondence with Subscribers.

257.   Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

258.   Defendants', by surreptitiously viewing, reading, processing, capturing and/or sharing, and selling of the email correspondence, which are private and hold a reasonable expectation of privacy, to third parties, including marketers, recruiters, and advertisers without their consent or knowledge, prevents the Connecticut Non-Subscriber Subclass from avoiding ZoomInfo's data collection, sharing, and selling practices and from protecting their right to privacy and their right to control the dissemination of their personal information.

259.    ZoomInfo knew or had reason to know that the Connecticut Non-Subscriber Subclass could not have reasonably known or discovered the existence of such surreptitiously monitoring, collecting, and reading consumer's private and confidential emails and other information, without disclosure by ZoomInfo.

260.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer loss and substantial injury and Plaintiffs and the Class are entitled to recover damages and appropriate relief, as requested below.

### FOURTEENTH CLAIM FOR RELIEF

**Violation Of Georgia Uniform Deceptive And Unfair
Trade Practices Act
("Georgia UDUTPA"), O.C.G.A. § 10-1-370 *et seq*.)
(on Behalf of Georgia Non-Subscriber Class)**

261.    Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

262.    The Defendants are "persons" engaged in deceptive trade practices within the meaning of Georgia's UDUTPA. See O.C.G.A. § 10-1-371(5).

263.    Georgia's UDUTPA prohibits deceptive trade practices committed in the course of one's business, vocation, or occupation, including "represent[ing] that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have"; "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another"; and "[e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." O.C.G.A. §10-1-372(a).

264.    ZoomInfo violated the Georgia UDUTPA because their conduct, as alleged herein, is deceptive and unfair.

265.    Defendants' conduct is deceptive because it is likely to mislead a reasonable consumer. ZoomInfo seeks to create the impression that it respects Plaintiffs' and other Class Members' privacy. ZoomInfo's Terms of Use and Privacy Policy give several explicit assurances that ZoomInfo does not view or read users' email content and that it only extracts Business

Information. Similarly, ZoomInfo's Terms of Use guarantees that "no human being reads" users' email as a result of users' participation in the Community Edition. Notwithstanding these express and implied representations, ZoomInfo intercepts, views, reads, and accesses users' electronic email communications, and subsequently discloses, disseminates, sells, and otherwise misuses without individuals' knowledge or consent, their personal information that ZoomInfo scraped off their email correspondence. Besides the Terms of Use, Privacy Policy, ZoomInfo websites, and/or the Privacy Notice, ZoomInfo publishes on its website, numerous other documents, and web pages that purport to describe its practice of collecting, sharing, and selling information collected via its Community Edition Program.

266.    The terms and conditions governing a consumer product are a material term of any transaction in that they directly affect a consumer's choice and conduct in purchasing a product or service. The only way for a ZoomInfo customer to determine what ZoomInfo is actually doing with their emails and the information contained therein is to sort through dozens of different documents spread across several web pages and somehow piece together a "contract" from various portions of one or more of these documents. Even if a ZoomInfo user manages to locate all of the relevant documents, ZoomInfo's description of what it does with its users' emails and the contents thereof are confusing, incomplete, and sometimes contradictory.

267.    ZoomInfo also fails to inform individuals that ZoomInfo does, in fact, view the entirety of Subscribers' incoming and outgoing communications to extract and include information in their database. This is also true for unsuspecting non-users, who never subscribed or interacted with ZoomInfo and have no way of knowing, and thus consenting to ZoomInfo's interception.

268.    Defendants' failure to disclose these material terms as well as Defendants' failure to gain consumer consent to allow Defendants to view, read, process, capture and/or share email correspondence with third parties without their consent or knowledge, deceived consumers into believing they were not compromising their private information.

269.    Had Defendants disclosed to consumers that their Contact Contributor Software helped create ZoomInfo's database by parsing of email content, and that consumer's private and

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

confidential email content would be viewed, read, processed, captured and/or shared without consumer consent and knowledge, consumers would not have installed Contact Contributor. The data of Georgia Non-Subscriber Subclass would not have been viewed, read, processed, captured and/or shared with third parties merely by exchanging email correspondence with Subscribers.

270.     Defendants' conduct is unfair because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

271.     Defendants', by surreptitiously viewing, reading, processing, capturing and/or sharing, and selling of the email correspondence, which are private and hold a reasonable expectation of privacy, to third parties, including marketers, recruiters, and advertisers without their consent or knowledge, prevents the Georgia Non-Subscriber Subclass from avoiding ZoomInfo's data collection, sharing, and selling practices and from protecting their right to privacy and their right to control the dissemination of their personal information.

272.     ZoomInfo knew or had reason to know that the Georgia Non-Subscriber Subclass could not have reasonably known or discovered the existence of such surreptitiously monitoring, collecting, and reading consumer's private and confidential emails and other information, without disclosure by ZoomInfo.

273.     The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer loss and substantial injury and Plaintiffs and the Class are entitled to recover damages and appropriate relief, as requested below

### FIFTEENTH CLAIM FOR RELIEF

**Request for Relief under the Declaratory Judgment Act**
**28 U.S.C. §2201, et seq.**
**(on Behalf of All Classes)**

274.     Plaintiffs re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

275.     Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further

necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and that violate the terms of the federal and state statutes described in this complaint.

276.    An actual controversy has arisen in the wake of Defendants' intercepting, viewing, reading, capturing, and misusing of Plaintiffs' and Class Members' communications without their consent as alleged herein in violation of Defendants' common law and statutory duties.

277.    Plaintiffs continue to suffer injury and damages as described herein as Defendants continue to intercept, view, read, capture, disseminate and misuse Plaintiffs' and Class Members' electronic communications.

278.    Pursuant to its authority under the Declaratory Judgment Act, it is respectfully requested that this Court enter a judgment declaring, among other things, the following:

a.    Defendants continue to owe a legal duty to not intercept, view, read, capture disseminate, and otherwise misuse Plaintiffs' and Class Members' electronic communications under federal and state law, as alleged here;

b.    Defendants continue to be in breach of their contract with Plaintiffs and members of the Classes;

c.    Defendants continue to breach their legal duties and be in breach of their contract with Plaintiffs and Class Members by continuing to intercept, view, read, capture, disseminate, and misuse Plaintiffs' and Class Members' electronic communications; and

d.    Defendants' ongoing breaches of their legal duties and breach of contract continue to cause Plaintiffs' and Class Members harm.

279.    Further, it is respectfully requested that this Court should also issue corresponding injunctive relief, including but not limited to enjoining ZoomInfo from engaging in the unlawful conduct alleged in this claim and requiring ZoomInfo to delete all recordings of Class Members, to cease further interception, and to implement functionality sufficient to prevent unauthorized interception in the future, and other appropriate equitable relief, including but not limited to improving its privacy disclosures and obtaining adequately informed consent.

280.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and lack an adequate legal remedy in the event of Defendants' ongoing conduct

281.    Federal and state laws prohibit, among other things, interception, recording, disclosure, and other misuse of confidential communications without consent, including those occurring in electronic communication. California specifically recognizes privacy as a fundamental right. Given that ZoomInfo admits that it continues to intercept, view, read, capture, and misuse personal information, the risk of continued violations of federal and state law is real, immediate, and substantial. Plaintiffs do not have an adequate remedy at law because many of the resulting injuries are reoccurring and Plaintiffs will be forced to bring multiple lawsuits to rectify the same conduct.

282.    The hardship to Plaintiffs and the Class if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. On the other hand, the cost to Defendants of complying with an injunction by complying with federal and state laws and by ceasing to engage in the misconduct alleged herein is relatively minimal, and Defendants have a pre-existing legal obligation to avoid invading the privacy rights of consumers.

283.    Issuance of the requested injunction will serve the public interest by preventing ongoing intercepting, viewing, reading, capture, and misuse of personal electronic communications without consent, thus eliminating the injuries that would result to Plaintiffs and the Classes, and the potentially hundreds of thousands of consumers who subscribed to Community Edition program or those who corresponded with members of the Subscriber Class.

## VIII.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Classes respectfully request that the Court enter an order:

A.      Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as representatives of the Classes, and appointing their counsel as class counsel;

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    B.    Declaring that ZoomInfo's actions, as set out above, violate the Wiretap Act

2 cited herein;

3    C.    Declaring that ZoomInfo's actions, as set out above, violate the Stored

4 Communications Act cited herein;

5    D.    Declaring that ZoomInfo's actions, as set out above, violate Washington's consumer

6 and privacy laws cited herein;

7    E.    Declaring that ZoomInfo's actions, as set out above, violate California's privacy laws

8 cited herein;

9    F.    Declaring that ZoomInfo's actions, as set out above, violate California's Bus. & Prof.

10 Code cited herein;

11    G.    Declaring that ZoomInfo's actions, as set out above, violate Florida's consumer laws

12 cited herein;

13    H.    Declaring that ZoomInfo's actions, as set out above, violate New York's consumer

14 laws cited herein;

15    I.    Declaring that ZoomInfo's actions, as set out above, violate Illinois' consumer and

16 privacy laws cited herein;

17    J.    Declaring that ZoomInfo's actions, as set out above, constitute breach of contract;

18    K.    Declaring that ZoomInfo's actions, as set out above, violate Connecticut's consumer

19 laws cited herein;

20    L.    Declaring that ZoomInfo's actions, as set out above, violate Georgia's consumer

21 laws cited herein;

22    M.    Requiring ZoomInfo to delete all personal information of Members of the Class,

23 cease further recording, and implement functionality to prevent further interception of the Class's

24 electronic communication without prior consent, and to cease disclosing communications of the

25 Class to third parties without prior consent;

26

27

28

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

N.      Requiring ZoomInfo to undertake measures to cure the harm caused to the Class by its wrongdoing, as alleged herein, including, but not limited to improving its privacy disclosures and obtaining adequately informed consent;

O.      Awarding damages, including nominal and statutory damages, and restitution where applicable, to Plaintiffs and the Classes in an amount to be determined at trial;

P.      Awarding Plaintiffs and the Classes their costs of suit, including reasonable attorneys' fees and expenses;

Q.      Awarding Plaintiffs and the Classes pre-and post-judgment interest, to the extent allowable;

R.      Enjoining ZoomInfo from further engaging in the unlawful conduct alleged herein;

S.      Awarding such other further injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and

T.      Awarding such other and further relief as the Court deems reasonable and just.

## IX.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.


Dated: September 15 2022


**BRESKIN JOHNSON & TOWNSEND PLLC**

By: s/ Cynthia Heidelberg
   Cynthia Heidelberg, WSBA No. 44121
   1000 Second Avenue, Suite 3670
   Seattle, WA  98104
   Phone:  206-652-8660
   Facsimile:  206-652-8290
   Cheidelberg@bjtlegal.com

**AND**

**LOWEY DANNENBERG, P.C.**
Margaret MacLean (*pro hac vice*)
Andrea Farah (*pro hac vice*)
Radhika Gupta (*pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
mmaclean@lowey.com
afarah@lowey.com
rgupta@lowey.com

*Counsel for Plaintiffs*

EXHIBIT A



Solutions    Platform    Pricing    Our Data    Resources    Login    Free Trial

# ZoomInfo Community Edition Terms of Use

By clicking "Accept" with regard to these Terms of Use (the "**Terms**" or the "**Agreement**") or by registering for, accessing, or using the ZoomInfo Community Edition software application (the "**Application**") and/or services ("**Community Edition**") (collectively, the "**Services**") you are entering into a legally binding agreement with ZoomInfo (defined below). By accessing or using any of the Services, you acknowledge that you have read, understood, and agree to be bound by and comply with these Terms.

## SUMMARY OF CERTAIN TERMS

This brief summary of some of the terms of this Agreement is for illustrative purposes and to make the Agreement easier to understand. Please note you must read, understand, and agree to this Agreement in its entirety, and to the extent any of the express terms in Sections 1 through 13 below conflict with this summary or any portion thereof, expressly or by implication, the term stated in Section 1 through 13 shall prevail. Please note the following provisions of this Agreement:

• In exchange for your use of Community Edition, you agree to let us access information in your email inbox, specifically the information in signature blocks of emails you have received, metadata from email headers, and your contacts in your email contact book. You represent and warrant that you have the right to provide us with this information and that, if your email account is owned by your employer, you are authorized by your employer to sign up for Community Edition. If you do not have that right or that authorization (if applicable), you may not and must not use the Service.

• No human being reads your email because of your use of Community Edition; we use automated computer processes to identify the signature block and email header and to extract the business contact information of the sender and metadata from the email header. You grant us a broad license to use that information in Community Edition or otherwise. In other words, you are contributing that information to us, for use in our database if we choose, in exchange for us providing you the Service.

• You agree to comply with all applicable laws when using Community Edition or any contact information you get from ZoomInfo, and you agree not to violate the rights of any other person. You agree not to attempt to hack the site or use automated processes to scrape information from it. You agree not to

transfer the information to anyone else or use it in a commercial product.

- We reserve the right to modify or discontinue the Service at any time, and we reserve the right to terminate your access to the service at any time for any reason. We also reserve the right to modify this Agreement at any time, and you agree to be bound by the modified terms if you continue to use the Service. If you do not agree to these Terms, either now or later if it is modified, you may not use and must stop using the Service.

# 1. LICENSE

Subject to the conditions and terms hereof, ZoomInfo grants you a non-exclusive, non- assignable, revocable license (the "**License**") to access and use the Services during the term hereof

# 2. COMMUNITY EDITION

2.1 By accepting this Agreement and registering for Community Edition, and as a condition to accessing and using the Services, you authorize the Application to access the information in your email account (e.g. Gmail, Microsoft Outlook), including your contacts, metadata from email headers, and email content. You acknowledge, understand, and agree that after this permission is granted and until it is revoked, the Application will use automated algorithms to automatically parse this information and extract certain information regarding businesses and business people, such as name, email address, job title, department, company name, phone numbers, business address(es), website URLs, metadata from email headers, and other similar business-related information (collectively "**Contact Data**") that may be stored in your email account both locally or on a remote server.

2.2 If you have any concerns about making such contributions or have reason to believe your employer does not permit you to make such contributions, do not accept these Terms, do not access or use any of the Services. If such concerns arise after permission has been granted, immediately cease using the Services and revoke the access permissions granted to the Application by uninstalling it or otherwise revoking permissions according to the instructions provided by your email account or email software provider.

2.3 By continuing to access or use the Services and granting access permission to the Application, you grant ZoomInfo and any of its affiliates the following licenses: (i) a license to access Contact Data that you have stored in your email client, including in your contacts list, email signatures, and email headers, until you revoke the Application's permission to access your email account and (ii) an irrevocable license to reproduce, distribute, publish, perform, make derivative works of, or display the Contact Data or any portion thereof, and sell, transfer, assign, sublicense, disclose, or make available the Contact Data or any portion thereof to any third party, including ZoomInfo's customers, contractors, strategic partners, agents, and service providers. The foregoing license grants to ZoomInfo shall be worldwide, non-exclusive, perpetual, fully paid-up, and royalty-free, and ZoomInfo shall have the right to sublicense, assign, or transfer such licenses in its sole and

absolute discretion.

2.4 In exchange for providing ZoomInfo with access to your email account, as described above, and granting the aforementioned licenses to the Contact Data, you will be entitled to use the Community Edition Service, which permits you to access premium information, such as names, job titles, email addresses and phone numbers, from the ZoomInfo database (the "**Licensed Materials**") for so long as you have granted access permissions to the Application and contribute Contact Data, as provided herein. Immediately and without further action by ZoomInfo, if you revoke the Application's permission to access your email account, your authorization to access or use the Services will automatically be revoked and you must immediately cease using the Services. Access to the Community Edition Service will all you to perform searches across the entire ZoomInfo database and unlock contact information (email address and phone number, where available) on up to 10 contacts per month.

# 3. USER CONDUCT

3.1 In using the Services, you agree that you will not:

1   violate any applicable international, federal or state laws, regulations or rules or any securities exchange requirements (collectively, "**Laws**"), including, but not limited to, by using any Licensed Materials in a manner that violates the U.S. CAN-SPAM Act of 2003, as such statute may be amended from time to time, or any other law regarding electronic communications;

2   make any Contact Data available to ZoomInfo if doing so would violate any Laws, industry or professional codes or standards, contractual or fiduciary obligations, confidentiality obligations, or employer policies or other requirements by which you are bound;

3   use the Licensed Materials or the Services to transmit any information, data, images, or other materials that are unlawful, harmful, threatening, harassing, libelous, defamatory, vulgar, obscene or otherwise objectionable or that may invade another's right of privacy or infringe any intellectual property right, including patent, trademark, service mark, trade secret, copyright or other proprietary rights of any third party;

4   impersonate any person or entity or falsely state or otherwise misrepresent your affiliation with a person or entity;

5   violate or attempt to violate the security of any of the Services, including, but not limited to, by: logging in to a server or account that you are not authorized to access; attempting to test, scan, probe or hack the vulnerability of the Site or any network used by the Site or to breach security, encryption or other authentication measures; or attempting to interfere with the Site by overloading, flooding, pinging, mail bombing or crashing it;

6   reverse engineer, decompile or disassemble any portion of the Services; or

7   "scrape" information from the Services, or use or attempt to use any engine, software, tool, agent or

other device or mechanism (including browsers, spiders, robots, avatars or intelligent agents) to navigate or search any portion of the Site, other than the search engine and search agents available from ZoomInfo on the Site and generally available to third party web browsers (e.g., Mozilla Firefox, Google Chrome and Microsoft Internet Explorer)

3.2 You further agree to: (i) provide true, accurate, current and complete information about yourself if prompted by the registration form; and (ii) maintain and update this information to keep it true, accurate, current, and complete.

3.3 You agree to comply with all applicable Laws, including but not limited to privacy and/or data protection Laws, when providing us with access to Contact Data and when using Community Edition or any contact information you access from Community Edition.

# 4. ADDITIONAL RESTRICTIONS

You may not develop or derive for commercial sale any data in any form that incorporates or uses any of the Licensed Materials. Except with the prior written consent of ZoomInfo, you may not transfer or disclose any Licensed Materials to anyone else. You may not use the Services in a commercial service bureau environment, including, but not limited to, any provision or export of Licensed Materials to third parties in any form whatsoever. You are authorized to use the Services solely for your personal and/or internal business purposes only, subject to the limitations set forth herein.

# 5. SUBMISSIONS

5.1 You are solely responsible for the content of any submission you make to ZoomInfo. ZoomInfo reserves the right, but does not assume any obligation, to delete messages or other content that ZoomInfo, in its sole discretion, deems abusive, defamatory, obscene, in violation of copyright or trademark laws, or otherwise unacceptable.

5.2 ZoomInfo does not want to receive confidential or proprietary information from you. You acknowledge that any information or material you send to ZoomInfo will be presumed not to be confidential unless otherwise provided in a written agreement between you and ZoomInfo. Unless otherwise provided in a written agreement between you and ZoomInfo, by sending ZoomInfo any information or other material, you grant ZoomInfo a nonexclusive, unrestricted, irrevocable, perpetual, royalty-free, worldwide, assignable, transferrable, sublicensable, right and license, in all formats or media, whether now known or hereafter devised or discovered, to use, reproduce, display, transmit, translate, rent, sell, modify, disclose, publish, create derivative works from, and distribute that material or information, and you also agree that ZoomInfo is free to use any ideas, concepts, knowhow or techniques that you send us for any purpose. You further agree to indemnify and defend ZoomInfo and hold ZoomInfo harmless from and against any liability arising from ZoomInfo's use or distribution of any such material or information.

# 6. PROPRIETARY RIGHTS

6.1 You agree that, as between you and ZoomInfo, ZoomInfo and/or its licensors own the Services and Licensed Materials, including all software and other technology provided or employed by ZoomInfo in connection with the Services, and the contents, design, layout, functions, appearance and other intellectual property comprising or contained within the Services, including all copyrights, trademarks, service marks, trade secrets, patents and other intellectual property rights inherent therein or appurtenant thereto. Without limitation of the foregoing, as between ZoomInfo and you, ZoomInfo shall retain all right, title and interest in and to the compiled biographical and company data and all other materials accessible by means of the Services, including news articles, company summaries, company descriptions, people summaries and contact information, and the selection, coordination and arrangement of such content, and you shall not acquire ownership in any of the Licensed Materials by reason of the License. You shall abide by all additional copyright notices or restrictions contained in any content accessed through the Site.

6.2 By furnishing Licensed Materials or access to any software in connection with the Services, ZoomInfo does not grant any licenses to any copyrights, patents, trademarks, trade secrets or other intellectual property rights other than the limited rights to use the Services, as set forth herein. All rights not expressly granted herein under the License are reserved by ZoomInfo.

# 7. PROVISION OF SERVICES

7.1 ZoomInfo may make improvements or changes in the Services at any time without notice.

7.2 ZoomInfo shall not be responsible for any failure to remove, or delay in removing, harmful, inaccurate, unlawful, or otherwise objectionable content originating with or otherwise provided by third parties, except to the extent provided by applicable law.

7.3 ZoomInfo shall not be liable for any loss or damage resulting from total or partial loss of any data you upload using the Services. Data can get lost or become corrupt as a result of a number of causes, including hardware failures, software failures or bugs, or communications failures. ZoomInfo recommends that you periodically back up your information onto media not associated with ZoomInfo.

7.4 You understand and agree that the Services are provided on an "as available" basis; ZoomInfo will use reasonable commercial efforts to provide the Services on a 24/7 basis, but it shall not be liable for any disruption in service, regardless of length.

# 8. TERM; TERMINATION

The term hereof will commence when you first accept these Terms or otherwise register for, access, or use the Services, and continue in effect until terminated by either party, provided that

your License may sooner expire or be terminated as provided herein. Either party may terminate this Agreement any time without prior notice to the other party. ZoomInfo may terminate this Agreement by terminating your access to the Service, in which case ZoomInfo will promptly cease accessing the Contact Data. You may terminate these Terms at any time by uninstalling the Application, in which case you agree to cease using the Services. Upon termination hereof for any reason, the License will automatically be terminated, and you shall immediately cease using the Services, including the Licensed Materials.

# 9. LINKS

The Service may contain links to websites that ZoomInfo does not operate. ZoomInfo is not responsible for the content of these websites, and you should direct any concerns regarding these websites to their respective site administrators or webmasters.

# 10. REPRESENTATIONS AND WARRANTIES; INDEMNITY

10.1 You represent, warrant and covenant that:

1   no information of any kind submitted through your use of the Application or the Services will (i) violate, plagiarize, or infringe upon the rights of any third party, including copyright, trademark, privacy or other personal or proprietary rights; or (ii) contain libelous or otherwise unlawful material;

2   you are at least eighteen (18) years old;

3   you are authorized by your employer, if applicable, to sign up for Community Edition and to share the Contact Data with ZoomInfo in exchange for your access to the Services and that you are not prohibited by any contract, policy, rule, or regulation from doing so.

10.2 You agree to indemnify, defend and hold harmless ZoomInfo and its successors or assigns, and all officers, directors, owners, agents, information providers, affiliates, licensors and licensees of the foregoing (collectively, the "Indemnified Parties") from and against any and all liability and costs, including reasonable attorneys' fees, incurred by the Indemnified Parties in connection with any claim arising out of any breach by you or any user of your account of these Terms or the foregoing representations, warranties, or covenants. You agree to cooperate as fully as reasonably necessary to the defense of any such claim.

# 11. DISCLAIMERS; LIMITATIONS

11.1 YOU ASSUME ALL RESPONSIBILITY AND RISK FOR YOUR USE OF THE SERVICES. THE SERVICES ARE PROVIDED "AS IS" WITHOUT REPRESENTATIONS ORWARRANTIES OF ANY KIND, EITHER

EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF TITLE, NONINFRINGEMENT, OR IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. WITHOUT LIMITATION OF THE FOREGOING, ZOOMINFO EXPRESSLY DISCLAIMS ANY WARRANTY THAT THE SERVICES SHALL BE UNINTERRUPTED OR ERRORFREE. ZOOMINFO DOES NOT ASSUME ANY LEGAL LIABILITY OR RESPONSIBILITY FOR THE ACCURACY, COMPLETENESS, OR USEFULNESS OF ANY INFORMATION MADE AVAILABLE THROUGH THE SERVICES.

11.2 IN NO EVENT SHALL ZOOMINFO BE LIABLE FOR ANY INDIRECT, PUNITIVE, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN ANY WAY CONNECTED WITH YOUR USE OF, DELAY IN USING, OR INABILITY TO USE THE SERVICES. ZOOMINFO'S LIABILITY FOR ANY DIRECT DAMAGES SHALL BE LIMITED TO THE AMOUNT OF FEES YOU HAVE PAID FOR THE SERVICES FOR THE THENCURRENT PERIOD. SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AND THUS THE ABOVE LIMITATION MAY NOT APPLY TO YOU. IF THIS LIMITATION OF LIABILITY OR THE EXCLUSION OF WARRANTY SET FORTH ABOVE IS HELD INAPPLICABLE OR UNENFORCEABLE FOR ANY REASON, ZOOMINFO'S MAXIMUM LIABILITY FOR ANY TYPE OF DAMAGES SHALL BE LIMITED TO $100.

# 12. CHANGES TO THE TERMS

ZoomInfo may modify these Terms, provided however that (i) such changes will become effective and binding after ZoomInfo provides notice to you that these Terms have changed and you first use the Services following the date of such posting, and (ii) the changes will only apply with respect to your use of the Services after such changes become effective. If at any time you find these Terms unacceptable and do not agree with them, you agree to cease accessing the Services and uninstall or deactivate the Application.

# 13. CONTRACTING PARTY, GOVERNING LAW, AND JURISDICTION

13.1 If you are located in the European Economic Area or the United Kingdom, "**ZoomInfo**" means ZoomInfo UK Ltd., a UK limited company located at Floor 11 Whitefriars, Lewins Mead, Bristol BS1 2NT. If you are located anywhere else, "**ZoomInfo**" means ZoomInfo Technologies LLC, a Delaware limited liability company located at 805 Broadway St., Suite 900, Vancouver, WA 98660.

13.2  If an issue arises under these Terms and: (a) the contracting ZoomInfo entity is ZoomInfo Technologies LLC, then these Terms are governed by the laws of the United States of America and the State of Washington and any action or proceeding (including those arising from non-contractual disputes or claims) related to these Terms will be brought in a state or federal court in the State of Washington; or (b) the contracting ZoomInfo entity is ZoomInfo UK Ltd., then these Terms are governed by the laws of England and Wales, and any action or proceeding (including those arising from non-contractual disputes or claims) related to these Terms will be brought in London, England.  Each party irrevocably submits to the jurisdiction and venue of the applicable

courts.

# 14. EEA & UK USERS

If you are located in the European Economic Area or the United Kingdom, then the Community Edition Joint Controller Addendum applies to you and is hereby expressly incorporated into these Terms by reference.

# 15. MISCELLANEOUS

15.1 **Relationship**. No joint venture, partnership, employment, fiduciary, or agency relationship exists between you and ZoomInfo as a result of these Terms and/or your use of the Services.

15.2 **Authority**. The person accepting these Terms on behalf of each party represents and warrants that he or she has been duly authorized by that party to accept the Agreement and thereby bind it to these Terms. The parties agree that these Terms shall be effective as of the date accepted by you.

15.3 **Entire Agreement**. These Terms represent the entire binding agreement between you and ZoomInfo with respect to the subject matter hereof, and supersede any and all prior understandings, statements, or representations, whether electronic, oral or written, regarding Services.

15.4 **Assignment and Waiver**. ZoomInfo may assign its rights under this Agreement without your consent. You may not assign your rights under this Agreement in whole or in part to anyone else without ZoomInfo prior express written consent. No waiver of any obligation or right of either party shall be effective unless in writing, executed by the party against whom it is being enforced.

15.5 **Equitable Relief**. In addition to money damages, ZoomInfo shall be entitled to seek equitable relief where appropriate if you breach of any of these Terms.

15.6 **Severability**. The unenforceability or invalidity of any clause in this Agreement shall not have an impact on the enforceability or validity of any other clause. Any unenforceable or invalid clause shall be regarded as removed from this Agreement to the extent of its unenforceability and invalidity. Therefore, this Agreement shall be interpreted and enforced as if it did not contain the said clause to the extent of its unenforceability and invalidity.

15.7 **Legal Expenses**. The prevailing party in any legal action brought by one party against the other that arises out of this Agreement shall be entitled, in addition to any other rights and remedies it may have, to reimbursement for its legal expenses, including court costs and reasonable attorneys' fees.

15.8 **Construction**. The titles and subtitles in these Terms are used for convenience only and are not to be considered in construing it. All references herein to "including" and variations thereof shall be deemed to mean, "including, but not limited to."

**15.9 Notices.** Notices required or permitted hereunder that are intended for you personally and not all users of the Services may be sent to you at the most recent email address on file with ZoomInfo. Notices to ZoomInfo shall be sent by email to legal@zoominfo.com or by mail to ZoomInfo, 805 Broadway St., Suite 900, Vancouver, WA 98660.

*Updated: November 15, 2021*

**POPULAR FEATURES**

Sales Solutions

Marketing Solutions

Company Contact Search

Buyer Intent Data

CRM Lead Enrichment

**COMPANY**

About Us

Our Leadership

Investor Relations

FAQs

Careers

Contact Us

**B2B DATABASE**

Our Data

Data Transparency

Code of Community

Verify Company Data

Verify Profile Data

Browse Directories

**MORE RESOURCES**

ZoomInfo Videos

Newsroom

Engineering Blog

COVID-19 Newsfeed

Recipes for Success

Privacy Center

Glossary

Free Trial

Login

866.904.9666

© 2022 ZoomInfo Technologies LLC     | Privacy Policy     | Terms of Use     | Cookies     | Status     | Do Not Sell My Personal Information

EXHIBIT B



Solutions    Platform    Pricing    Our Data    Resources    Login    Free Trial

# ZoomInfo Privacy Policy



**Updated: August 22, 2021**

ZoomInfo understands that you care about how information about you is used. This Privacy Policy (the "**Policy**") explains how we collect information pertaining to businesses and business people ("**Business Information**") and all other types of information, including personal information, through our online services (the "**Services**"), website, and mobile applications (collectively with the Services, the "**Site**"); how we maintain, use, and share that information; and how you can manage the way information about you is handled.

"**ZoomInfo**" for purposes of this Privacy Policy includes DiscoverOrg Data, LLC, a Delaware limited liability company, and its affiliates, including Zoom Information, Inc.

For individuals residing in the EEA, the UK, or Switzerland, please click here to find out more information.

For residents of the State of California, please click here to find out more about your rights under the California Consumer Privacy Act of 2018 ("**CCPA**").

Read more about ZoomInfo's Code of Community

## I. How we Collect Information

### A. Where does ZoomInfo get the Business Information for its Business Profiles?

ZoomInfo creates profiles of business people and companies, which we call "**Business Profiles**," from different sources. Once we have collected Business Information about a person or company, we combine multiple mentions of the same person or company into a Business Profile. The resulting directory of Business Profiles (the "**Directory**") is then made available to the users of the Site and our customers and strategic partners. Business Information that may be provided in a Business Profile includes name, email address, job title and department, phone number, company name, postal address of company and business-related postal address of the person, employment history, and education history. Business Profiles may also include links to articles by, about, or

quoting an individual and links to an individual's social media profiles.

ZoomInfo obtains the data for its Business Profiles in several ways, including:

1 Our search technology scans the web and gathers publicly-available information.

2 We license information from other companies.

3 Users contribute Business Information about themselves or other people and companies. (See "ZoomInfo Community Edition," below)

4 Through market research surveys and phone interviews conducted by our in-house research team.

ZoomInfo also makes certain limited Business Information from its Business Profiles publicly available in our directory pages on our Site (the "**Public Directory**"). The categories of Business Information that may be made available in the Public Directory include past or current name, company, company headquarters telephone number, office address, job title, and/or education information.

### B. How does the ZoomInfo Community Edition and the ZoomInfo Contact Contributor Work?

ZoomInfo offers a service called ZoomInfo Community Edition ("**Community Edition**"). To subscribe to Community Edition, you are required to install software offered on the Site, known as the ZoomInfo Contact Contributor (the "**Software**") or otherwise provide ZoomInfo with access to your email account. When you subscribe to Community Edition, you allow ZoomInfo to access certain Business Information stored by the application that your computer uses to manage your email and contacts, known as an "email client" (e.g., Microsoft Outlook) or stored by a provider of cloud services for email (e.g., Google Apps). If required to access this Business Information stored on your computer's email and contact application(s), you may need to provide ZoomInfo with the necessary username and password information. We use this Business Information to improve the size and quality of our Directory. In exchange for allowing this access, you receive a subscription to Community Edition at no charge under specified terms and conditions (available at /about-zoominfo/ce-terms-conditions).

From the contacts within your email client and "signatures" within email messages, we collect the following Business Information, if available, for each person:

• Name

• Email address

• Job title and department

• Business phone numbers (general, direct, and fax)

• Company name

Postal address of company

- Business related postal address of person
- Corporate website URLs
- Social Networking URLs

From the headers of your emails, we collect the following Business Information, if available:

- Metadata such as Internet Protocol addresses and the dates email messages are sent or received
- Email addresses, names, and job titles of recipients and senders

To ensure the integrity of the Directory, we take the following steps:

- Business Information Only – ZoomInfo only wants business-related information. Therefore, any contacts that have an address from a consumer-oriented service such as Gmail, Hotmail, or Yahoo are disregarded.
- Unattributed – We do not disclose who contributed particular information using the ZoomInfo Contact Contributor software or other contribution methods. (The only exceptions: See "Disclosures to Service Providers," "Disclosures for Legal Reasons," and "Disclosures to a Buyer of the Company," below.)
- Opt Out – Anyone added to the Directory may request to be removed at any time, via email, web, or a toll-free number. We promptly honor such requests.

ZoomInfo does not "read" the body of your email messages; our technology automatically extracts only the data we describe in this Policy. We do not collect data from custom fields or notes in your email client.

Information from your email client will continue to be shared as described above as long as the Software remains installed. If you choose to stop sharing information from your email client with ZoomInfo, you can uninstall the Software at any time following the instructions at /cefaq. You may not, however, retroactively "unshare" the Business Information you have already made available to ZoomInfo.

## C. Customer Information

**Customer Information Collected.** ZoomInfo may collect the following information from or regarding its customers: (1) personal contact information regarding users of the Services ("**User Information**"); (2) information uploaded to our system by a user of the Services ("**Uploaded Information**"); and (3) usage logs regarding the use of the Site and Services, including logins and other actions taken, time stamps, IP address, and other usage data ("**Usage Logs**") (collectively, "**Customer Information**").

You may be a user that has been provided access to the Site through your company license agreement. Your employer may require that one or more users have global rights to access any and all information of every user that has access through the company. If you have questions or concerns regarding the rights of other individuals in your company to access your User

Information, Uploaded Information, or Usage Logs, you should raise those concerns with the appropriate person at your company.

**Use of Customer Information**. Customer Information may be used for ZoomInfo's legitimate business interests in connection with your use of the Site, including to respond to user inquiries and fulfill user requests, complete transactions, provide customer service, send administrative information, and to personalize user experience with the Site. We may use Customer Information to better understand our users in general and to improve the content and functionality of the Site. We may use Customer Information to contact you in the future to tell you about services, promotions, opportunities, and other general information about ZoomInfo we believe will be of interest to you. We may use Customer Information to investigate and prosecute potential breaches of ZoomInfo's security or license agreements.

ZoomInfo will not disclose Customer Information to any third party except in connection with a legitimate use as set forth herein, in connection with a bona fide legal dispute to which such information is relevant, in response to valid, compulsory legal process, or as otherwise required by law. ZoomInfo will, whenever possible, obtain confidentiality agreements from any person or entity to whom Customer Information is disclosed and ensure any recipients are committed to employing appropriate technological security measures.

ZoomInfo employs reasonable security and back-up procedures to protect Customer Information. However, in the unlikely event there is a loss or corruption of Customer Information, ZoomInfo is not responsible or liable for such loss or corruption. We encourage our users to retain copies of all Uploaded Information on their own system.

D. How else does ZoomInfo Collect Information?

**When you submit information through our Site.** Visitors to our Site may choose to submit their name, email address, phone number, and/or other information so that they can learn more about our Services, register to take part in a ZoomInfo-sponsored event, participate in a survey, contest, or sweepstakes, or apply to ZoomInfo's open job positions, among other things. By accessing, using, and/or submitting information through the Site, you consent to the practices described in this Policy with regard to the information collected thereby as described herein. If you do not agree with this Policy, you should not submit any information through our Site and you must delete all cookies from your browser cache after visiting the Site and refrain from visiting or using the Site.

**When you manage your Business Profile.** ZoomInfo allows you to claim your Business Profile and to update the information listed about you in your Business Profile, including your name, job title, business email address, direct phone number, current and past employment information, and education history. We use the information you submit to update your Business Profile solely for purposes of verifying your identity, updating your Business Profile information, and honoring your privacy preferences. For additional information, see the "Your Choices" section below.

**When you use our Services.** In order to use certain ZoomInfo Services, you may be required to register as a user. From time to time, we may use your email address to send you information and keep you informed of products and services in which you might be interested. You will always be

provided with an opportunity to opt out of receiving such emails. Your contact information may also be used to reach you regarding issues concerning your use of our Services or Site, including changes to this Policy. A more detailed description of how we may collect and use customer information can be found in the "Customer Information Collected" section above.

**When you provide information to our customers**. We receive information about our customers' end-users from or on behalf of our customers. Because of the nature of our Services, this information may contain any type of data, but typically includes name, contact information, and company information, such as company name. We may also collect data about you automatically through your use of our Services, as described in the "Cookies and Similar Technologies" section below. If you are a visitor to or user of a website, application, or service on which a customer uses our Services, then any information that you provide through our Services is subject to the customer's privacy policy and applicable terms. When we provide our Services to a customer, we act as a "data processor," and the customer is considered to be the "data controller," as further described in the "When ZoomInfo is a Controller" and "When ZoomInfo is a Processor" sections below.

**When you refer a friend.** If you choose to use our referral service to invite a friend to join ZoomInfo, we will ask you for your friend's name and email address. We will automatically send your friend a one-time email inviting him or her to visit the Site. ZoomInfo will use this information for the sole purpose of sending this one-time email and will not store your friend's name or email address.

**When you purchase our products and Services.** If you purchase one of our online subscription-based Services, you will need to provide credit card information. We will use that information solely for the purpose of fulfilling your ZoomInfo purchase request. We will store credit card information in an encrypted form and will not sell, share, or use it again without your prior consent. (The only exceptions are described in the sections below on "Disclosures to Service Providers," "Disclosures for Legal Reasons," and "Disclosures to a Buyer of the Company").

**When you use Chorus**. Our data analytics tools and capabilities enable our customers to collect, store, analyze, and share the contents of audio, video, image, and text-based communications such as phone calls, video calls, emails, chats, webinars, and meetings, along with associated data and documentation. These recordings and analysis thereof may also contain Business Information or personal information, such as names, titles, and contact information. We may reproduce, analyze, summarize, and disclose these files, recordings, and any results of our Services with such customers and their relevant personnel and other team members, and customers may share this information with their personnel or others. We may collect biometric information of Chorus customers when such customers have provided us with their consent to do so. The collection and use of such biometric information are governed by our Biometric Privacy Notice in addition to this Policy.

**When you use our mobile applications**. When you download and use our mobile applications, we collect certain information from you including your device type, operating system, location, platform used, device ID, and the date you last used the app, among other non-personally identifiable information. We may also collect other information such as your name, email, company name, and information about your account with us. If you use our mobile app calendar integration,

certain information will be collected from your calendar meetings, including meeting participants, meeting description, subject, and date and time of the meeting. This information is collected to provide you with certain app features, such as meeting briefs with meeting and contact details within the app.

**When you use ZoomInfo Integrations**. As part of the Services, ZoomInfo may make available to its customers certain "**Integrations**." In using ZoomInfo's Integrations, such as ZoomInfo's SFNA and web browser extensions, Business Information from customer's CRM, MAT, or sales enablement software may be transmitted to ZoomInfo for purposes of matching or cleansing the customer's data against ZoomInfo's database as a feature of the Services. In that event, ZoomInfo may retain and store such Business Information for purposes of identifying potential contacts to supplement the Services, verifying the accuracy of such Business Information, removing out-of-date Business Information from the Services, or otherwise improving ZoomInfo's research processes and the content provided through the Services. Information so received will not be attributable to the source. In the event that any customer wishes to opt out of ZoomInfo's use of such information, they may do so by visiting the 'Privacy Center' within the ZoomInfo Salesforce Native Application and adjusting the appropriate controls.

**When you connect the Services to your email or calendar.** In order to provide certain Services, ZoomInfo may require access to your email account and/or calendar (e.g., through G-Suite or Office 365). Depending on the specific Services being used, we may collect email header information, email subjects, email bodies and attachments, and calendar meeting information such as meeting participants, meeting description, subject, and date and time of the meeting. Customers have control over what data is collected, including which mailboxes are connected, whether message attachments or content is collected, and which emails or email domains should not be collected. ZoomInfo's access to and use of information received from Google Accounts will adhere to the Google API Services User Data Policy, including the Limited Use requirements.

**From third parties.** ZoomInfo may obtain information about you from third-party sources such as our service providers and strategic partners. We may use this information to enhance the information that we already maintain about you and to improve the accuracy of our records, in addition to other purposes described in this Policy.

**Creation of aggregated information.** ZoomInfo may aggregate collected information about our users in a form that does not allow users to be personally identified for the purpose of understanding our customer base and enhancing the Site and the Services that we and our strategic partners and customers can provide you.

**Creation of information from inferences.** We may use the information we already have about you in order to draw inferences about you or to produce scores or ratings such as the Likely to Listen score. We use scoring models and algorithms that evaluate selected data points to produce a score predicting the likeliness of a candidate to respond to a recruiter's outreach efforts. We do not make any decisions about individuals, and we do not tell our customers whether to reach out to a particular candidate or not.

**Automated information collection.** We also collect information using cookies, as described below

under the "Cookies and Similar Technologies" section.

# II. How we Use Information

In addition to the uses described in the above section, we may also use information for one or more of the following purposes:

- Provide, maintain, and improve the Site

- Verify, cleanse, update, and maintain Business Information and other information provided through the Site

- Provide and deliver the Services you request, process transactions, and send you related information, including communications and invoices

- Send you technical notices, updates, security alerts, and support and administrative messages

- Respond to your comments, questions, and requests, and provide customer support

- Create your ZoomInfo account and identify you when you sign in to your account

- Communicate with you about products, services, offers, promotions, rewards, and events offered by ZoomInfo and others, and provide news and information we think will be of interest to you

- Monitor and analyze trends, usage, and activities in connection with the Site

- Detect, investigate, and prevent fraud and other illegal activities

- Protect the rights and property of ZoomInfo, our customers, and others

- Personalize and improve the Site

- Notify you about important changes to the Site, including changes or updates to this Privacy Policy

- Facilitate contests, sweepstakes, and promotions, process entries, and deliver rewards

- Consider you for possible employment with ZoomInfo in connection with an application that you submit through the Site, and communicate with you about your application

- Create aggregated statistical data, inferred non-personal data, or anonymized or pseudonymized data (rendered non-personal and non-identifiable), which we or our business partners or customers may use to provide and improve our respective services

- Comply with our contractual and legal obligations, resolve disputes with users, and enforce our agreements

- Carry out any other purpose described to you at the time the information was collected

# III. How we Share Information

**Disclosures of Business Profiles**. We may make any Business Information that our users contribute for inclusion in our Directory, that we collect from public web sources, that we collect through market research surveys and phone interviews conducted by our in-house research team, or that we license from third parties available to users of the Site, to our strategic partners, and to our customers. If you provide information, including Business Information, in creating or updating your Business Profile, that information will be included in the Directory and thus can be viewed by third parties.

**Disclosures via Public Directory**. ZoomInfo makes certain limited Business Information from its Business Profiles publicly available in our Public Directory on our Site. The categories of Business Information that may be made available in the Public Directory include past or current name, company, company headquarters telephone number, office address, job title, and/or education information. Information in the Public Directory is publicly available to visitors who visit our Public Directory webpages on our Site.

**Disclosures to Affiliates**. We may share Business Information with our affiliates who may act for us for any of the purposes set out in this Privacy Policy, including our current and future parents, subsidiaries, and other companies under common control and ownership with ZoomInfo.

**Disclosures to Service Providers**. ZoomInfo may from time to time disclose Business Information or other collected information to service providers, solely for providing functions related to our operation of the Site and for no other purpose. For example:

- ZoomInfo uses service providers to process credit card payments on our Site. When you use a credit card to pay for ZoomInfo Services, information such as your name, billing address, phone number, email address, and credit card information will be submitted to service providers for verification and to manage any recurring payments.

- ZoomInfo uses software hosted by a service provider to provide us with information regarding our visitors' activities on our Site. When you visit our Site, that service provider may set cookies on our behalf and may receive information about your browsing activity on our Site.

**Disclosures to Integration Partners.** In using ZoomInfo's Integrations, such as ZoomInfo's SFNA and web browser extensions, Business Information from ZoomInfo may be disclosed to a customer's CRM, MAT, or sales enablement software as requested or directed by our customers.

**Disclosures for Legal Reasons**. We may disclose collected information, including Business Information, to a third party if we believe in good faith that such disclosure is necessary or desirable: (i) to comply with lawful requests, subpoenas, search warrants, or orders by public authorities, including to meet national security or law enforcement requirements; (ii) to address a violation of the law; (iii) to protect the rights, property, or safety of ZoomInfo, its users, or the public; or (iv) to allow ZoomInfo to exercise its legal rights or respond to a legal claim.

**Disclosures to a Buyer of the Company**. If our company or substantially all of our assets are

acquired, or in the event of a merger or bankruptcy, information about you and/or information you provide to ZoomInfo may be among the transferred assets. You will be notified via email and/or a prominent notice on our Site of any change in ownership or uses of your personal information, as well as any choices you may have regarding your personal information.

### Other Disclosures

If you register for a ZoomInfo event with a third-party speaker, your information will generally be shared with the speaker and any third-party sponsors or partners of the event.

We post customer testimonials on our Site which may contain the customer's name. We always get consent from the customer prior to posting any testimonial. If you wish to update or delete your testimonial, you can contact us at privacy@zoominfo.com.

Our Site offers publicly accessible blogs or community forums. You should be aware that any content you provide in these areas may be read, collected, and used by others who access them. You can request the removal of your personal information from our blog or community forum by contacting us at privacy@zoominfo.com. In some cases, we may not be able to remove your personal information, in which case we will let you know if we are unable to do so and why.

# IV. Cookies and Similar Technologies

Most websites, including our Site, use a feature of your browser to set a small text file called a "cookie" on your computer. The site placing the cookie on your computer can then recognize the computer when you revisit the site to allow auto log in and track how you are using the site.

When you visit our Site, our servers and/or those of our service providers automatically record certain information that your web browser sends, such as your web request, Internet Protocol address, browser type, referring/exit pages and URLs, number of clicks, domain names, landing pages, pages viewed, time and date of use, and other information. We may link this information to information that you submit while on our Site, which does allow you to be personally identified.

You are free to decline cookies. You can configure your browser to accept all cookies, reject all cookies, erase cookies, or notify you when a cookie is set. Electing to reject or disable cookies may substantially limit your ability to use our Site.

ZoomInfo may adopt other technologies that serve similar functions as cookies. If we do so, we will disclose it in this Policy.

### A. Third Party Cookies

The use of cookies and similar technologies by our partners, affiliates, tracking utility company, and service providers is not covered by this Policy. We do not have access to or control over these cookies. Our partners, affiliates, tracking utility company and service providers may use session ID cookies in order to:

- personalize your experience
-
- analyze which pages our visitors visit

- provide website features such as social sharing widgets

- measure advertising effectiveness

- track which areas of our site you visit; in order to remarket to you after you leave

To disable or reject third-party cookies generally, please refer to the third-party's relevant website. You can also reject third-party analytics cookies by clicking the "Close" button on the cookie banner when visiting our Site.

### B. Google Analytics

We use Google Analytics, a web analytics service provided by Google, Inc., on our Site. Google Analytics uses cookies or other tracking technologies to help us analyze how users interact with and use the Site, compile reports on the Site's activity, and provide other services related to Site activity and usage. The technologies used by Google may collect information such as your IP address, time of visit, whether you are a return visitor, and any referring website. The Site does not use Google Analytics to gather information that personally identifies you. The information generated by Google Analytics will be transmitted to and stored by Google and will be subject to Google's privacy policies. To learn more about Google's partner services and to learn how to opt out of tracking of analytics by Google click here.

### C. Web Beacons

Our Site contains electronic images known as "web beacons" (sometimes called single-pixel gifs) and are used along with cookies to compile aggregated statistics to analyze how our site is used and may be used in some of our emails to let us know which emails and links have been opened by recipients. This allows us to gauge the effectiveness of our customer communications and marketing campaigns.

### D. Advertising Choices and Control

As described in this Privacy Policy, third parties on our Site may use cookies and similar tracking technologies to collect information and infer your interests for interest-based advertising purposes. If you would prefer to not receive personalized ads based on your browser or device usage, you may generally express your opt-out preference to no longer receive tailored advertisements. Please note that you will continue to see advertisements, but they will no longer be tailored to your interests.

To opt-out of interest-based advertising by participating companies in the following consumer choice mechanisms, please visit:

- Digital Advertising Alliance's self-regulatory opt-out page (http://optout.aboutads.info/) and mobile application-based "AppChoices" download page (https://youradchoices.com/appchoices)

- European Interactive Digital Advertising Alliance's consumer opt-out page (http://youronlinechoices.eu)

- Network Advertising Initiative's self-regulatory opt-out page (http://optout.networkadvertising.org/).

# V. Your Choices

## A. How Can You Change or Delete Your Professional Information?

To find out if you are in the ZoomInfo database, search for your first name and last name on the ZoomInfo home page. If you have a common name, you can limit your search based on geographical location or companies where you have worked.

Once you have located one or more ZoomInfo profiles in your name, consider these options for managing your professional profile on ZoomInfo:

**Update Your Own Professional ZoomInfo Profile**. Make sure your ZoomInfo profile is up to date for recruiters and others who may want to reach you. Simply verify your ZoomInfo profile and you can update your work history, education history, and contact information. You can also consolidate multiple ZoomInfo profiles in your name to create a comprehensive snapshot of your professional background. Please Click here to view, verify, and update your ZoomInfo Directory profile.

**Remove Your ZoomInfo Profile Completely**. If you wish to completely remove your existing individual profile from the Directory, please visit Remove Your Zoominfo Professional Profile or email remove@zoominfo.com. If you make this choice, your name, employment history, education history, web references, and contact information (including email address) will be removed from our search results as soon as possible.

## B. How Can You Change or Delete Your Company Information?

To find out if your company is in the ZoomInfo database, search for your organization on the ZoomInfo home page. Once you have located the ZoomInfo profile, consider these options for managing your company profile on ZoomInfo:

**Update Your Company Profile on ZoomInfo**. Simply verify your ZoomInfo company profile to update your company description, industry, company location, and more. You can also consolidate multiple ZoomInfo profiles to create a comprehensive snapshot of your company. Please click here to view, verify, and update your ZoomInfo company profile.

**Remove Your Company ZoomInfo Profile Completely**. ZoomInfo is a specialized web search engine, similar to Google but focused on finding information about companies and professionals. We gather all information about companies from corporate web sites, press releases, and/or SEC documents filed with the US government. The company summaries are created automatically by ZoomInfo's software based on the information we find on those documents.

*As a company policy, ZoomInfo does not remove company information from our search engine*. If

any of the company information is incorrect, please update your company profile.

**C. How Can You Opt-Out of Certain Uses of Your Information?**

ZoomInfo gives you the opportunity to "opt out" of having your information used for certain purposes.

If you no longer wish to receive our newsletter and promotional communications, you may opt-out of receiving them by following the instructions included in each newsletter or communication or by visiting /unsubscribe. After we receive your request, we will send you an email message to confirm that you have been unsubscribed.

ZoomInfo will not share information about you that you submit when you register for our Services with third parties for promotional uses unless you opt in to such sharing within your ZoomInfo account or ZoomInfo has separately acquired such information from other sources, in which case ZoomInfo will give you the opportunity to opt out via email.

If you have registered for a ZoomInfo account and opted in to share your information with ZoomInfo subscribers, you may opt out by signing in to your ZoomInfo account and changing your preferences by clicking "Edit" next to your contact information on the Profile page.

If you have subscribed to Community Edition and opted in to share your business contacts with ZoomInfo in exchange for free access to our premium services, you may opt out of any further sharing of business contacts by uninstalling the Software, as described on /cefaq. If you uninstall the Software, your subscription to Community Edition will immediately expire and ZoomInfo will no longer collect Business Information from you through this method (however, you will not be able to 'unshare' the Business Information you have previously provided to ZoomInfo).

You may also communicate your opt-out request to ZoomInfo by telephone or postal mail by using the contact information at the bottom of this Policy.

# VI. How Do We Keep Your Information Secure?

The security of your information is important to us. When you enter sensitive information (such as a credit card number) on our registration forms, we encrypt that information using secure socket layer technology (SSL).

We follow generally accepted industry standards to protect the information submitted to us, both during transmission and once we receive it. However, no method of Internet transmission or electronic storage is 100% secure. Therefore, while we strive to use commercially acceptable means to protect your information, we cannot guarantee its absolute security.

# VII. Data Retention

We will retain your information for a period of time consistent with the original purpose(s) for

which we collected it, as described in this Privacy Policy. We will retain your information (i) for as long as we have an ongoing relationship with you and as needed to provide you Services; (ii) as necessary to comply with our legal obligation(s); (iii) as necessary to resolve disputes or to protect ourselves from potential future disputes; or (iv) as necessary to enforce our agreements. Retention periods will be determined taking into account the amount, nature, and sensitivity of your information and the purpose(s) for which it was collected. After the retention period ends, we will delete your information. Where we are unable to do so, we will ensure that appropriate measures are put in place to prevent any further use of your information.

# VIII. Links to Other Sites

This Site contains links to other sites that are not owned or controlled by ZoomInfo. We are not responsible for the privacy practices of such other sites. When you leave our Site, we encourage you to be aware and to read the privacy statements of each and every website that collects personally identifiable information. This Policy applies only to information collected by this Site or in the method(s) otherwise discussed herein.

# IX. Social Media Widgets

Our Site includes social media features, such as the Facebook "Like" button and "Widgets," such as the "Share" button or interactive mini-programs that run on our Site. These features may collect your IP address, which page you are visiting on our Site, and may set a cookie to enable the feature to function properly. Social media features and widgets are either hosted by a third party or hosted directly on our Site. Your interactions with these features are governed by the privacy policy of the company providing it.

# X. Information for Users in Europe and Elsewhere Outside the U.S.

If you use our Site outside of the United States, you understand that we may collect, process, and store your personal information in the United States and other countries in which we or our affiliates or subcontractors maintain facilities. The laws in the U.S. regarding personal information may be different from the laws of your state or country.

## A. Users in the European Union (EEA), the UK, and Switzerland

If you are a resident of the EEA, the UK, or Switzerland, the following information applies.

**Purposes of processing and legal basis for processing:** As explained above, we process personal information in various ways depending upon your use of our Sites. We process personal information on the following legal bases:

1   with your consent;

2   as necessary to perform our agreement to provide Services;

3   as necessary for compliance with a legal obligation to which we are subject; and

4   as necessary for our legitimate interests in providing the Sites where those interests do not override your fundamental rights and freedom related to data privacy.

ZoomInfo's collection of Business Information, and the creation and licensing of ZoomInfo's Business Profiles and Directory, are within ZoomInfo's legitimate interests to organize and make available business contact information given the limited impact of this data on an individual's private life and that this information, unlike personal contact details, is widely disclosed. ZoomInfo has put in place safeguards to protect personal privacy and individual choice, including disclosures of its data processing activities, the use of consent or opt-outs wherever possible, and the implementation of a privacy center: /about-zoominfo/privacy-center.

**Right to lodge a complaint:** Users that reside in the EEA, the UK, or Switzerland have the right to lodge a complaint about our data collection and processing actions with the supervisory authority concerned. Contact details for data protection authorities are available here.

**Transfers:** Personal information we collect may be transferred to, and stored and processed in, the United States or any other country in which we or our affiliates or subcontractors maintain facilities. Per the applicable requirements of the General Data Protection Regulation ("**GDPR**"), we will ensure that transfers of personal information to a third country or an international organization are subject to appropriate safeguards as described in Article 46 of the GDPR, such as the EU Standard Contractual Clauses. Please see "Privacy Shield Frameworks" below regarding our compliance with the EU- and Swiss-US Privacy Shields.

**Individual Rights:** If you are a resident of the EEA, the UK, or Switzerland, you are entitled to the following rights under the GDPR. **Please note**: In order to verify your identity, we may require you to provide us with personal information prior to accessing any records containing information about you.

• **The right to access, correction, and restriction of processing**. You have the right to request access to, and a copy of, your personal information at no charge, as well as certain information about our processing activities with respect to your data. You have the right to request correction or completion of your personal information if it is inaccurate or incomplete. You have the right to restrict our processing if you contest the accuracy of the data we hold about you, for as long as it takes to verify its accuracy.

• **The right to data portability**. You have the right to ask for a copy of your data in a machine-readable format. You can also request that we transmit your data to another entity where technically feasible.

• **The right to request data erasure**. You have the right to have your data erased from our Site if the data is no longer necessary for the purpose for which it was collected, you withdraw consent and no other

legal basis for processing exists, or your fundamental rights to data privacy and protection outweigh our legitimate interest in continuing the processing.

- **The right to object to our processing**. You have the right to object to our processing if we are processing your data based on legitimate interests or the performance of a task in the public interest as an exercise of official authority (including profiling); using your data for direct marketing (including profiling); or processing your data for purposes of scientific or historical research and statistics.

**When ZoomInfo is a Controller**. ZoomInfo acts as a data controller when we collect and use information about data subjects who are visitors to our Site, as well as when we collect and use information about data subjects for purposes of creating and maintaining our Business Profiles and providing the Services. ZoomInfo's Data Protection Officer can be contacted by email at privacy@zoominfo.com.

**When ZoomInfo is a Processor**. When our customers use our Services, they are acting as the data controller and are responsible for ensuring that personal information collected about data subjects is being processed lawfully. In those circumstances, we are acting as the data processor, and receive personal information as agents of our customers merely for processing as instructed by our customers. Our customers are solely responsible for determining whether and how they wish to use our Services, and for ensuring that all third-party individuals that are a visitor to or user of a website, application, or service on which a customer uses our Services have been provided with adequate notice regarding the processing of their personal information, have given informed consent where such consent is necessary or advised, and that all legal requirements applicable to the collection, use, or other processing of personal information through our Services have been met by such customers. Our customers are also responsible for handling data subject rights requests under appliable law, by their users and other individuals whose data they process through the Services. ZoomInfo's obligations with respect to personal information for which we are solely a data processor are defined in our agreements with our customers and are not covered by this Policy.

### B. The General Data Protection Regulation ("GDPR") 2016/679

ZoomInfo endeavors to comply with the provisions of the GDPR as to any information in its possession regarding European Union-based persons ("**data subjects**"). As such, ZoomInfo only processes personal information on data subjects where it has a lawful basis to do so, which may include the consent of the person (especially in the case of website visitors who provide their information), performance of a contract, compliance with a legal obligation, or the legitimate interest of the controller or a third party. ZoomInfo provides notice to all data subjects as required by GDPR Article 13 or 14, as appropriate, and honors the rights of data subjects provided in Articles 12-23, including the right to be forgotten. For any opt-out requests or other inquiries related to privacy, please visit our privacy center at /about-zoominfo/privacy-center or email remove@zoominfo.com.

In the course of obtaining data to be included on the Site, if ZoomInfo obtains Business Information regarding an individual that ZoomInfo has reason to believe is based in the European Union,

ZoomInfo will provide such individual with a notice detailing the information ZoomInfo has on such person, the purpose for which it will be used, and informing such person of their rights with respect to such information, including the right to know what information ZoomInfo possesses on them, to correct such information, or to opt out of data collection entirely. Such persons may opt out of the ZoomInfo database by visiting /update/remove or emailing remove@zoominfo.com.

## C. Privacy Shield Frameworks

While ZoomInfo continues to be certified by and adhere to the principles of the Privacy Shield Frameworks, in light of the Court of Justice of the European Union decision regarding the legal effect of the EU-US Privacy Shield Framework, ZoomInfo does not rely upon the Frameworks to ensure the lawful transfer of data from EEA to non-EEA countries.

ZoomInfo complies with the EU-US Privacy Shield Framework and Swiss-U.S. Privacy Shield Framework as set forth by the US Department of Commerce regarding the collection, use, and retention of personal information transferred from the European Union and Switzerland to the United States. ZoomInfo has certified to the Department of Commerce that it adheres to the Privacy Shield Principles. If there is any conflict between the policies in this Policy and the Privacy Shield Principles, the Privacy Shield Principles shall govern. To learn more about the Privacy Shield program, any rights you may have to binding arbitration before a Privacy Shield Panel, and to view our certification page, please visit  https://www.privacyshield.gov.

For information received under the Privacy Shield, ZoomInfo will require third parties to whom we disclose personal information to safeguard that personal information consistent with this Policy by contract, obligating those third parties to provide at least the same level of protection as is required by the Privacy Shield Principles. EU and Swiss citizens may choose to opt-out of such disclosures. ZoomInfo may have liability to you in case of failure to comply with the law or this policy in handling onward transfer of your information to third parties.

In compliance with the Privacy Shield Principles, ZoomInfo commits to resolve complaints about your privacy and its collection or use of your personal information. European Union or Swiss individuals with inquiries or complaints regarding this Policy should first contact ZoomInfo at privacy@zoominfo.com. European Union and Swiss individuals have the right to access their personal information.

ZoomInfo further has committed to refer unresolved privacy complaints under the Privacy Shield Principles to JAMS (Judicial Arbitration & Mediation Services), an independent alternative dispute resolution provider located in the United States and recognized for this purpose by the US Department of Commerce. If you do not receive timely acknowledgment of your complaint, or if your complaint is not satisfactorily addressed, please visit https://www.jamsadr.com/eu-us-privacy-shield for more information, and to file a complaint.

The Federal Trade Commission has enforcement authority regarding ZoomInfo's compliance with the Privacy Shield Principles.

# XI. Your California Privacy Rights

If you are a California resident, California law permits you to request certain information regarding the disclosure of your personal information by us to third parties for the third parties' direct marketing purposes. To make such a request, please send your request, by mail or email, to the address at the end of this Policy under the "Contact Us" section.

# XII. Do Not Track Signals

Your browser or device may include 'Do Not Track' functionality. Our information collection and disclosure practices, and the choices that we provide to visitors, will continue to operate as described in this Policy, whether or not a Do Not Track signal is received.

# XIII. Children's Privacy

Our Site is not directed to or intended for individuals under the age of 16. We do not knowingly collect or use any personal information from users of our Site who are under the age of 16. No personal information should be submitted to our Site by individuals who are under 16 years of age. If we learn that we have collected information from someone who is under 16, we will take steps to delete the personal information as soon as possible. If you believe we may have collected personal information from someone under 16, please contact us at privacy@zoominfo.com.

# XIV. Changes to this Policy

ZoomInfo reserves the right to modify this Policy from time to time, so please review it regularly. If we make material changes to this policy, we will notify you here, by email, and/or by means of a notice on our homepage prior to the changes becoming effective. Your continued use of the Site after any updates to this Privacy Policy constitutes your acceptance of the updated Privacy Policy.

# XV. Non-Privacy Shield Related Questions or Complaints

If you have an unresolved data privacy or data use concern that we have not addressed satisfactorily, please contact our U.S.-based third-party dispute resolution provider (free of charge) at https://feedback-form.truste.com/watchdog/request.

# XVI. Contact Us

If you have questions or concerns regarding this Privacy Policy, please contact us at:

ZoomInfo

Attn: Privacy

805 Broadway, Suite 900

Vancouver, WA 98660

360-718-5630

Email: privacy@zoominfo.com

**Frequently Asked Questions**

Want to learn more about ZoomInfo? Check out some of our FAQs. From trustworthiness and safety, to how we collect data, we are committed to answer your top questions:

- Is ZoomInfo Trustworthy?

- Is ZoomInfo Safe?

- How Does ZoomInfo Get My Information?

- Read All FAQs

| POPULAR FEATURES | COMPANY | B2B DATABASE | MORE RESOURCES | |
|---|---|---|---|---|
| Sales Solutions | About Us | Our Data | ZoomInfo Videos | Free Trial |
| Marketing Solutions | Our Leadership | Data Transparency | Newsroom | Login |
| Company Contact Search | Investor Relations | Code of Community | Engineering Blog | 866.904.9666 |
| Buyer Intent Data | FAQs | Verify Company Data | COVID-19 Newsfeed | |
| CRM Lead Enrichment | Careers | Verify Profile Data | Recipes for Success | |
| | Contact Us | Browse Directories | Privacy Center | |
| | | | Glossary | |

24/06/22, 1:43 PM

© 2022 ZoomInfo
Technologies LLC

| Privacy
Policy

| Terms
of Use

| Cookies

| Status

| Do Not Sell My Personal
Information