The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

JENNIFER WYSOCKI, ANDREW SIDHU, BETSY KELLOGG, and KEISHA FLEMISTER, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

ZOOMINFO TECHNOLOGIES INC., ZOOMINFO TECHNOLOGIES LLC, ZOOMINFO HOLDINGS LLC, and ZOOMINFO INTERMEDIATE INC.,

Defendants.

Case No. 3:22-cv-05453-DGE

DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

NOTE ON MOTION CALENDAR:  Dec. 23, 2022

ORAL ARGUMENT REQUESTED

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1
2

## <u>TABLE OF CONTENTS</u>

**Page**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ....................................................................................................... 1

SUMMARY OF ALLEGATIONS ............................................................................... 3

    A.    ZoomInfo's Business Involves Collecting and Analyzing Business Contact Information ........................................................................................... 3

    B.    Community Edition Subscribers Agree to Terms of Use and a Privacy Policy that Informs Them What Contact Contributor Does ......................................... 3

    C.    Plaintiffs Bring this Lawsuit Alleging that ZoomInfo Reads and Intercepts Emails ........................................................................................................... 5

    D.    Plaintiffs and Alleged Classes and Subclasses ............................................... 6

ARGUMENT .............................................................................................................. 7

I.    THE COURT SHOULD DISMISS CLAIMS BASED ON STATE LAW WHERE THERE IS NO REPRESENTATIVE PLAINTIFF FROM THAT STATE ................ 7

II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .............................................................................................................. 8

    A.    Plaintiffs Fail to Plead Facts that Plausibly Support Their Claims .................. 9

    B.    Plaintiffs' Claims All Separately Fail as a Matter of Law ............................. 11

        1.    Plaintiffs Fail to State a Claim Under the Wiretap Act (Claim 1) ...... 12

            a.    Plaintiffs fail to allege that ZoomInfo acted without consent . 12

            b.    Plaintiffs fail to allege facts showing that ZoomInfo intercepted a communication "in transit." ................................................... 13

            c.    Plaintiffs fail to allege facts showing that ZoomInfo intercepted the "contents" of any communication. ................................... 14

        2.    Plaintiffs Fail to State a Claim Under the Stored Communications Act (Claim 2). ......................................................................................... 15

            a.    Plaintiffs fail to allege that ZoomInfo acted without consent . 15

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

i

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

b.   Plaintiffs fail to allege that ZoomInfo accessed a "facility through which an electronic communication service is provided." ................................................................ 15

3.   Plaintiffs Fail to State a Claim Under State Consumer Protection Laws (Claims 3, 10-14) .................................. 16

a.   Plaintiffs fail to allege an unfair or deceptive act or practice .. 16

b.   Plaintiffs fail to allege an injury to business or property. ....... 17

4.   Plaintiffs Fail to State a Claim Under the Washington Wiretapping Statute (Claim 4) ................................................ 18

5.   Plaintiffs Fail to State a Breach of Contract Claim Under Washington Law (Claim 5) ..................................................... 19

6.   Plaintiffs Fail to State a Claim Under the California Invasion of Privacy Act ("CIPA") (Claim 6) ...................................... 20

7.   Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion or Invasion of Privacy (Claims 7 & 8) ................................... 20

8.   Plaintiffs Fail to State a Claim Under the California UCL (Claim 9) . 22

a.   The SAC fails to state a claim for an "unlawful" practice ...... 22

b.   The SAC fails to state a claim for a "fraudulent" practice ...... 22

c.   The SAC fails to state a claim for an "unfair" practice ........... 23

9.   Plaintiffs' Declaratory Judgment Claim Should Be Dismissed .......... 23

III.   THE SAC VIOLATES RULE 8 BECAUSE IT FAILS TO DISTINGUISH AMONG DEFENDANTS ..................................................................... 23

CONCLUSION ................................................................................ 24

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

- ii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*389 Orange Street Partners v. Arnold,*
179 F.3d 656 (9th Cir.1999)......................................................................11

*Adobe Sys. Inc. v. Blue Source Grp., Inc.,*
125 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................................23

*Angeles v. Nestle USA, Inc.,*
2022 WL 4626916 (S.D.N.Y. 2022) ..........................................................16

*Archey v. Osmose Utilities Servs., Inc.,*
2021 WL 3367156 (N.D. Ill. 2021)............................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...............................................................................8, 22

*Austin v. Budget Rental Car, Inc.,*
2020 WL 8614183 (N.D. Cal. 2020)..........................................................23

*Bartosiake v. Bimbo Bakeries USA, Inc.,*
2022 WL 4552025 (N.D. Ill. 2022)............................................................16

*Bravo v. Cnty. of San Diego,*
2014 WL 555195 (N.D. Cal. 2014)............................................................23

*Brodsky v. Apple Inc.,*
2019 WL 4141936 (N.D. Cal. 2019)..........................................................14

*Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................19

*Calixto v. JPMorgan Chase Bank Nat. Ass'n,*
2014 WL 30192 (W.D. Wash. 2014) .........................................................10

*Callahan v. Ancestry.com Inc.,*
2021 WL 783524 (N.D. Cal. 2021)............................................................21

*Chelan Cnty., Wash. v. Bank of Am. Corp.,*
2014 WL 3101935 (E.D. Wash. 2014)........................................................19

*Cohen v. Facebook, Inc.,*
798 F. Supp. 2d 1090 (N.D. Cal. 2011) .....................................................21

*Cole v. Keystone RV Co., LLC,*
2018 WL 4051805 (W.D. Wash. 2018) ........................................................8

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE
- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Collins v. Nationalpoint Loan Servs.*,
2009 WL 3213979 (S.D. Cal. 2009) ....................................................................11

*Cousineau v. Microsoft Corp.*,
6 F. Supp. 3d 1167 (W.D. Wash. 2014) ..............................................................15

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............................................................7

*Foley v. Bates*,
2007 WL 1831133 (N.D. Cal. 2007)....................................................................24

*Frame-Wilson v. Amazon.com, Inc.*,
2022 WL 741878 (W.D. Wash. 2022) ...................................................................7

*Freese v. Bank of Am.*,
2010 WL 11646973 (N.D. Ga. 2010).....................................................................17

*Gen-Probe, Inc. v. Amoco Corp., Inc.*,
926 F. Supp. 948 (S.D. Cal. 1996) .......................................................................23

*In re Generic Pharms. Pricing Antitrust Litig.*,
368 F. Supp. 3d 814 (E.D. Pa. 2019) ...................................................................18

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................20

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................................20

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ................................................................7

*Hernandez v. Johnson & Johnson*,
2021 WL 320612 (E.D. Wash. 2020).....................................................................17

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022)................................................................................15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................................14

*King Cnty. v. Viracon, Inc.*,
2019 WL 12043501 (W.D. Wash. 2019) ...............................................................8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)................................................................................3

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)................................................................................13

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE
- iv -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Kyszenia v. Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (E.D.N.Y. 2022) .................................................................17

*Lentini v. Fid. Nat'l Title Ins. Co. of N.Y.*,
    479 F.Supp.2d 292 (D.Conn.2007) ......................................................................17

*Llado-Carreno v. Guidant Corp.*,
    2011 WL 705403 (S.D. Fla. 2011) .......................................................................17

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................................20

*Medawar v. Otis Elevator Co.*,
    2021 WL 1034840 (C.D. Cal. 2021) .....................................................................19

*MFG Universe Corp. v. Next Gen LED, Inc.*,
    2022 WL 3028081 (W.D. Wash. 2022) .................................................................23

*Moss v. Walgreen Co.*,
    765 F. Supp.2d 1363 (S.D. Fla. 2011) ..................................................................16

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
    2016 WL 6393503 (N.D. Cal. 2016) .....................................................................19

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..................................................................12

*Rodriguez v. Ford Motor Co.*,
    2022 WL 972306 (N.D. Ill. 2022) .........................................................................17

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ..............................................................................23

*Silver v. Stripe, Inc.*,
    2021 WL 3191752 (N.D. Cal. 2021) .....................................................................22

*Steinberg v. Provident Funding Assocs., L.P.*,
    2016 WL 3361815 (N.D. Cal. 2016) .....................................................................19

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) ...................................................................14

*Underhill v. Kornblum*,
    2017 WL 2869734 (S.D. Cal. 2017) .....................................................................13

*Parker ex rel. United States v. Sea-Mar Cmty. Health Ctr.*,
    2020 WL 2041744 (W.D. Wash. 2020) .............................................................8, 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................8, 16, 17, 19

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                         - v -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*In re Vizio, Inc. Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................13

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .........................................................12, 13

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................14

*In re Zynga Privacy Litig.*,
    750 F. 3d 1098 (9th Cir. 2014) ........................................................................14

**State Cases**

*Clare v. Clare*,
    2022 WL 1714547 (Wash. Ct. App. 2022) ........................................................18

*Collins v. Athens Orthopedic Clinic*,
    849 S.E.2d 213 (Ga. Ct. App. 2020) ................................................................18

*Edmands v. CUNO, Inc.*,
    892 A.2d 938 (Conn. 2006) ...............................................................................16

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ...........................................................................20

*Gaglidari v. Denny's Restaurants, Inc.*,
    117 Wash. 2d 426 (1991) ..................................................................................19

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009)......................................................................................20

*Kikuchi v. Weinstein & Riley, P.S.*,
    13 Wash. App. 2d 1072 (2020) .........................................................................16

*Lehrer v. State, Dep't of Soc. & Health Servs.*,
    101 Wash. App. 509 (2000) ..............................................................................19

*Macias v. HBC of Fla., Inc.*,
    694 So. 2d 88 (Fla. Dist. Ct. App. 1997).........................................................17

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wash. 2d 27 (2009) ...........................................................................17, 18

*Repin v. State*,
    198 Wash. App. 243 (2017) ..............................................................................19

*State v. Roden*,
    179 Wash. 2d 893 (2014) ..................................................................................18

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

- vi -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

*Stutman v. Chem. Bank*,
  95 N.Y.2d 24 (2000) .......................................................................................17

**Federal Statutes**

Wiretap Act ...................................................................................................*passim*

Stored Communications Act ..........................................................................7, 14

Computer Fraud and Abuse Act......................................................................15

**State Statutes**

Cal. Bus. & Prof. Code § 17200......................................................................21

Conn. Gen. Stat. Ann. § 42-110b ................................................................7, 16

Conn. Gen. Stat. Ann. § 42-110g ...................................................................17

Fla. Stat. Ann. § 501.204 .............................................................................7, 16

Ga. Code. Ann. § 10-1-372 ..........................................................................7, 16

815 Ill. Comp. Stat. Ann. § 505/2 ...............................................................7, 16

N.Y. Gen. Bus. Law § 349 ...........................................................................7, 16

N.Y. Gen. Bus. Law § 350 ...........................................................................7, 16

Wash. Rev. Code Ann. § 19.86.020 .............................................................7, 16

Wash. Rev. Code. Ann. § 9.73.030 ..............................................................7, 18

**Rules**

Fed R. Civ. P. 8 .............................................................................................*passim*

Fed R. Civ. P. 8(a)(2) .....................................................................................23

Fed R. Civ. P. 9(b)...........................................................................................*passim*

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                    - vii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants ZoomInfo Technologies Inc., ZoomInfo Technologies LLC, ZoomInfo Holdings LLC, and ZoomInfo Intermediate Inc., respectfully request that this Court dismiss the Second Amended Class Action Complaint ("SAC") for failure to state a claim.

## INTRODUCTION

ZoomInfo Technologies LLC ("ZoomInfo")[1] helps business-to-business sales, marketing, operations, and recruiting professional teams identify executives empowered to make purchasing decisions concerning their companies' products or services. ZoomInfo does this through its database, which contains information about businesses and business professionals around the world. One way ZoomInfo obtains the information in its database is through its Community Edition Program.

Community Edition involves a straightforward exchange of information: Subscribers agree to contribute business contact information stored in their email inboxes and address books to ZoomInfo's database; in exchange, Subscribers are granted access to the database without cost. To facilitate the arrangement, Subscribers download and install a software application called Contact Contributor on their local computers. Each Subscriber grants Contact Contributor access to the Subscriber's email program, and the software—not any individual—accesses the Subscriber's email metadata and address books. Contact Contributor uses machine learning to identify the structure of signature blocks (usually found at the bottom of an email). It disregards all email content that does not have the technical characteristics of a signature block. ZoomInfo uses the identified business contact information to supplement, update, and verify the information in its database, in combination with information from other sources. How Contact Contributor works is set forth in detail in the Terms of Use to which Subscribers of Community Edition agree and which are located on ZoomInfo's website.

---

[1] We define "ZoomInfo" to mean ZoomInfo Technologies LLC, ZoomInfo's operating company, for the sake of accuracy. The SAC uses the same term to refer to all four named defendants without differentiation and without specifying which entity is alleged to have engaged in the alleged conduct. As explained below, every such instance constitutes a pleading defect that requires dismissal under Rule 8.

Nonetheless, Plaintiffs allege that, as a matter of practice, ZoomInfo disregards the Terms of Use, Privacy Policy, and other public statements.  While sprawling in scope, the gravamen of the SAC is the allegation that ZoomInfo acts contrary to its agreements and policies, and that it actually "accesses and views *the entirety* of individuals' incoming and outgoing communications" and is thus "read[ing]" those messages.  SAC ¶ 11 (emphasis added). Plaintiffs contend that, contrary to "ZoomInfo's" privacy policy, it "downloads the contents of the email message to capture the 'Business Information,'" making the emails' contents available to "human researchers."  SAC ¶ 31.

These assertions—that ZoomInfo is knowingly and continually misrepresenting how its software works and what it collects—are serious charges.  One would expect Plaintiffs to have a solid basis for leveling such accusations.  But the SAC is devoid of *any* plausible allegations explaining how this occurs.  Plaintiffs' theory seems to be based on an unsupported inferential leap that ZoomInfo "reads" emails just because Plaintiffs' "full name," "title," "geographical information," "employment history," "years of experience," and "names of work colleagues" appear in ZoomInfo's database.  SAC ¶¶ 20–21.  But that is *precisely* what one would expect to find in a database built exactly as described in the Community Edition Terms of Use and in ZoomInfo's other public disclosures.  Plaintiffs' factual allegations thus entirely fail to support their core theory.

That failure to adequately plead the central theory of the case is alone sufficient to defeat all of Plaintiffs' fifteen claims.  But it is hardly the only problem with the SAC.  For example, the SAC makes claims under the laws of several states for which there is no named plaintiff representative.  This deficiency requires the dismissal of the California claims (Claims 6–9), the Florida claim (Claim 10), the New York claim (Claim 11), and the Illinois claim (Claim 12).  In addition, each of Plaintiffs' claims fails as a matter of law because the Plaintiffs have not alleged and cannot allege the elements of any of the claims they assert.  Finally, the SAC fails to specify which of the four Defendants stands accused of any of the alleged acts, depriving each Defendant of the notice to which it is entitled under Rule 8.  The SAC should be dismissed in its entirety.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                     - 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

## SUMMARY OF ALLEGATIONS

**A.**     **ZoomInfo's Business Involves Collecting and Analyzing Business Contact Information.**

ZoomInfo provides access to a proprietary database that contains information about businesses and individuals.  SAC ¶ 3.  It offers analytical tools to customers who can use ZoomInfo's database to learn about personnel moves, organizational hierarchy, and decision-maker contact information at various companies.  *Id.*  One way that it obtains the information that fills its database is through its Community Edition Program.  SAC ¶ 4.  Its database is also populated by reviewing "public information on over 28 million site domains every day."[2]

ZoomInfo's Community Edition is a free program whereby a Subscriber obtains access to ZoomInfo's products in exchange for providing ZoomInfo access to certain information within their own email programs.  *Id.*  When a Community Edition Subscriber signs up, the Subscriber downloads and installs a local software application called Contact Contributor, which integrates into the Subscriber's mail software.  SAC ¶ 29.  Once downloaded, Contact Contributor scans the Subscriber's address books, email "headers," and signature blocks of email messages for business contact information—e.g., company and office address, phone number, email address, and position/title.  SAC ¶¶ 29, 67.

**B.**     **Community Edition Subscribers Agree to Terms of Use and a Privacy Policy that Informs Them What Contact Contributor Does.**

When a Subscriber signs up to be part of the Community Edition Program, the Subscriber is presented with a pop-up screen on their computer stating:

> I agree to the Terms of Use and Privacy Policy.  I understand that I will receive a subscription to ZoomInfo Community Edition at no charge in exchange for downloading and installing the ZoomInfo Contact Contributor utility, which, among other features, involves sharing my business contacts as well as headers and signature blocks from emails that I receive.

---

[2] https://www.zoominfo.com/data-sources.  ZoomInfo's webpages, Terms of Use, and Privacy Policy are proper consideration in evaluating Defendants' Motion to Dismiss because Plaintiff's SAC makes reference to, and thereby incorporates, each into the SAC.  *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *e.g.*, SAC ¶¶ 38–57, 208, 236, 252, 265.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                               - 3 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

SAC ¶ 36.  Subscribers must agree to this by checking a box on the screen.  *Id.*  Both the Terms of Use and the Privacy Policy are posted on ZoomInfo's website and hyperlinked in the pop-up; they explain exactly how Content Contributor operates.  First, the Terms of Use state, in part:

> [Y]ou authorize the Application to access the information in your email account (e.g. Gmail, Microsoft Outlook), *including your contacts, metadata from email headers, and email content*. You acknowledge, understand, and agree that after this permission is granted and until it is revoked, the Application *will use automated algorithms to automatically parse this information and extract certain information* regarding businesses and business people, such as name, email address, job title, department, company name, phone numbers, business address(es), website URLs, metadata from email headers, and other similar business-related information (collectively "Contact Data") that may be stored in your email account both locally or on a remote server.

SAC Ex. A, Terms of Use § 2.1 (emphases added).  The Terms of Use also state, "[n]o human being reads your email because of your use of Community Edition; we use automated computer processes to identify the signature block and email header and to extract the business contact information of the sender and metadata from the email header."  *Id.* at 1.

The Privacy Policy contains a similar explanation:

> To subscribe to Community Edition, you are required to install software offered on the Site, known as the ZoomInfo Contact Contributor (the "Software") or otherwise provide ZoomInfo with access to your email account.  When you subscribe to Community Edition, you allow ZoomInfo to access certain Business Information stored by the application that your computer uses to manage your email and contacts, known as an "email client" (e.g., Microsoft Outlook) or stored by a provider of cloud services for email (e.g., Google Apps)….
>
> From the contacts within your email client and "signatures" within email messages, we collect the following Business Information, if available, for each person:
> - Name
> - Email address
> - Job title and department
> - Business phone numbers (general, direct, and fax)
> - Company name
> - Postal address of company
> - Business related postal address of person
> - Corporate website URLs
> - Social Networking URLs

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                        - 4 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

2

3

4

        From the headers of your emails, we collect the following
Business Information, if available:
- Metadata such as Internet Protocol addresses and the
dates email messages are sent or received
- Email addresses, names, and job titles of recipients and
senders

SAC Ex. B, Privacy Policy § I.B.

5

6

    **C.**    **Plaintiffs Bring this Lawsuit Alleging that ZoomInfo Reads and Intercepts
Emails.**

7

8

9

10

11

        The SAC is sprawling, containing irrelevant and contradictory allegations.  At times the
Complaint alleges [X], and then later says [Y].  To the extent there is any contiguous theory
underlying the Complaint, it appears to be that ZoomInfo operates in direct contravention to the
representations it makes on its website, in its Terms of Use, and in its Privacy Policy.  Read
generously, Plaintiffs' allegations revolve around two types of alleged conduct:

12

13

14

15

16

17

18

19

20

21

22

23

24

25

        ***Reading and Intercepting Email Content.***  Plaintiffs allege that "Contact Contributor
scans, reads, or otherwise reviews the contents of [Subscribers'] email correspondence with third
parties."  SAC ¶ 68; *see also* SAC ¶¶ 6, 20–22, 69–71.  The SAC specifically alleges that
"ZoomInfo … reads the entirety of the[] email correspondence," SAC ¶ 31, not just "address
books, email headers, and email signatures."  SAC ¶ 30.  The SAC repeats this allegation several
times.  For instance, paragraph 97 of the SAC says that ZoomInfo engages in the "viewing,
reading, processing, capturing and/or disseminating" of emails.  *See also, e.g.*, SAC ¶¶ 96, 99,
124, 128, 150.  Plaintiffs allege that ZoomInfo gains access to emails because it intercepts and
processes Subscribers' and Non-Subscribers' incoming and outgoing email during transit and
before the emails reach its [sic] storage location."  SAC ¶ 63.  They claim that "ZoomInfo uses
the information it unlawfully collects from the incoming and outgoing emails of the Subscribers
and Non-Subscribers to create user profiles of individuals and entities."  SAC ¶ 65.  Nowhere in
the SAC is there any allegation to support these bald allegations that ZoomInfo simply does not
do what is described in detail in its Terms of Use and Privacy Policy.

26

27

28

        ***Human Researchers.***  Plaintiffs also allege that "downloaded emails are quality-checked
by human researchers to separate the email message from 'Business Information' and to verify
the 'Business Information.'"  SAC ¶ 31.  They contend ZoomInfo does this notwithstanding

repeated representations by ZoomInfo to the contrary:  (a) in its Privacy Policy which expressly states ZoomInfo "does not 'read' the body of your email messages" and that ZoomInfo's "technology automatically extracts only the data … describe[d] in this Policy" (i.e., only address books, email headers, and signatures), SAC ¶ 40; and (b) on its website which states that Contact Contributor "absolutely [does] not read" email messages.  SAC ¶ 49.  Again, no factual allegations support these conclusory assertions, nor is there any explanation of why Plaintiffs or anyone else would suspect, much less allege, that ZoomInfo does the opposite of what it says.

> ### D.    <u>Plaintiffs and Alleged Classes and Subclasses</u>.

The SAC lists four named Plaintiffs:  Jennifer Wysocki, Andrew Sidhu, Betsy Kellogg, and Keisha Flemister.  Plaintiffs claim to be residents of three different states, and to comprise both Subscribers and Non-Subscribers of Community Edition, as summarized in the chart below:

| Plaintiff Name | Alleged State of Residency | Alleged Subscriber Status |
|---|---|---|
| Jennifer Wysocki | Connecticut.  SAC ¶ 20. | Non-Subscriber.  SAC ¶ 20. |
| Andrew Sidhu | Connecticut.  SAC ¶ 21. | Non-Subscriber.  SAC ¶ 21. |
| Betsy Kellogg | California.  SAC ¶ 22. | Subscriber.  SAC ¶ 22. |
| Keisha Flemister | Georgia.  SAC ¶ 23. | Non-Subscriber.  SAC ¶ 23. |

These four plaintiffs purport to represent two classes:  a Nationwide Subscriber Class (individuals who subscribed to "Community Edition whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo"), and a Nationwide Non-Subscriber Class (those who have not subscribed, but "whose email correspondence was viewed, read, processed, captured and/or shared by ZoomInfo").  SAC ¶ 76.

The SAC also alleges seven subclasses of the Nationwide Non-Subscriber Class, with one subclass each for the following states:  Washington, California, Florida, New York, Connecticut, Illinois, and Georgia.  SAC ¶ 76.  The following chart shows which claims are asserted on behalf of which classes and subclasses.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

- 6 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

| Claim(s) | Classes |
|---|---|
| • Wiretap Act (Claim 1)<br>• Stored Communications Act (Claim 2)<br>• Washington Consumer Protection Act (Claim 3)<br>• Declaratory Relief (Claim 15) | All Classes |
| • Washington Wiretapping Statute (Claim 4)<br>• Washington Breach of Contract (Claim 5) | Subscriber Class |
| • Various California Laws (Claims 6-9) | California Non-Subscriber Class |
| • Florida Deceptive and Unfair Trade Practices Act (Claim 10) | Florida Non-Subscriber Class |
| • New York Gen. Bus. Law §§ 349 & 350 (Claim 11) | New York Non-Subscriber Class |
| • Illinois Consumer Fraud and Deceptive Business Practices Act (Claim 12) | Illinois Non-Subscriber Class |
| • Connecticut Unfair Trade Practices Act (Claim 13) | Connecticut Non-Subscriber Class |
| • Georgia Uniform Deceptive and Unfair Trade Practices Act (Claim 14) | Georgia Non-Subscriber Class |

## **ARGUMENT**

## I.   **THE COURT SHOULD DISMISS CLAIMS BASED ON STATE LAW WHERE THERE IS NO REPRESENTATIVE PLAINTIFF FROM THAT STATE**

First, all of Plaintiffs' claims under the laws of a state for which there is no named plaintiff must be dismissed.  "Where, as here, a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal."  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009); *see also Frame-Wilson v. Amazon.com, Inc.*, 2022 WL 741878, at *13 (W.D. Wash. 2022) (dismissing state law claims for which there was no named plaintiff).  Here, there is no representative or named plaintiff to this action from New York, Illinois, or Florida.  Claims brought under those states' laws should be dismissed.  Moreover, since the only named plaintiff from California is alleged to be a Subscriber, and the California subclass purports to consist of only Non-Subscribers, all of the California claims should be dismissed as well.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) ("A class cannot assert a claim on behalf of an individual that they cannot represent.").

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                  - 7 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' fifteen causes of action all fail because Plaintiffs do not adequately plead facts satisfying the elements of those claims.  "A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face." *Cole v. Keystone RV Co., LLC*, 2018 WL 4051805, *1 (W.D. Wash. 2018).  "A claim has 'facial plausibility' when [it] … 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss." *Id.*

Claims that "sound in fraud" or are "grounded in fraud" are subject to Rule 9(b)'s heightened pleading standard.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003).  Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged," *Vess*, 317 F.3d at 1106 (cleaned up).  In addition, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.*; *see also Parker ex rel. United States v. Sea-Mar Cmty. Health Ctr.*, 2020 WL 2041744, at *4 (W.D. Wash. 2020) ("A plaintiff must specify the content of the fraudulent representation, the person who made it, when and where the representation was made, and the manner in which it was untrue and misleading, or the circumstances indicating that it was false.").  That means that for each allegedly false statement a plaintiff must (at a minimum) specify which specific defendant made the statement and the precise facts that indicate that the statement is false. *See, e.g.*, *King Cnty. v. Viracon, Inc.*, 2019 WL 12043501, at *5 (W.D. Wash. 2019) (alleging specific instances of defects in defendants' products that defendants were aware of but covered up).

### A.   <u>Plaintiffs Fail to Plead Facts that Plausibly Support Their Claims</u>.

Plaintiffs have not alleged plausible facts to support their conclusory assertion that ZoomInfo does the opposite of what it says.  While the SAC details at length ZoomInfo's representations in its Terms of Service, Privacy Policy, and other public statements, it provides

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

no reason to conclude that ZoomInfo's conduct varies from those representations.  The SAC therefore fails to satisfy Rule 8, much less the heightened pleading standards of Rule 9 that apply to Plaintiffs' claims sounding in fraud and misrepresentation.  No defendant should have to answer a complaint that alleges nothing more than "You said X and it's not true."  The SAC should be dismissed for this reason alone.

*"Reading" Emails.*  The core of the SAC is the (repeated) contention that Contact Contributor "reads the entirety of the[] email correspondence," as opposed to just information found in the header or signature block (as disclosed in ZoomInfo's Privacy Policy).  SAC ¶ 31; *see also, e.g.*, SAC ¶ 11, 67–68 (alleging that ZoomInfo reads emails); SAC ¶ 63 (asserting that ZoomInfo operates "[c]ontrary to its representations"); SAC ¶ 66 (similar).  But the SAC attempts to substantiate this supposed misrepresentation by offering only two theories—both of which fall well short of Rule 8's plausibility standard.

*First*, Plaintiffs assert that ZoomInfo must have "read" the "contents of their emails" (by which Plaintiffs mean more than the header and signature block) because certain of their information appears in the ZoomInfo database.  *See, e.g.*, SAC ¶ 69 (stating that Wysocki "has never subscribed or used any ZoomInfo service but her information … is available on ZoomInfo's platform").  But the conclusion does not follow from the premise:  All this information—names, business addresses, phone numbers, etc.—would exist in email headers and signature blocks, and could be collected as disclosed by ZoomInfo and agreed by Subscribers.

*Second*, Plaintiffs maintain that because ZoomInfo's Terms of Use authorize the Contact Contributor "to access … email content," that necessarily means that ZoomInfo "reads" more than just headers and signature blocks.  SAC ¶¶ 42–45.  But this intentionally conflates the access permissions granted to the software application with the act of "reading" an email message.  Indeed, Plaintiffs themselves emphasize what Contact Contributor does with the access granted:  "[T]he Application will use automated algorithms to automatically parse this information and extract" only the information contained in the signature blocks and headers.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                              - 9 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

SAC ¶ 42.  The Privacy Policy further clarifies that software algorithms do not "read" anything when they parse structured data:  "ZoomInfo does not 'read' the body of your email messages; our technology automatically extracts only the data we describe in this Policy."  SAC ¶ 40.

Plaintiffs' formulation also conflates the installed software (the Contact Contributor) with "ZoomInfo" in describing defendants' alleged actions.  The fact that the *software* has access permissions to email content is wholly different from Plaintiffs' allegations that *ZoomInfo* (or any individuals at ZoomInfo) ever receives, views, or reads email content.  That would be like saying Microsoft is reading your Word documents because they developed the software.  Contact Contributor is a piece of software downloaded and installed by the user and operating in the user's local environment.  This is clearly explained in the portion of the FAQ that Plaintiffs cite:  "Contact Contributor operates locally, and only business contact information is shared with ZoomInfo.  The body of your email is never seen by ZoomInfo; in fact, it never leaves your email."  SAC ¶ 47.  The SAC fails to plead any facts that ZoomInfo acted other than expressly and repeatedly disclosed, that any information other than the parsed email headers and signature blocks were transmitted to ZoomInfo, or that any ZoomInfo employee or agent ever accessed email content in contravention of its agreements and disclosures.  That is insufficient:  A complaint must do more than simply "plead[] facts that are merely consistent with a defendant's liability"; it must instead plead facts that are more "suggestive" of liability than a competing innocent explanation.  *Calixto v. JPMorgan Chase Bank Nat. Ass'n*, 2014 WL 30192, at *2 (W.D. Wash. 2014) (explaining that where a complaint is "factually neutral" it must be dismissed).  That failure to satisfy Rule 8 means *a fortiori*, that the SAC fails to satisfy the heightened pleading standard under Rule 9.

***"Human Researcher."***  Plaintiffs also assert that ZoomInfo is lying when it states in the Terms of Use, "[n]o human being reads your email."  SAC Ex. A, Terms of Use at 1.  But the facts that Plaintiffs actually plead fail to support the conclusion.  First, Plaintiffs say that "ZoomInfo readily admits to using a team of human research analysts and data scientists to clean business-to-business data" and "review[] data pieces that require … manual verification,"

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                                              - 10 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1    which, according to Plaintiffs, "directly contradicts ZoomInfo's explicit claims in its Privacy

2    Policy that 'no human being reads' emails as a result of users' participation in the Community

3    Edition Program." SAC ¶ 33.  This is nothing more than a pleading sleight of hand, attempting

4    to equate "cleaning business-to-business data" and "reviewing data pieces," with "reading

5    email."  How they are the same, Plaintiffs do not say.  Indeed, the SAC pleads no facts that

6    provide any basis (much less a plausible one) for Plaintiffs' assertion that ZoomInfo allows

7    human researchers to do anything more than what ZoomInfo's public statements already

8    disclose.  In any event, as the SAC makes clear, the use of human researchers is explained in the

9    very document that Plaintiffs allege ZoomInfo to be lying about.  *Id.*

10       *Tolling*.  Plaintiffs also contend they are entitled to tolling of the statute of limitations

11   due to "ZoomInfo's knowing and active concealment and denial of facts alleged herein."  SAC

12   ¶ 74.  That contention is subject to Rule 9's heightened pleading standard.  *See, e.g.*, *389 Orange*

13   *Street Partners v. Arnold*, 179 F.3d 656, 662–63 (9th Cir.1999) (requiring fraudulent

14   concealment to be pleaded with particularity under Rule 9(b)); *Collins v. Nationalpoint Loan*

15   *Servs.*, 2009 WL 3213979, *3 (S.D. Cal. 2009) ("As Plaintiff alleges fraudulent concealment,

16   [Rule] 9(b) requires him to particularly set forth specific allegations demonstrating the tolling

17   of the statute of limitations").  But like Plaintiffs' other contentions discussed above, their

18   parallel assertion here of knowing and active concealment is entirely speculative, as they have

19   offered no plausible allegation that ZoomInfo acts contrary to its representations, much less that

20   it does so knowingly.  Plaintiffs have therefore failed to satisfy Rule 9's standard for alleging

21   fraudulent concealment.

22       **B.    Plaintiffs' Claims All Separately Fail as a Matter of Law.**

23       In addition to Plaintiffs' failures to plead a plausible factual basis for their claims, each

24   of the SAC's fifteen claims for relief separately fails as a matter of law:

25       **1.    Plaintiffs Fail to State a Claim Under the Wiretap Act (Claim 1).**

26          **a.    Plaintiffs fail to allege that ZoomInfo acted without consent.**

27       Plaintiffs' wiretap claim fails because ZoomInfo had consent of a party to the

28

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                    - 11 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

communication.  As Plaintiffs themselves recognize, a defendant is liable under the Wiretap Act only if it acts "without the consent of at least one authorized party to the communication."  SAC ¶ 86; *accord In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) ("The Wiretap Act only requires one party to the communication to consent.").  But here, the SAC's own allegations make clear that ZoomInfo acted only *with* the consent of the Community Edition Subscribers who installed Contact Contributor—which Plaintiffs say is the means by which ZoomInfo "intercept[s] electronic communications," SAC ¶ 94.  Specifically, the SAC alleges that before Contact Contributor runs on a person's computer, a Subscriber is "required to agree to ZoomInfo's Community Edition Program Terms of Use … and ZoomInfo's Privacy Policy," SAC ¶ 36.  Each describes the acts that Plaintiffs accuse ZoomInfo of undertaking here; in fact, Plaintiffs' allegations about what acts ZoomInfo supposedly undertakes are based directly on those.  *See, e.g.*, SAC ¶¶ 36, 42–46.  Accordingly, every "reasonable user who viewed the … disclosures" would have (or should have) "understood that [ZoomInfo] was collecting [the disclosed information] from the user's … email account."  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014).  That means, at a minimum "the user's acquiescence demonstrates that she consented to or authorized the collection," *id.*, and giving weight to the fact that they agreed to ZoomInfo's Community Edition Program Terms of Use and ZoomInfo's Privacy Policy, they expressly consented to the very activity of which they now complain. [3] Plaintiffs' allegations that *other parties* to those emails may only receive notification after ZoomInfo "has already taken an email," SAC ¶ 51; *see also, e.g.*, SAC ¶¶ 5–6, is thus irrelevant, as the consent from the party who agreed to the Terms of Service and Privacy Policy is sufficient. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1029 ("The Court concludes that the [Terms of Service] establishes explicit consent by Yahoo Mail users to Yahoo's conduct.").  For this

---

[3] The SAC's allegation that Plaintiffs Kellogg (the only Plaintiff who purports to be a Subscriber of Community Edition) was subjectively "unaware of ZoomInfo's data scraping practices," and so did not "consent" to them, does not change the analysis.  SAC ¶ 71.  As explained in text, the question is not one of subjective awareness, but rather how an objectively "reasonable user who viewed the … disclosures" would have understood them.  *Perkins*, 53 F. Supp. 3d at 1212.  And courts have made clear that where, as here, the disclosures state expressly exactly what information is being collected, any reasonable Subscriber who nevertheless proceeds with using the product or service would have been aware of—and hence consented to—the collection.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

- 12 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

reason, Plaintiffs' Wiretap Act claim fails.

<b>b.     Plaintiffs fail to allege facts showing that ZoomInfo intercepted a communication "in transit."</b>

Plaintiffs' wiretapping claim also fails because the SAC only alleges access to emails already received and at rest in the user's email inbox.  As courts have explained, that requires that the "acquisition [be] contemporaneous with transmission," *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)—meaning that Plaintiffs must allege facts showing that ZoomInfo read or acquired a communication's content while the communication was *en route* to its destination, and not after it had already arrived, *see Underhill v. Kornblum*, 2017 WL 2869734, at *5 (S.D. Cal. 2017) ("[R]eading emails that have already been received in an email account's inbox does not constitute interception under the Wiretap Act because the transmission had already occurred.").  Conclusory assertions that the communications were acquired "during transmission" or "in real time" are insufficient; rather, a complaint must "articulate[] with sufficient clarity when [defendant] supposedly intercepted their communications."  *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing Section 631(a) claim because allegations that defendant "intercepted their communications … 'during transmission'" were too conclusory).  But the only allegations that Plaintiffs make on this point, *see, e.g.*, SAC ¶ 95; SAC ¶ 99; SAC ¶ 114—are conclusory allegations, identical to those that courts have already found lacking.  *See Vizio*, 238 F. Supp. 3d at 1228; *Underhill*, 2017 WL 2869734, at *4.[4]  For this reason, too, Plaintiffs' Wiretap Act claim fails.

<b>c.     Plaintiffs fail to allege facts showing that ZoomInfo intercepted the "contents" of any communication.</b>

Plaintiffs' Wiretap Act claim further fails because Plaintiffs fail to plead facts showing

---

[4] Nor is this a defect that Plaintiffs could remedy through amendment.  Indeed, Plaintiffs' own SAC cites to and quotes from (and hence incorporates by reference) ZoomInfo's FAQ Website which states expressly that "ZoomInfo's cloud-based contributor technology *operates locally*," meaning that it accesses information stored on a Subscriber's computer, not any information that is being transmitted from one location to another.   https://www.zoominfo.com/b2b/faqs/community-edition (emphasis added).  And far from providing any factual allegations that suggest that this representation is incorrect, the SAC instead pleads facts that corroborate it—alleging, for instance, that Contact Contributor "obtain[s] address books," SAC ¶ 29, which are not transmitted over any wire where they could be intercepted, but instead are stored locally (precisely where ZoomInfo says that Contact Contributor always acts).

that ZoomInfo read the "contents" of any communication—i.e., "the intended message conveyed by the communication." *In re Zynga Privacy Litig.*, 750 F. 3d 1098, 1106 (9th Cir. 2014). As courts have repeatedly held, information that merely *accompanies* a communication, but which is ancillary to the substantive message the writer tends to convey—e.g., name and address— does qualify as "contents." *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012). Here, Plaintiffs allege that ZoomInfo intercepted "names, addresses, telephone numbers, email addresses, job titles, job functions and responsibilities, education, [and] social media[] URLs." SAC ¶ 98. But nearly all of those types of data—i.e., name, address, telephone number, email addresses, and URLs—have been squarely held not to constitute message "contents," because none relates to the substantive import of the message the writer means to communicate. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 729 (N.D. Cal. 2014) (explaining that "names, mailing addresses, phone numbers," are not "contents" of a communication); *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *6 (N.D. Cal. 2019) ("[G]eographic location information [is] not contents"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("URLs are not content"). And the rest—which Plaintiffs admit is found solely in email *headers* and *signature blocks*—do not constitute the substantive import of the communication either, as all are ancillary to the message itself. *See Zynga*, 750 F.3d at 1107 (information contained in a "header" that is "automatically generated" is not content).

### 2.   Plaintiffs Fail to State a Claim Under the Stored Communications Act (Claim 2).

#### a.   Plaintiffs fail to allege that ZoomInfo acted without consent.

As with the Wiretap Act, Plaintiffs fail to adequately plead that ZoomInfo acted "without … consent," under the Stored Communications Act ("SCA"). SAC ¶ 116. In fact, the standard under the SCA is even stricter than the Wiretap Act. It requires that the defendant either acted "without authorization" or "intentionally exceed[ed] [its] authorization." 18 U.S.C. § 2701(a). And as courts have explained, that language requires something more than mere lack of consent—instead, the defendant must "circumvent[] a computer's generally applicable rules

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

- 14 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

regarding access permissions, such as username and password requirements, to gain access." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022) (interpreting parallel language in the Computer Fraud and Abuse Act (CFAA)); *see also id.* at 1199–200 (explaining that the SCA and CFAA are interpreted the same). However, as explained above the SAC makes clear that ZoomInfo acted only *with* consent, *see supra* § II.B.1.a, and thus for that reason alone defeats its own SCA claim. But even if ZoomInfo had "exceed[ed] the scope of [that] consent," the SCA claim would still fail, as Plaintiffs do not allege that ZoomInfo overcame any technical or code-based barriers (e.g., a password) to access any email or address book. *hiQ*, 31 F.4th at 1202, n.21.

**b.**      **Plaintiffs fail to allege that ZoomInfo accessed a "facility through which an electronic communication service is provided."**

Plaintiffs' SCA claim separately fails because they do not allege (as the statute requires) that ZoomInfo accessed a "facility through which an electronic communication service is provided" without authorization. 18 U.S.C. § 2701(a). Plaintiffs allege that the ZoomInfo "servers used by ZoomInfo to process the emails to Community Edition subscribers are a 'facility' within the meaning of the SCA." SAC ¶ 115. But ZoomInfo undoubtedly had authorization to access *its own servers*. Plaintiffs do not (and cannot) allege otherwise. Because Plaintiffs have identified no unauthorized access to a qualifying facility, their SCA claim fails for this separate reason.[5]

**3.**      **Plaintiffs Fail to State a Claim Under State Consumer Protection Laws (Claims 3, 10-14).**

Plaintiffs' claims under various state consumer protection laws—i.e., the Washington Consumer Protection Act ("CPA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), New York General Business Law §§ 349 & 350, the Illinois Consumer Fraud and

---

[5] Plaintiffs do not (and cannot) allege that their computers on which Contact Contributor ran (or the computers of individuals they exchanged emails with) qualify as such "facilit[ies]," *see* SAC ¶ 115; *see also Cousineau v. Microsoft Corp.*, 6 F. Supp. 3d 1167, 1174-75 (W.D. Wash. 2014) (emphasis added) (explaining that there is an "overwhelming body of law [that] supports [the] conclusion that [a] personal computer is not a facility" that can support a claim under the SCA).

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE
- 15 -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington 98104-7097
+1 206 839 4300

Deceptive Business Practices Act ("ICFA"), the Connecticut Unfair Trade Practices Act ("CUTPA"), and the Georgia Uniform Deceptive Trade Practices Act ("UDTPA")—all fail for one or both of the same two reasons:  (1) because Plaintiffs fail to allege an "unfair or deceptive act or practice"; and (2) because Plaintiffs fail to allege an injury to their business or property.

a.    **Plaintiffs fail to allege an unfair or deceptive act or practice**.

As already discussed, Plaintiffs offer no plausible facts to conclude that ZoomInfo did anything other than what it claims to do, much less pled them with particularity.  The consumer protection laws at issue generally prohibit an "unfair or deceptive act[] or practice[]."  Wash. Rev. Code Ann. § 19.86.020; *accord* Fla. Stat. Ann. § 501.204; N.Y. Gen. Bus. Law § 349; 815 Ill. Comp. Stat. Ann. 505/2; Conn. Gen. Stat. Ann. § 42-110b(a); Ga. Code. Ann. § 10-1-372(a)(5), (7) & (12).[6]  As discussed supra § II.A, the crux of Plaintiffs' claims is that ZoomInfo violated these consumer protection statutes by misrepresenting the functionality of its Community Edition product.  *See Kikuchi v. Weinstein & Riley, P.S.*, 13 Wash. App. 2d 1072, at *4 (2020) ("Conduct is 'deceptive' … if it misleads or misrepresents something of material importance."); *Moss v. Walgreen Co.*, 765 F. Supp.2d 1363, 1367 (S.D. Fla. 2011) (noting that the FDUTPA prohibits practices that are "likely to mislead consumers" (quotation marks omitted)); *Angeles v. Nestle USA, Inc.*, 2022 WL 4626916, at *3 (S.D.N.Y. 2022) (discussing deceptive packaging); *Bartosiake v. Bimbo Bakeries USA, Inc.*, 2022 WL 4552025, at *3 (N.D. Ill. 2022) (same); *Edmands v. CUNO, Inc.*, 892 A.2d 938, 954–55 (Conn. 2006) (finding no violation where the conduct "conformed in all respects to the express terms of the parties' agreements"); Ga. Code. Ann. § 10-1-372(a)(5) (prohibiting misrepresentations regarding goods or services).  As explained above, Plaintiffs have failed to properly plead that misrepresentation.

Plaintiffs' theory is "grounded in fraud," as it is an allegation of "a unified course of fraudulent conduct."  *Vess*, 317 F.3d at 1103.  Indeed, the SAC's section regarding the CPA claim alone alleges that "Defendants misrepresent" how Community Edition works, SAC ¶ 125, and refers to "representations" or "misrepresentations" six more times.  SAC ¶¶ 125, 126, 128,

---

[6] Although the Georgia UDUTPA contains different language, it, too, prohibits similar misrepresentations about the quality of goods or services.  Ga. Code. Ann. § 10-1-372(a)(5).

131; *see Hernandez v. Johnson & Johnson*, 2021 WL 320612, at *5 (E.D. Wash. 2020) (applying Rule 9(b) to allegations pertaining to the CPA because "Plaintiff's Complaint contains the words 'fraud' or 'fraudulent' nine times in sixteen pages").[7]   The allegations that ZoomInfo misrepresents its business to its Subscribers thus must meet the heightened pleading standard of Rule 9(b)—that is, they must plead "the who, what, when, where, and how" of the alleged fraud. *Vess*, 317 F.3d at 1106.   But here, Plaintiffs provide no specific "circumstances indicating that [any statement] was false." *Parker*, 2020 WL 2041744, at *4.   Instead, as laid out *supra* § II.A, the facts they have pleaded are entirely consistent with ZoomInfo's representations in the Terms of Use and Privacy Policy being wholly true.

### b.   Plaintiffs fail to allege an injury to business or property.

Plaintiffs have also failed to properly allege injury under the various state statutes at issue.   Under the CPA, Plaintiffs must claim that their "property interest or money is diminished because of the unlawful conduct."   *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 57 (2009).   Allegations of personal injury, such as "mental distress, embarrassment, and inconvenience are not recoverable."   *Id.*   Other states' laws are similar.   *See Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (requiring "actual losses" under FDUTPA); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("[A] plaintiff must prove 'actual' injury to recover under the statute."); *Archey v. Osmose Utilities Servs., Inc.*, 2021 WL 3367156, at *3 (N.D. Ill. 2021) ("[A] plaintiff must allege "actual damages" to bring suit under the ICFA."); Conn. Gen. Stat. Ann. § 42-110g(a) (requiring a plaintiff to show "ascertainable loss of money or property").   Here, however, Plaintiffs have alleged only psychic injury—i.e., knowing that ZoomInfo was "viewing, reading, processing, capturing and/or disseminating"

---

[7] *See also Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. 2011) (applying Rule 9(b) to FDUPTA); *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 359 (E.D.N.Y. 2022) (applying Rule 9(b) to claim under New York statute); *Rodriguez v. Ford Motor Co.*, 2022 WL 972306, at *4 (N.D. Ill. 2022) ("When the ICFA claim is based on fraud, it must satisfy the heightened Rule 9(b) pleading standard."); *Lentini v. Fid. Nat'l Title Ins. Co. of N.Y.*, 479 F.Supp.2d 292, 298 n. 2 (D.Conn.2007) ("[T]o the extent that the [CUTPA claims] rely on affirmative statements or omissions involving fraud or mistake, Rule 9(b) applies."); *Freese v. Bank of Am.*, 2010 WL 11646973, at *12 (N.D. Ga. 2010) (applying Rule 9(b) to the UDTPA).

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                                        - 17 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

their emails, and having their business contact information made public.  SAC ¶ 97; *see also* SAC ¶¶ 67–73.[8]  These state claims thus also fail.[9]

### 4.  Plaintiffs Fail to State a Claim Under the Washington Wiretapping Statute (Claim 4).

Plaintiffs' claim under the Washington Wiretapping Statute fails for reasons similar to the problems with their claim under the Federal Wiretap Act.  Like the Wiretap Act, the Washington Wiretap Statute, Wash. Rev. Code Ann. § 9.73.030, applies only when a message is "intercepted" between the two recipients.  *See Clare v. Clare*, 2022 WL 1714547, at *1–2 (Wash. Ct. App. 2022) ("A message that was received without interference and was read by the intended recipient cannot be intercepted by subsequent actions taken by other people."); *cf. State v. Roden*, 179 Wash. 2d 893, 904 (2014) ("intercept" means to "stop … before arrival … or interrupt the progress or course" (cleaned up)).  As explained above, however, Plaintiffs fail to adequately plead such interception here, *supra* § II.B.1.b, and so Plaintiffs' Washington Wiretapping Statute claim fails.

### 5.  Plaintiffs Fail to State a Breach of Contract Claim Under Washington Law (Claim 5).

For many of the reasons already discussed, Plaintiffs' claim for breach of contract fails.  Plaintiffs allege that the Terms of Use and the Privacy Policy amount to a "contract," and that ZoomInfo "breached this contract" by causing Plaintiffs' "private information to be viewed, read, processed, disclosed, and misused."  SAC ¶ 152.  This allegation is factually indistinguishable from the other claims that Plaintiffs make in this case—that ZoomInfo

---

[8] While Plaintiff Flemister does complain of a reputational harm as a result of ZoomInfo presenting her information *inaccurately*, she fails to connect that supposed harm to the conduct that forms the basis of any of Plaintiff's claims—the operation of Contact Contributor.  Said otherwise, none of her legal claims (including the CPA claim) concern Community Edition's *accuracy*; rather, they concern allegations regarding Community Edition's acquisition of information and its invasion of privacy.  Accordingly, Plaintiff Flemister fails to show that her alleged injury occurred "because of" the unlawful conduct.  *See Panag*, 166 Wash. 2d at 57.

[9] Although the Georgia UDTPA does not have a strict damages requirement, Ga. Code Ann. § 10-1-373(a), claims under Georgia's law are limited to injunctive relief, *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 217 (Ga. Ct. App. 2020), and so to the extent Plaintiffs seek damages under the UDTPA, that claim should be dismissed, *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 843 (E.D. Pa. 2019) ("[T]he Court will dismiss [plaintiffs' UDTPA] claims to the extent that they seek monetary relief for such claims.").

1    promises not to read emails, but then allegedly does so anyway.  Thus, like the allegations

2    discussed above, the breach of contract allegation is "grounded in fraud," as it is an allegation

3    of "a unified course of fraudulent conduct."  *Vess*, 317 F.3d at 1103 (holding that averments of

4    fraud are subject to the 9(b) standard even "in cases in which fraud is not an essential element

5    of the claim"); *see also Medawar v. Otis Elevator Co.*, 2021 WL 1034840, at *5 (C.D. Cal.

6    2021) (applying Rule 9(b) to an "intentional breach of contract claim" because it "revolve[d]

7    around an alleged unified course of fraudulent conduct"); *Steinberg v. Provident Funding

8    Assocs., L.P.*, 2016 WL 3361815, at *3 (N.D. Cal. 2016) (similar); *Openwave Messaging, Inc.

9    v. Open-Xchange, Inc.*, 2016 WL 6393503, at *9 (N.D. Cal. 2016) (similar).

10       "To state a claim for breach of contract under Washington law, a plaintiff must plausibly

11   allege (1) the existence of a valid contract; (2) breach of a duty imposed by that contract; and

12   (3) damages resulting from the breach."  *Chelan Cnty., Wash. v. Bank of Am. Corp.*, 2014 WL

13   3101935, at *3 (E.D. Wash. 2014)); *accord Lehrer v. State, Dep't of Soc. & Health Servs.*, 101

14   Wash. App. 509, 516 (2000).  Here, Plaintiffs fail to establish both the second and third elements:

15   They have failed to allege a breach of contract because they have failed to allege with

16   particularity that ZoomInfo deviated from the provisions of the Terms of Use and Privacy Policy.

17   *See supra* § II.A.  And they have failed to allege damages because none of the harms they seek

18   to recover are cognizable in breach of contract claims.  *See Repin v. State*, 198 Wash. App. 243,

19   256 (2017) (precluding recovery of "noneconomic, emotional disturbance damages for breach

20   of contract"); *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash. 2d 426, 440 (1991) (same).

21                    **6.     <u>Plaintiffs Fail to State a Claim Under the California Invasion of
                              Privacy Act ("CIPA") (Claim 6).</u>**

22

23       Plaintiffs' CIPA claim also fails for reasons already discussed:  Plaintiffs have not

24   alleged and cannot allege that ZoomInfo intercepted a communication "in transit" or the

25   "contents" of such a communication.  *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D.

26   Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap

27   Act.").  And so for the same reasons Plaintiffs have failed to make those showings under the

28   Wiretap Act, *see supra* § II.B.1, their claims under CIPA also fail.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                                  - 19 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

### 7.  Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion or Invasion of Privacy (Claims 7 & 8).

Plaintiffs' claim for intrusion upon seclusion under California law fails because Plaintiffs have not adequately "allege[d] intrusion into a private place, conversation or matter in a manner highly offensive to a reasonable person." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 829 (N.D. Cal. 2020) (numbering omitted).  To allege a violation of California's constitutional right to privacy, the SAC must allege, among other things, "conduct by the defendant that amounts to a serious invasion of [a] protected privacy interest." *Id.*  Because the standards for these two causes of action "are closely related," courts "treat[] them together." *Id.*; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

To show the requisite "serious invasion" or "highly offensive" intrusion, the SAC must allege facts showing an "egregious breach of the social norms"—a "high bar" that is not satisfied by "[e]ven disclosure of personal information, including social security numbers." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).  "[C]ollection—and even disclosure to certain third parties—of" more anodyne "personal information" falls well below the requisite threshold. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 829–30; *see also In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no intrusion claim based on collection and disclosure of users' data, including browsing histories); *Low*, 900 F. Supp. 2d at 1025 (no "highly offensive" invasion of privacy by disclosing users' browsing histories to third parties).  Where a party does nothing more than engage in "routine commercial behavior," it does not commit a violation of California's constitution or common-law privacy protections. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 830.  That is true even where the "routine commercial behavior" involves "obtaining [a] plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (finding such conduct not an "egregious breach of social norms").

Here, the alleged conduct in the SAC is a far cry short of conduct held insufficient elsewhere.  First, as discussed above, ZoomInfo's activity was fully disclosed. *See supra* § II.A.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE

- 20 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

Second, what the SAC accuses ZoomInfo of here—collecting business contact information voluntarily disclosed in email signature blocks—is hardly egregious.  Indeed, all of the information that Plaintiffs complain about ZoomInfo reading and publishing—e.g., "full name, place of employment, years of experience, geographical location, and … contact information," SAC ¶ 69—is already public.  Plaintiff Wysocki, for instance, is *required* to list her full name, place of employment, office address (geographical location), phone number (contact information), attorney admission date (years of experience) on the State of Connecticut's attorney directory website.[10]  Similarly, Plaintiff Sidhu's own employer (of whom he is CEO) provides his name, place of employment, office address (geographical location), and phone number (contact information) on its website.[11]  Plaintiff Sidhu also has much of this information, as well as his employment history, listed on his LinkedIn page.[12]  Courts have doubted whether collection of such information is even sufficient to support Article III standing, *see, e.g.*, *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *4 (N.D. Cal. 2021); *see also Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011), so it certainly falls well short of the "egregious" or "highly offensive" invasion to support a claim for invasion of privacy or intrusion upon seclusion.  Because Plaintiffs have alleged no facts that mark ZoomInfo's conduct as being particularly egregious, their constitutional and common law privacy claims fail.

### 8.   Plaintiffs Fail to State a Claim Under the California UCL (Claim 9).

To state a claim under the UCL, Plaintiffs must show (among other things) that ZoomInfo engaged in an "unlawful," "fraudulent," or "unfair" business practice.  Cal. Bus. & Prof. Code § 17200.  Here, Plaintiffs have failed to plead facts establishing any of those three elements.

---

[10] https://www.jud.ct.gov/attorneyfirminquiry/JurisDetail.aspx.

[11] https://www.foyer.ai/team/ (identifying Andrew Sidhu as CEO of Foyer);
    https://www.foyer.ai/contact/ (contact information for Foyer).

[12] https://www.linkedin.com/in/andrew-sidhu-a520192/.

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE
- 21 -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300

1

**a.**    **The SAC fails to state a claim for an "unlawful" practice.**

2

To state a UCL claim for an "unlawful" practice, a plaintiff must show a "violation[] of

3

[an]other law[]." *Silver v. Stripe, Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. 2021).  The only

4

other laws that the SAC identifies as potential predicates for the UCL claim are the other

5

"federal and state laws and statutes" discussed above.  *See* SAC ¶ 197.  Accordingly, Plaintiffs

6

"unlawful" UCL claim falls with those other claims.

7

**b.**    **The SAC fails to state a claim for a "fraudulent" practice.**

8

"Claims stated under the fraud prong of the UCL are subject to the particularity

9

requirements of Federal Rule of Civil Procedure 9(b)," meaning that the SAC "must state with

10

particularity the circumstances constituting fraud or mistake," including "an account of the time,

11

place, and specific content of the false representations at issue."  *Silver*, 2021 WL 3191752, at

12

*7.  Although the SAC alleges in conclusory fashion that ZoomInfo "violated the UCL by

13

engaging in … fraudulent business acts or practices," SAC ¶ 196, it does not specifically identify

14

any such practice.  That comes nowhere near the specificity required by Rule 9(b).  *Silver*, 2021

15

WL 3191752, at *7.  Plaintiffs' "fraudulent" UCL claim thus fails for that reason.

16

**c.**    **The SAC fails to state a claim for an "unfair" practice.**

17

To state a claim for an "unfair" practice under the UCL, a plaintiff must plead facts

18

showing that the challenged conduct violates a "public policy" that is "tethered" to a specific

19

constitutional, statutory, or regulatory provision, or that the harm from the challenged conduct

20

outweighs "the utility of the defendant's practice."  *Silver*, 2021 WL 3191752, at *8.  Here, all

21

the SAC has to say on that score is that "ZoomInfo's conduct offends the public policy

22

considerations of the various federal and state statutes, as well as state constitutional provisions,

23

referenced above," and that "the gravity of the harm … is significant and there is no

24

corresponding benefit to consumers of such conduct."  SAC ¶ 199.  But that kind of

25

"[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory

26

statements, do[es] not suffice," *Iqbal*, 556 U.S. at 678.  To the extent Plaintiffs' unfairness UCL

27

claim (like their unlawful UCL claim) is predicated on alleged violations of the other laws

28

discussed herein, it fails for the same reasons as Plaintiffs' other claims.  Plaintiffs' claim that

ZoomInfo's behavior is an "unfair" practice under the UCL should thus be dismissed.

### 9.   Plaintiffs' Declaratory Judgment Claim Should Be Dismissed.

Because all of Plaintiffs' claims should be dismissed, their declaratory judgment claim should also be dismissed.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because we affirm the district court's dismissal of the...claims, we affirm the dismissal of the claims for declaratory relief on those claims.").

### III.   THE SAC VIOLATES RULE 8 BECAUSE IT FAILS TO DISTINGUISH AMONG DEFENDANTS

Finally, the SAC should be dismissed because Plaintiffs lump four different corporate entities together without identifying which one did what.  Rule 8 requires a plaintiff to "identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole."  *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015).  "When defendants are separate corporate entities[] and perform separate roles," pleading as to defendants as a collective generally "is insufficient." *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. 2020); *see also, e.g.*, *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) ("[L]umping together of multiple defendants in one broad allegation fails to satisfy notice requirement of Rule 8(a)(2).").  That is because "treat[ing] … Defendants as an undifferentiated mass" fails to provide the "sufficient particularized allegations" as to what "each" defendant, specifically, is accused of having done or failed to do.  *MFG Universe Corp. v. Next Gen LED, Inc.*, 2022 WL 3028081, at *2 (W.D. Wash. 2022).  "This alone is a basis for dismissal."  *Id.*

The SAC, however, does just what the caselaw says it may not:  treating four distinct legal entities as one and the same, lumping them all together with a single defined term of "ZoomInfo."  SAC at 1.  The SAC then generally avers various "ZoomInfo" conduct without specifying "which defendant[] engaged in what activity," *Bravo v. Cnty. of San Diego*, 2014 WL 555195, at *2 (N.D. Cal. 2014).  *See, e.g.*, SAC ¶¶ 1–15.  The consequences of that defect are clear:  by "generally alleg[ing] all claims against 'all defendants,' without identifying which defendant is responsible for [the] alleged injuries," it fails to put each of the "defendants fairly

on notice of the claims against them" and "must be dismissed." *Foley v. Bates*, 2007 WL 1831133, at *3 (N.D. Cal. 2007).

This is not a technical or formalistic point. To the contrary, the SAC makes clear that many of the acts attributed to "ZoomInfo" were *not*, in fact, performed by all four defendants. For instance, the SAC describes "ZoomInfo's Terms of Use and Privacy Policy" as being a "contract between ZoomInfo and the Class Members." SAC ¶¶ 149, 152. But far from being a contract between *all* of the four defendants and Plaintiffs, those Terms of Service (incorporated by reference into the SAC, *see supra* n.2) have an entire section explaining that there is only a single "ZoomInfo entity entering this Agreement" (in that case, ZoomInfo Technologies LLC). *See https://www.zoominfo.com/about-zoominfo/ce-terms-conditions*

## CONCLUSION

ZoomInfo respectfully requests that the Court dismiss the SAC in its entirety.

Dated: October 28, 2022

Respectfully Submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   *s/Aravind Swaminathan*

Aravind Swaminathan (WSBA No. 33883)
aravind@orrick.com

701 Fifth Avenue
Suite 5600
Seattle, WA  98104-7097
Telephone:  +1 206 839 4300
Facsimile:  +1 206 839 4301

Attorneys for Defendants

DEFENDANTS' MOTION TO DISMISS
Case No. 3:22-cv-05453-DGE                    - 24 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1 206 839 4300